Brett R. Cohen (SBN 337543)
**LEEDS BROWN LAW, P.C.**
134 Mineola Blvd, 2nd Flr,
Mineola, New York 11501
(516) 873-9550
bcohen@leedsbrownlaw.com

W. Austin Hinkle (SBN 313856)
**PUBLIC GOODS PRACTICE, LLP.**
502 W 7th St STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENDA BURNETT, DAISY URBINA, on behalf of themselves and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> - against - <br><br> HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI D/B/A MOHELA, <br><br> Defendant. | **Case No.: 5:26-cv-3580** <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## NATURE OF THE ACTION

1. Named Plaintiffs Glenda Burnett and Daisy Urbina (collectively "Plaintiffs") bring this case to vindicate their rights and the rights of similarly situated student loan borrowers who faced systematic failures by MOHELA in administering refunds after earning a Public Service Loan Forgiveness ("PSLF") discharge. In failing to effectuate these refunds – or waiting more than

CLASS ACTION COMPLAINT

a year to do so – MOHELA also systematically provided inaccurate information to borrowers when they called about their refunds while entirely failing to respond to qualified written requests.

2.    Plaintiffs are student loan borrowers who have dedicated years of their lives to public service and are owed the protections of federal and state law, as well as a refund of their overpayments after they qualified for PSLF discharge. Additionally, Plaintiffs are owed accurate information from their student loan servicer, as well as timely responses to their questions.

3.    That's not what Plaintiffs received.

4.    Plaintiffs allege that Defendant's actions violate multiple provisions of *the California Student Borrower Bill of Rights*, including multiple provisions associated with transparency, responsiveness, full disclosure of relevant information, as well as fundamental protections owed to student loan borrowers.

5.    The College Cost Reduction and Access Act of 2007 ("CCRAA") established the Public Service Loan Forgiveness program which provides loan discharge to federal student loan borrowers who make 10 years of payments while working for a public service organization. The program allows people with student loan debt to pursue typically lower-paying public service careers without the fear that financial sacrifice will result in a lifetime of student loan debt.

6.    By 2016, total student loan debt in the United States exceeded $1.2 trillion dollars and the State found it necessary to pass the Student Loan Servicing Act (SLSA). The legislature intended for the act to, among other things, promote, "reliable information about student loans and loan repayment options" and "quality customer service and fair treatment."[1]

7.    In the years following the passage of the SLSA, federal and state enforcement revealed increasingly common and destructive conduct in the student loan market. By 2020, California found it necessary to take further steps to curb the growing student debt crisis.[2] In AB 376, the legislature dramatically expanded the consumer protection regime to, among other things, "promote meaningful access to … loan forgiveness benefits…" and "ensure California borrowers

---

[1] Cal. Civ. Code § 1788.101(a), (d); see Cal. Assemb. B. 2251, 2015–2016 Reg. Sess. (Cal. 2016).
[2] Cal. Civ. Code § 1788.100 et seq. (Deering 2021) (as added by 2020 Cal. Stat. ch. 154, § 1).

2

CLASS ACTION COMPLAINT

can rely on information about student loans and loan repayment options provided by student loan servicers."[3] The expansion of these protections included, like the federal government did in the CFPA, a new prohibition on abusive acts or practices alongside existing prohibitions on unfair and deceptive conduct.[4]

1.      Since 2007, millions of borrowers entered public service fields making significant contributions to their communities.

2.      However, due to complex program design and historic servicing failures, hundreds of thousands of these borrowers had their payments systematically undercounted or were misled into believing they had eligible loans for the program when in fact they did not.

3.      Plaintiffs and similarly situated borrowers since at least October 2021 have been affected by these servicing failures, delays, and harms.

4.      Early data showed that by 2019, of the 76,002 PSLF applications processed as of March 2019, the servicer denied 75,138 (99%); only 518 borrowers had received discharges.[5]

5.      To correct these historic problems, the Department of Education implemented a program called the PSLF Limited Waiver, resulting in updates to hundreds of thousands of borrowers' accounts adding credit for eligible payments that were previously unrecorded.

6.      As a result, borrowers who had been paying on their loans for decades suddenly found themselves with significantly more than the 120 payments required for loan discharge.

---

[3] *Id.*

[4] *See Id.*

[5] *Public Service Loan Forgiveness: Opportunities for Education to Improve Both the Program and Its Temporary Expanded Process,* GAO-19-717T, at 5–6 & n.11 (Sept. 19, 2019) (statement of Melissa Emrey-Arras, Dir., Educ., Workforce, & Income Sec.).

3

CLASS ACTION COMPLAINT

7.      Other borrowers overpaid because they did not know they had reached 120 payments or because they continued to make payments while their loan discharge application was pending – a process that could take many months.

8.      In all cases, borrowers who overpaid are due a refund for payments made in excess of the PSLF requirements.

9.      MOHELA is one of the country's largest student loan servicers responsible for handling accounts of 7 million borrowers on behalf of the Department of Education. [6] One of its responsibilities under this contract is to effectuate a refund process for these excess payments.

10.      Approximately 805,000 of those borrowers reside in the state of California and were subject to the protections of the CCRAA and SBBR if they qualified under the PSLF.

11.      By July of 2023, the most recent date for which public data is available, more than 56,000 California borrowers had received PSLF discharge. Fed. Student Aid, U.S. Dep't of Educ., *Borrowers Identified for Forgiveness under PSLF Limited Waiver by Location* (as of July 2023), https://studentaid.gov/sites/default/files/fsawg/datacenter/library/limited-waiver-pslf-forgiveness-borrowers.xls.

12.      Plaintiffs were two such borrowers owed the protections under both statutes and their implementing regulations.

13.      After receiving notice of a borrower's qualification of a PSLF discharge, MOHELA advised borrowers that it would process refunds automatically – and was required to process that refund promptly and no later than 45 days pursuant to their servicing contract. However, in dereliction of its obligations, MOHELA failed to supply substantive information as to the processes or when it would be completed and allowed customers to believe that such processes would take 90 days.

---

[6] As of December 31, 2025, MOHELA's federal loan servicing portfolio comprised approximately 7.0 million borrowers. *See* U.S. Dep't of Educ., Federal Student Aid, Federal Student Loan Portfolio by Loan Servicer (Dec. 31, 2025) https://studentaid.gov/sites/default/files/fsawg/datacenter/library/servicer-portfolio-by-loan-status123125.xls.

4

CLASS ACTION COMPLAINT

14.     Specifically, Plaintiff Urbina became entitled to a refund after reaching 120 qualifying PSLF payments in December 2024 and ultimately made approximately two excess qualifying payments. Despite being owed a refund upon discharge of her loans, MOHELA failed to provide substantive information regarding the refund process or timing, allowed Plaintiff Urbina to believe the refund would be processed within approximately 90 days, and failed to inform Plaintiff Urbina that refund processing took significantly longer. Plaintiff Urbina remained without the refund for more than 17 months.

15.     Similarly, after Plaintiff Burnett became entitled to a refund for excess PSLF payments, including approximately 49 payments made beyond the 120-payment threshold, MOHELA failed to provide substantive information regarding the refund process or timing, allowed her to believe the refund would be processed within approximately 90 days, and failed to inform Plaintiff Burnett that refund processing took significantly longer. Plaintiff Burnett remained without the refund for more than a year and a half after becoming entitled to it.

16.     In fact, MOHELA regularly took a year or longer to process refunds and many refunds remain outstanding.[7]

17.     During the excessive refund processing time, Named Plaintiffs and similarly situated borrowers were deprived of their money; unable to use it for their daily expenses, to invest it, or to pay other debt. Plaintiffs were similarly deprived of their ability to plan financially because MOHELA caused Plaintiffs to believe refunds would be processed within 90 days and then its failure to complete the processes timely and reasonably.

18.     MOHELA's refund-processing failures are not isolated. The Consumer Financial Protection Bureau's November 2024 Annual Report of the CFPB Student Loan Ombudsman specifically identified MOHELA among the servicers responsible for prolonged delays in other contexts, including a 14-month delay on a $7,500 refund request that was ultimately processed for

---

[7] See Consumer Fin. Prot. Bureau, Annual Report of the CFPB Student Loan Ombudsman 20–23 (Nov. 2024) (documenting MOHELA refund delays of 9 to 24 months following PSLF and IDR cancellation, ranging from $200 to $63,000), https://files.consumerfinance.gov/f/documents/cfpb_2024-annual-student-loan-ombudsmans-report_2024-11.pdf.

CLASS ACTION COMPLAINT

only half the amount owed, and a 24-month delay processing PSLF discharged applications.[8] In October 2024, the Department of Education separately determined that MOHELA had failed to timely process at least 460,000 income-driven repayment applications and directed MOHELA to submit a corrective-action plan.[9]

19.    To understand whether they were due a refund and when their money would arrive, borrowers attempted to contact MOHELA by phone, complained through MOHELA and the Department of Education's websites, and submitted qualified written requests for information to MOHELA.

20.    Borrowers like Plaintiffs submitted qualified written requests both over the telephone and in writing to obtain the information they were owed.

21.    Despite those qualified written requests, MOHELA failed to comply with its statutory obligations.

22.    Instead, MOHELA failed to inform borrowers of its excessive delays, failed to provide accurate processing times and failed to acknowledge or respond to qualified written requests.

23.    As a result, MOHELA violated the California Student Loan Borrower Bill of Rights and financially damaged Plaintiffs and the putative class members.

24.    Plaintiffs bring this suit to vindicate their rights and the rights of the class members under California law, and require the implementation of corrective measures to require MOHELA to adhere to its statutory obligations.

25.    Plaintiffs seek, for themselves and the putative class members, immediate refunds, compensation for MOHELA's excessive delays, statutory damages, interest, penalties, attorney's fees, costs, and other monies for MOHELA's systematic failure to follow California law, as well

---

[8] Consumer Fin. Prot. Bureau, Annual Report of the CFPB Student Loan Ombudsman 16, 20 (Nov. 2024).

[9] *Id*. at 14.

6

CLASS ACTION COMPLAINT

as injunctive and declaratory relief such that no other borrowers will be harmed in the same manner as the Named Plaintiffs.

## PARTIES

*PLAINTIFFS*

**Plaintiff Burnett**

26.    Plaintiff Burnett is an adult individual residing in Riverside County, CA.

27.    Plaintiff Burnett attended National University for undergrad and subsequently obtained her master's in 2011.

28.    For approximately the last 25 years, Plaintiff Burnett worked in the County of San Diego Department for Social Services, a position that qualified for the Public Service Loan Forgiveness ("PSLF") program.

29.    Plaintiff Burnett began making qualifying student loan payments approximately in 2008.

30.    By 2021, Plaintiff Burnett had reached the 120 qualifying payments required for PSLF eligibility. However, Plaintiff Burnett was only notified that her loans were forgiven under the program on or about October 2024.

31.    Plaintiff Burnett ultimately made approximately 169 qualifying PSLF payments, resulting in approximately 49 payments in excess of the 120-payment requirement.

32.    As a result, Plaintiff Burnett was entitled to a refund of the payments made after reaching the 120-payment threshold.

33.    Plaintiff Burnett was notified that her loans were discharged through PSLF on or about October 2024.

34.    Plaintiff Burnett submitted qualified written requests to Defendant on March 23, 2026, seeking information regarding overpayments on her loans and being due a refund.

35.    Defendant failed to provide substantive responses to those qualified written requests.

36.    Plaintiff Burnett did not receive the refund to which she was entitled.

7

37.    Plaintiff Burnett did not receive the response required by law to her qualified written requests.

38.    Plaintiff Burnett remained without the owed refund for more than a year and a half after becoming entitled to that refund.

39.    As a result of Defendant's conduct, Plaintiff Burnett suffered damages including, but not limited to, the loss of use of funds rightfully owed to her.

**Plaintiff Urbina**

40.    Plaintiff Urbina is an adult individual residing in Fresno County, CA.

41.    Plaintiff Urbina attended California State University of Fresno and graduated in 2009.

42.    For approximately the last 15 years, Plaintiff Urbina worked as a public school teacher, a position that qualified for the Public Service Loan Forgiveness ("PSLF") program.

43.    Plaintiff Urbina began making qualifying student loan payments on or about November of 2009.

44.    By December of 2024, Plaintiff Urbina had reached the 120 qualifying payments required for PSLF eligibility. However, she continued to make payments as she wasn't notified until approximately two months later.

45.    Plaintiff Urbina ultimately made approximately 122 qualifying PSLF payments, resulting in approximately 2 payments in excess of the 120-payment requirement.

46.    As a result, Plaintiff Urbina was entitled to a refund of the payments made after reaching the 120-payment threshold.

47.    Plaintiff Urbina's loans were discharged through PSLF on or about December 2024.

48.    Plaintiff Urbina submitted qualified written requests to Defendant on March 23, 2026, seeking information regarding overpayments and being due a refund.

49.    Defendant failed to provide substantive responses to those qualified written requests.

50.    Plaintiff Urbina remained without the owed refund for more than 16 months after becoming entitled to that refund.

8

CLASS ACTION COMPLAINT

51.    As a result of Defendant's conduct, Plaintiff Urbina suffered damages including, but not limited to, the loss of use of funds rightfully owed to her.

**MOHELA**

52.    Defendant MOHELA is one of the largest student loan servicers in the United States.

53.    MOHELA is headquartered in Missouri, maintains an office in the District of Columbia, and currently employs hundreds of individuals across the country who work remotely in other states.

54.    MOHELA was established in 1981 pursuant to the Missouri Higher Education Loan Authority Act, Title XI, Chapter 173, Section 173.350 to 173.445 of the Missouri Revised Statutes, inclusive, as amended (the "Authorizing Act"), as "a public instrumentality and body corporate" and its exercise of the authority granted it was "deemed to be the performance of an essential public function." Mo. Rev. Stat. § 173.360.

55.    Under its Authorizing Act, MOHELA can sue and be sued in its own name. Id. § 173.385.1(3).

56.    MOHELA's assets are not part of the state of Missouri's revenue and cannot be used for the payment of Missouri's debts. Id. §§ 173.386, 173.425. Missouri, in turn, cannot be liable for MOHELA's debts. Id. § 173.410. The vast majority of MOHELA's funds are segregated from state funds and controlled exclusively by MOHELA as a self-sustaining and financially independent entity. MOHELA can contract with any federal or state agency, including with the state of Missouri. Id. § 173.385.

57.    Pursuant to its contract with ED, as of December 31, 2025, MOHELA services approximately $318.5 billion in Direct Loans and ED-owned FFELP loans representing more than

9

CLASS ACTION COMPLAINT

seven million accounts for borrowers across the country.[10]  In this role, MOHELA is responsible for, among other things:

    a.  Receiving scheduled periodic payments from borrowers or notification that borrowers made a scheduled periodic payment, and applying payments to borrowers' accounts pursuant to the terms of the student loan or the contract governing servicing.

    b.  During periods when no payment is required, maintaining account records for the student loans and communicating with borrowers regarding the student loan on behalf of the Department of Education.

## JURISDICTION AND VENUE

58.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant (including Plaintiff), and (4) there are more than 100 proposed Class members.

59.    This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to the law, rights, and benefits of the State of California.

60.    Venue is proper in this District because many Class Members, including Plaintiff, reside in the Central District of California, and throughout the State of California. Moreover, a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district, and as such venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2).

## BACKGROUND

### *Public Service Loan Forgiveness Original Regulations*

---

[10] Off. of Fed. Student Aid, U.S. Dep't of Educ., *Federal Student Loan Portfolio by Loan Servicer and Loan Status* (data as of Dec. 31, 2025), https://studentaid.gov/sites/default/files/fsawg/datacenter/library/servicer-portfolio-by-loan-status123125.xls

10

CLASS ACTION COMPLAINT

61.    Federal law provides loan cancellation for public service workers who have worked for ten years in eligible public service jobs while making eligible payments on their loans. 20 U.S.C. § 1087e(m)(1). Congress designed the PSLF program to encourage talented individuals to work in traditionally lower paying public service careers.

62.    The PSLF statute directs the Secretary of Education to "cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan" for a borrower who "has made 120" eligible "monthly payments on the eligible Federal Direct Loan after October 1, 2007" and "has been employed in a public service job during the period in which the borrower ma[de] each of the 120 payments." 20 U.S.C. § 1087e(m)(1).

63.    Under the statute, a public service job includes a full-time job in government (including military service and law enforcement), a 501(c)(3) organization, or in the fields of emergency management, public safety, public health, public education, social work in a public child or family service agency, public interest law services, early childhood education, public service for individuals with disabilities, public service for the elderly, public library sciences, school-based library sciences and other school-based services. 20 U.S.C. § 1087e(m)(3).

64.    Borrowers are advised by MOHELA and the Department of Education to submit annual certifications of their employment using a 'PSLF Form' that is signed by the borrower and a representative of an eligible employer. Once borrowers reach 120 monthly payments they apply for PSLF discharge by completing a final PSLF Form. On the form, borrowers can indicate that they believe they qualify for forgiveness and that they want their account put into a forbearance so that they are not required to make payments. Regardless of whether a borrower checks that box, the updated period of eligibility is determined and if the borrower has more than 120 eligible payments their loans are discharged.

65.    However, the PSLF program suffered significant operational problems and data by 2019, of the 76,002 PSLF applications processed as of March 2019, the servicer denied 75,138

11

CLASS ACTION COMPLAINT

(99%); only 518 borrowers had received discharges.[11] This 99 percent denial rate spurred investigations from federal agencies and ultimately the Department of Education took action to address many of the underlying account errors and program complexity that caused these problems.[12] The Department of Education referred to this package of one-time adjustments as the PSLF Limited Waiver.[13]

66. The PSLF Limited Waiver had the effect of reevaluating past payments and counting many periods previously considered ineligible as eligible. For many borrowers this resulted in a significant increase of months or years of additional eligible PSLF payments propelling 758,800 borrowers over the required 120 payments – sometimes significantly over.[14]

67. As of January 2026, a total of 1.2 million borrowers have now received PSLF discharges totaling $90.6 billion.[15]

***California Student Loan Borrower Bill of Rights***

---

[11] *Public Service Loan Forgiveness: Opportunities for Education to Improve Both the Program and Its Temporary Expanded Process,* GAO-19-717T, at 5–6 & n.11 (Sept. 19, 2019) (statement of Melissa Emrey-Arras, Dir., Educ., Workforce, & Income Sec.).

[12] See U.S. Gov't Accountability Off., GAO-19-717T, Public Service Loan Forgiveness: Opportunities for Education to Improve Both the Program and Its Temporary Expanded Process 5–6 & n.11 (Sept. 19, 2019); U.S. Gov't Accountability Off., GAO-19-595, Public Service Loan Forgiveness: Improving the Temporary Expanded Process Could Help Reduce Borrower Confusion (Sept. 5, 2019).

[13] U.S. Dep't of Educ., Fact Sheet: Public Service Loan Forgiveness (PSLF) Program Overhaul (Oct. 6, 2021), https://www.ed.gov/media/document/fact-sheet-public-service-loan-forgiveness-pslf-program-overhaul-released-october-6-2021-59036.pdf; see also U.S. Gov't Accountability Off., GAO-23-105414, Public Service Loan Forgiveness: Education Has Taken Steps to Improve the Program, but Additional Actions Could Increase Participation (Feb. 2023).

[14] Off. of Fed. Student Aid, U.S. Dep't of Educ., Public Service Loan Forgiveness Data, https://studentaid.gov/sites/default/files/fsawg/datacenter/library/pslf-combined-report.xlsx (last visited May 6, 2026).

[15] *Id.*

CLASS ACTION COMPLAINT

68.     The Student Borrower Bill of Rights ("SBBR"), codified at Cal. Civ. Code §§ 1788.100–1788.105, was enacted to, among other things, promote "reliable information about student loans and loan repayment options" and "quality customer service and fair treatment."[16] This licensing and regulatory scheme prescribed certain expectations of student loan servicers and provided consumers with a private right of action, ensuring borrowers can get relief and that they could do so on a class wide basis.

69.     The SBBR prohibits student loan servicers from engaging in unfair, deceptive, or abusive acts or practices, including omitting material information in connection with servicing a student loan. Cal. Civ. Code § 1788.101.

70.     Recognizing the specific challenges faced by public service workers, the SBBR further prohibits servicers from engaging in unfair or deceptive practices toward any borrower working in public service or misrepresenting or omitting material information in connection with servicing a student loan owed by a borrower working in public service. Cal. Civ. Code § 1788.101(b)(8).

71.     Finally, the SBBR provides formal mechanisms for borrowers to assert account errors or request information about their accounts. Student loan servicers are required to acknowledge any request made in writing transmitted by mail, facsimile, or electronically through an email address or internet website or any inbound telephone call within 10 business days and provide information related to the request and, if applicable, describe corrective action it will take or an explanation of why the servicer believes the account is correct within 30 business days. Cal. Civ. Code § 1788.102(h), (i) & (t).

## FACTUAL ALLEGATIONS

72.     Plaintiffs and Class Members borrowed student loans under the William D. Ford Direct Loan Program (Direct Loans) and successfully completed the terms of the PSLF program

---

[16] Cal. Civ. Code § 1788.101(a), (d); see Cal. Assemb. B. 2251, 2015–2016 Reg. Sess. (Cal. 2016).

CLASS ACTION COMPLAINT

by making the required 120 payments while enrolled in a qualifying repayment plan and working for an eligible employer.

73.    MOHELA was the assigned servicer for Plaintiffs and Class Members and was responsible for processing PSLF discharge after the final determination of eligibility.

74.    MOHELA applied the loan discharge retroactively to be effective as of the month a borrower first reached 120 eligible payments. If a borrower had made payments any time after the effective date of discharge, MOHELA created a negative account balance. Any negative account balance was to be refunded to the borrower.

75.    MOHELA communicated this information to borrowers in a series of communications assuring borrowers that it would proactively refund any amounts that were due.

76.    Specifically, Plaintiff Urbina became entitled to a refund after reaching 120 qualifying PSLF payments in December 2024 and ultimately made approximately two excess qualifying payments. Despite being owed a refund upon discharge of her loans, MOHELA failed to provide substantive information regarding the refund process or timing and allowed Plaintiff Urbina to believe the refund would be processed within approximately 90 days. Plaintiff Urbina remained without the refund for more than 17 months.

77.    Similarly, after Plaintiff Burnett became entitled to a refund for excess PSLF payments, including approximately 49 payments made beyond the 120-payment threshold, MOHELA failed to provide substantive information regarding the refund process or timing and allowed her to believe the refund would be processed within approximately 90 days. Plaintiff Burnett remained without the refund for more than a year and a half after becoming entitled to it. Following the delays, Plaintiffs and Class Members often called MOHELA to ask how long a refund would take.

78.    Plaintiff Urbina submitted qualified written requests to Defendant on March 23, 2026, seeking information regarding overpayments and being due a refund.

79.    Plaintiff Burnett submitted qualified written requests to Defendant on March 23, 2026, seeking information regarding overpayments on her loans and being due a refund.

80.    MOHELA directed representatives on how to respond to these questions.

14

CLASS ACTION COMPLAINT

81. During the relevant period, MOHELA directed its representatives to not properly convey all relevant information including the actual time it was taking MOHELA to process PSLF refunds or what entity was responsible for any delays. Specifically, MOHELA representatives:

    a. Failed to inform borrowers like Plaintiffs that MOHELA would not be able to process the request in 90 days.

    b. Failed to inform borrowers that the delays in processes were caused within MOHELA, not by the Treasury Department.

    c. Failed to inform borrowers that the Treasury Department typically processes requests in less than 5 business days.

82. As delays mounted Plaintiffs called.

83. After receiving a PSLF discharge in October 2024, Plaintiff Burnett Burnett called MOHELA to inquire about the status of her refund and was told that she would receive a refund in 90 days. After not receiving a refund in that period, Burnett called again and was told she was not due a refund.

84. As recently as February 23, 2025, Burnett's account information from Federal Student Aid shows she is due a refund of $17,647.

85. On March 23, 2026, Burnett sent two separate letters to MOHELA. First, a qualified written request asking MOHELA to provide the underlying account information and communications from MOHELA to get accurate information about her payments and entitlement to a refund.

86. Second, Burnett sent a notice of violation as required by Cal. Civ. Code § 1788.103(d). The notice alleged violations for herself and on behalf of similarly situated borrowers for violations of Cal. Civ. Code § 1788.101(a), (b)(1), (b)(2), (b)(8), and § 1788.102(g).

87. MOHELA did not substantively respond to either letter.

88. Plaintiff Burnett has not received a refund despite the passage of more than a year and a half.

89. Plaintiff Burnett has made one qualified written request and has not been provided with an update on the status of her refund.

15

CLASS ACTION COMPLAINT

90.    Plaintiff Urbina received PSLF discharge on December 30, 2024, but because she did not receive a notice of the discharge, Urbina continued making payments of $135.78 on January 9 and February 9 of 2025.

91.    On or about June 2025, Urbina called and made another qualified written request to MOHELA to inquire about those extra payments and was told that MOHELA would issue a refund. The MOHELA agent explained that they had to send information to the state comptroller "in case she had any other outstanding loans" but otherwise she should receive the refund within 90 days.

92.    Urbina did not receive the refund within 90 days and made repeated attempts and qualified written requests to MOHELA about the timing of her refund.

93.    On January 14, 2026, Urbina called MOHELA again and was told MOHELA would have a solution within 10 business days. Urbina did not receive the refund after 10 business days or any additional follow-up from MOHELA.

94.    Urbina escalated the issue by filing a complaint with MOHELA through Federal Student Aid. MOHELA has not addressed the complaint and Urbina followed up again through the complaint system on March 8 requesting information about the status of her refund.

95.    On March 23, 2026, Urbina sent two separate letters to MOHELA. First, another qualified written request asking MOHELA to provide the underlying account information and communications from MOHELA to get accurate information about her payments and entitlement to a refund.

96.    Second, Urbina sent a notice of violation as required by Cal. Civ. Code § 1788.103(d). The notice alleged violations for herself and on behalf of similarly situated borrowers for violations of Cal. Civ. Code § 1788.101(a), (b)(1), (b)(2), (b)(8), and § 1788.102(g).

97.    On April 9, MOHELA sent Urbina a letter in response to the notice of violation informing her that it is working to resolve the issue and that it will notify her when the issue is fully resolved.

CLASS ACTION COMPLAINT

16

98. On April 8, 2026 – 16 months after satisfying the PSLF requirements, 10 months after first talking with MOHELA about the refund, and after retaining counsel – Urbina received a refund check from the Department of the Treasury dated March 30, 2026, for $271.56.

99. In total, Plaintiff Urbina waited approximately 445 days for her refund. MOHELA only processed the refund after Urbina retained counsel. Throughout the period MOHELA failed to provide responses to Urbina's March 23, 2026 qualified written requests, who had already endured months of frustration and headache to obtain part of what she was owed.

## CLASS ACTION ALLEGATIONS

100. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), as representative of classes seeking damages for violations of the California Student Borrower Bill of Rights.

101. **Definition of PSLF Refund Class**: All borrowers residing in California on the effective date of their PSLF discharge from July 1, 2021 to the present who made more than 120 qualifying payments and failed to receive a refund of any additional payments above 120.

102. **Definition of PSLF Non-Timely Refund Class**: All borrowers residing in California on the effective date of their PSLF discharge from July 1, 2021 to the present who made more than 120 qualifying payments and failed to receive a refund within 45 days of the discharge.

103. **Definition of Qualified Response Class**: All borrowers residing in California who made a qualified request or qualified written request to MOHELA from July 1, 2021 to the present and who failed to receive a response within 30 business days.

   a. **Definition of PSLF Qualified Response Subclass**: All Qualified Response Class Members who were "borrower[s] working in public service" as that term is defined in Cal. Civ. Code § 1788.100(c).

104. Excluded from the proposed Class are Defendant, their parent companies, subsidiaries and affiliates, officers, executives, and employees; Defendant's attorneys in this case, federal government entities and instrumentalities, states or their subdivisions, and all judges and jurors assigned to this case.

105. Plaintiff reserves the right to modify or amend the definition of the proposed Class

17

CLASS ACTION COMPLAINT

before the Court determines whether certification is appropriate.

106.    Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are tens of thousands of individuals who are PSLF Class Members[17] described above who have been damaged by Defendant's violations of Cal. Civ. Code §§ 1788.100–1788.105. Plaintiffs likewise believe that there are tens of thousands of individuals who are Qualified Response Class Members described above who have been damaged by Defendant's failures to acknowledge and respond to qualified requests and qualified written requests in violation of Cal. Civ. Code §§ 1788.100–1788.105.[18]

107.    Typicality: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Classes was subject to Defendant's violations of Cal. Civ. Code §§ 1788.100–1788.105. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

108.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant committed unfair, deceptive or abusive acts or practices;

---

[17] This estimate is based on publicly available data. As of January 2026, approximately 1.2 million borrowers had received PSLF discharges. See Off. of Fed. Student Aid, U.S. Dep't of Educ., Public Service Loan Forgiveness Data, https://studentaid.gov/sites/default/files/fsawg/datacenter/library/pslf-combined-report.xlsx (last visited May 6, 2026). California residents account for approximately 11.6% of the United States population, see U.S. Census Bureau, QuickFacts: California (2024 estimate) https://www.census.gov/quickfacts/CA, compare to U.S. Census Bureau, Quick Facts (2024 national estimate) https://www.census.gov/quickfacts, yielding an estimated 139,000 California PSLF discharges. MOHELA services approximately 20% of the federal student loan portfolio, supra n.4, and was the exclusive PSLF servicer through 2022. Conservatively applying that 20% share yields an estimate of at least approximately 28,000 California PSLF discharges serviced by MOHELA — a subset of the proposed Class.

[18] This estimate is based on publicly available data. MOHELA services approximately seven million federal student loan accounts. Supra n.4. California residents account for approximately 11.6% of the United States population, supra n.13, yielding an estimated 812,000 California borrowers serviced by MOHELA. Even assuming that only a small fraction of those borrowers submitted a qualified request or qualified written request to MOHELA during the more than four-year class period — a conservative assumption given the volume of MOHELA-related servicing complaints documented in the Consumer Financial Protection Bureau's annual student loan ombudsman reports, supra n.3 — the resulting Qualified Response Class easily numbers in the tens of thousands.

18

CLASS ACTION COMPLAINT

b.      Whether Defendant timely processed paperwork;

c.      Whether Defendant ensured customer service personnel have access to information about PSLF applications or refund applications that were in process, have been approved, or have been denied

d.      Whether Defendant effectuated PSLF refunds in a timely manner

e.      Whether Defendant provided accurate information to borrowers about the time processing refunds would take

f.      Whether Defendant acknowledged and responded to qualified written requests

g.      Whether Defendant responded to qualified written requests

h.      Whether Defendant treated qualified requests as qualified written requests

109.    Adequacy: Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of the Plaintiff are aligned with, and not antagonistic to, those of the other Class members. Plaintiff is an adequate representative of the Class, and their chosen class counsel (the undersigned) are adequate attorneys. Plaintiff has the incentive and is committed to prosecuting this action for the benefit of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has retained counsel highly experienced in consumer protection and class action litigation.

110.    The Class is properly brought and should be maintained as a class action under California's class action procedural devices and applicable case law because a class action is superior to traditional litigation of this controversy. Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's violations of Cal. Civ. Code §§ 1788.100– 1788.105.

111.    In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia:*

112.    Superiority: Class action treatment is a superior method for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated

19

CLASS ACTION COMPLAINT

people to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

113.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

114.    Defendant have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

<u>**CAUSES OF ACTION**</u>
**FIRST CAUSE OF ACTION**
*Unfair Practice of Failing to Effectuate Required PSLF Refunds in Violation of California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(b)(2) and Cal. Civ. Code § 1788.101(b)(8)*

115.    Plaintiffs bring the first cause of action on behalf of themselves and similarly situated student loan borrowers against Defendant under the Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(b)(2).

116.    Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

117.    Plaintiffs and similarly situated student loan borrowers are "borrowers" as that term is defined in Cal. Civ. Code § 1788.100(a).

118.    Plaintiffs and similarly situated student loan borrowers owe or did owe a "student loan" as defined by Cal. Civ. Code § 1788.100(q).

119.    MOHELA is a "student loan servicer" as that term is defined in Cal. Civ. Code § 1788.100(s).

120.    MOHELA's conduct alleged herein constitutes unfair practices toward a borrower in violation of Cal. Civ. Code § 1788.101(b)(2). This unfair conduct includes but is not limited to MOHELA's failure to effectuate refunds for borrowers after a PSLF discharge.

CLASS ACTION COMPLAINT

121.    Plaintiffs and Class Members are "borrower[s] working in public service" as that term is defined in Cal. Civ. Code § 1788.100(c). Each Plaintiff and Class Member earned, or qualified for, PSLF discharge through qualifying employment in a "public service job" as defined in 20 U.S.C. § 1087e(m) and its implementing regulations.

122.    MOHELA knew, or reasonably should have known, that Plaintiffs and Class Members were employed in public service jobs. MOHELA had access to each borrower's PSLF Form, on which an authorized representative of a qualifying public service employer had certified the borrower's employment, and MOHELA's grant of PSLF discharge was contingent on its determination that the borrower was so employed.

123.    Pursuant to Cal. Civ. Code § 1788.101(b)(8), a student loan servicer shall not engage in an unfair or deceptive practice toward a borrower working in public service or misrepresent or omit material information in connection with the servicing of a student loan owed by a borrower working in public service.

124.    The unfair conduct was directed at, and exclusively affected, borrowers working in public service. The Class is, by definition, comprised of borrowers who earned PSLF discharge through qualifying public service employment. MOHELA's systematic failure to effectuate PSLF refunds occurred entirely in connection with the servicing of student loans owed by borrowers working in public service.

125.    Failing to issue refunds caused Plaintiffs and Class Members substantial injury, including the loss of the time-value and use of money lawfully owed to them; the inability to apply those funds to other debts, savings, or investment; and resulted in significant time commitment by Plaintiffs and Class Members to attempt to resolve the delay.

126.    Plaintiff Burnett remains waiting more than a year and a half after her PSLF discharge for a refund.

127.    Upon information and belief, class members have not received their refunds. On March 15, 2024, a group of eight senators sent MOHELA CEO Scott Giles a letter requesting information on how MOHELA planned to address "documented cases" of lost refunds and records. Letter from Sen. Edward J. Markey et al. to Scott Giles, CEO, MOHELA (Mar. 15, 2024),

21

CLASS ACTION COMPLAINT

https://www.markey.senate.gov/download/senator-markey-to-mohela-on-oversight-of-borrowers_-031524pdf.

128.    On May 22, 2026, a borrower complained to the Better Business Bureau about MOHELA's failure to effectuate their refund. The borrower noted that they had been waiting more than 9 months without receiving any refund. The borrower explained:

129.    I am a [REDACTED] Loan Forgiveness borrower who was granted forgiveness after my final payment in the amount of $427.85 in September 2025. This payment represented an overpayment, which Mohela is well aware of. (I've contacted them on at least 6 occasions since last autumn) regarding the refund I am owed for overpayment. They nor the treasury have released the refund of my overpayment. The overpayment occurred as I was required to submit 120 payments over the course of 10 years, but my payment count was stuch--due to no fault of my own, but because of changes in payment plans that qualified for PSLF. So I switched from REPAYE to the new one in order to make a payment and get my payment count updated for forgiveness. I need the overpayment of $427.85 refunded to me. Complaint No. 24876505, MOHELA Complaints, Better Bus. Bureau, https://www.bbb.org/us/mo/chesterfield/profile/loans/mohela-0734-110149672/complaints#0734_110149672_24876505 (last visited June 16, 2026).

130.    Another borrower explained simply:

131.    I'm due a refund from my student loans. Mohela has given me the run around for almost a year about where my refund is. The letter stated it would take REMOVED days. Yet still no information or status about my refund. Wait times are astronomical and when I'm connected to a person, they claim to have no information about the case. My student loans were forgiven May 2024, and reiterated in January 2025. Mohela removed the debt in August 2025. Yet my refund has not been received. Complaint No. 24783844, MOHELA Complaints, Better Bus. Bureau, https://www.bbb.org/us/mo/chesterfield/profile/loans/mohela-0734-110149672/complaints?page=3#0734_110149672_24783844 (last visited June 16, 2026).

132.    The CFPB collects and publishes complaints related to a range of financial products and services, including federal student loans. Between October 2021 and June 16, 2026,

22

CLASS ACTION COMPLAINT

the CFPB received 6,451 complaints about student loans from consumers who self-identified as California residents, of which approximately one third, or 2,263 were matched to MOHELA.

133.    Of these 2,263 complaints, 172 contain the word "refund"

134.    While the publicly available data redacts personally identifiable information, those redacted complaints confirm that PSLF refund delays are common and widespread. Dozens of these complaints contain a nearly identical fact pattern as Plaintiffs. For example, in April 2026, a borrower explained:

135.    My loans were forgiven under PSLF on XX/XX/XXXX ( effective XX/XX/XXXX ). I overpaid {$550.00} before discharge. MOHELA said the refund would come from the XXXX Treasury. I filed an XXXX complaint on XX/XX/XXXX and a second on XX/XX/XXXX. Treasury opened XXXX XXXX # XXXX. Despite months of follow-up with MOHELA, XXXX, and Treasury, I have received no refund or timeline. Complaint No. 12717923, Consumer Complaint Database (rec'd March 28, 2025) Consumer Fin. Prot. Bureau, https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/12717923 (last visited June 16, 2026).

136.    Another borrower explained in part:

137.    I overpaid my loan by {$3100.00} prior to its forgiveness in XXXX. MOHELA informed me that they submitted the refund request to the U.S. Department of the Treasury on XX/XX/XXXX, but I have never received the refund. I contacted MOHELA in XX/XX/XXXX for an update. They were unable to provide : A transaction ID A batch ID A refund request reference number Any documentation showing that the refund was transmitted to XXXX XXXX XXXX or Treasury Instead, they stated that Treasury would have that information, even though MOHELA is the originating servicer and should retain transmission records. They submitted an internal escalation but told me it could take 10 business days for them to hear back and up to 90 days for processing, and advised me to call back in XX/XX/XXXX. This refund has now been delayed for nearly a year, and MOHELA has not provided adequate documentation, transparency, or resolution. Complaint No. 19670073, Consumer Complaint Database, Consumer Fin. Prot.

23

CLASS ACTION COMPLAINT

Bureau (rec'd February 20, 2026), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/19670073 (last visited June 16, 2026).

138.    A third complaint echoed these concerns:

139.    As of XX/XX/XXXX, my refund has been pending for approximately XXXX months, which significantly exceeds the stated processing timeframe of XXXX business days. Despite multiple attempts to resolve this issue, I have not received a substantive response. XX/XX/XXXX attempt to get a response was mid XXXX XXXX I figured the XXXX days have passed and I would get a concrete answer, I did not. XX/XX/XXXX notice was beginning of XXXX, I received a generic response with no clear resolution. Also beginning of XXXX, sent another email detailing what I was requesting and continued getting only a generic response and nothing that was personalized to my issue. Across these communications, I have consistently requested : Confirmation of the refund amount A specific disbursement date An explanation for the delay MOHELA has failed to provide any of this information. Issue : This prolonged delay, combined with repeated non-substantive responses, raises serious concerns regarding improper servicing, lack of transparency, and failure to meet reasonable processing timelines. Complaint No. 21164121, Consumer Complaint Database, Consumer Fin. Prot. Bureau (rec'd April 11, 2026), https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/21164121 (last visited June 16, 2026).

140.    This substantial injury was not reasonably avoidable by Plaintiffs and Class Members. Borrowers had no ability to effectuate the refund process, no alternative servicer to whom they could turn, and no means of self-help. They were entirely dependent on MOHELA to effectuate the refunds to which they were entitled. When Plaintiffs and Class Members attempted to inquire about the status of their refunds, MOHELA's representatives, acting pursuant to direction approved by MOHELA, failed to disclose all relevant information and provided inaccurate information that compounded rather than mitigated the injury.

141.    The substantial injury caused by MOHELA's conduct is not outweighed by any countervailing benefit to consumers or to competition. There is no legitimate business justification for withholding borrower funds after PSLF discharge.

24

CLASS ACTION COMPLAINT

142. MOHELA's conduct further offends established public policy as declared by the California Legislature in enacting the Student Borrower Bill of Rights, including the Legislature's expressed intent to "[p]romote meaningful access to affordable repayment and loan forgiveness benefits for student loan borrowers in California" and to ensure that California student loan borrowers receive "reliable information," "quality customer service[,] and fair treatment." Cal. Civ. Code § 1788.100 (legislative findings and declarations).

143. MOHELA's conduct is also immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

144. MOHELA deprived Plaintiffs and Class Members — including borrowers who spent a decade or more in lower-paying public service careers in reliance on the PSLF program — of money owed to them, while continuing to receive substantial servicing fees from the federal government for the very accounts whose refunds it failed to process.

145. The harm to Plaintiffs and Class Members from MOHELA's delays in processing refunds outweighs any reasonable utility of MOHELA's conduct.

146. Pursuant to Cal. Civ. Code § 1788.103(d), Plaintiff Burnett and Urbina provided MOHELA with written notice of the alleged violations on behalf of herself and similarly situated consumers more than 45 days before filing this action, by certified mail, return receipt requested, addressed to MOHELA's principal place of business. MOHELA failed to cure the violations within the statutory period.

147. MOHELA's violations were willful and/or committed in reckless disregard of the rights of Plaintiffs and Class Members. MOHELA was on notice through borrower complaints, qualified written requests, complaints filed with the Department of Education's Federal Student Aid office, the Consumer Financial Protection Bureau's published Annual Reports of the Student Loan Ombudsman and Supervisory Highlights, and direct communications with Plaintiffs that its

CLASS ACTION COMPLAINT

refund process was systematically failing and that its representatives were providing inaccurate information to borrowers, yet MOHELA failed to take adequate corrective action.19

148.    As a direct and proximate result of MOHELA's violations of Cal. Civ. Code § 1788.101(b)(2), Plaintiffs and Class Members have suffered actual damages, including but not limited to the lost time-value of withheld refund amounts, interest and fees incurred on other obligations that Plaintiffs and Class Members would have paid down with their refunds, and other consequential financial harm.

149.    Plaintiffs are entitled to statutory damages for engaging in unfair practice toward borrowers working in public service. Plaintiffs are entitled to statutory damages for MOHELA's unfair practice of failing to issue timely PSLF refunds in the amount of $1,500 per violation.

150.    Class members, both within public sector and out of public sector, would similarly be owed damages per violation under California's statutory scheme and penalties for these violations.

151.    Defendant's action substantially interfered with Plaintiffs' and Class Members' rights to loan discharge or other financial benefits established under the terms of their promissory notes or the Higher Education Act of 1965. Therefore, Plaintiffs and Class Members are entitled to an award of treble their actual damages and in no case less than one thousand five hundred dollars ($1,500) per violation, pursuant to Cal. Civ. Code § 1788.103(c).

152.    Pursuant to Cal. Civ. Code § 1788.103(b), Plaintiffs and Class Members are also entitled to punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

---

19 See, e.g., Consumer Fin. Prot. Bureau, *Annual Report of the CFPB Student Loan Ombudsman* (Nov. 2024) (identifying MOHELA-specific refund delays and inaccurate borrower communications); Consumer Fin. Prot. Bureau, *Supervisory Highlights: Student Loan Servicing Special Edition* (Sept. 2022) (finding that excessive servicer delays in PSLF processing constitute unfair acts or practices).

CLASS ACTION COMPLAINT

*Unfair Practice of Failing to Timely Effectuate Required PSLF Refunds in Violation of California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(b)(2) and Cal. Civ. Code § 1788.101(b)(8)*

153.    Plaintiffs bring the second cause of action on behalf of themselves and similarly situated student loan borrowers against Defendant under the Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(b)(2).

154.    Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

155.    Plaintiffs and similarly situated student loan borrowers are "borrowers" as that term is defined in Cal. Civ. Code § 1788.100(a).

156.    Plaintiffs and similarly situated student loan borrowers owe or did owe a "student loan" as defined by Cal. Civ. Code § 1788.100(q).

157.    MOHELA is a "student loan servicer" as that term is defined in Cal. Civ. Code § 1788.100(s).

158.    Plaintiffs and Class Members are "borrower[s] working in public service" as that term is defined in Cal. Civ. Code § 1788.100(c). Each Plaintiff and Class Member earned, or qualified for, PSLF discharge through qualifying employment in a "public service job" as defined in 20 U.S.C. § 1087e(m) and its implementing regulations.

159.    MOHELA knew, or reasonably should have known, that Plaintiffs and Class Members were employed in public service jobs. MOHELA had access to each borrower's PSLF Form, on which an authorized representative of a qualifying public service employer had certified the borrower's employment, and MOHELA's grant of PSLF discharge was contingent on its determination that the borrower was so employed.

160.    Pursuant to Cal. Civ. Code § 1788.101(b)(8), a student loan servicer shall not engage in an unfair or deceptive practice toward a borrower working in public service or misrepresent or omit material information in connection with the servicing of a student loan owed by a borrower working in public service.

27

CLASS ACTION COMPLAINT

161.    The unfair conduct alleged was directed at, and exclusively affected, borrowers working in public service. The Class is, by definition, comprised of borrowers who earned PSLF discharge through qualifying public service employment. MOHELA's systematic delays in effectuating PSLF refunds, and its scripted misrepresentations regarding the cause and expected duration of those delays occurred entirely in connection with the servicing of student loans owed by borrowers working in public service.

162.    Refund delays, including those greater than 45 days, caused Plaintiffs and Class Members substantial injury, including the loss of the time-value and use of money lawfully owed to them; the inability to apply those funds to other debts, savings, or investment; and resulted in significant time commitment by Plaintiffs and Class Members to attempt to resolve the delay.

163.    Plaintiff Urbina waited approximately 445 days after her PSLF discharge for a refund.

164.    Class members have waited similar amounts of time to receive their refunds. In November 2024, the Consumer Financial Protection Bureau documented extensive refund delays across a range of federal student loan programs including, "refunds for any payments [borrowers] made after reaching 120 payments and receiving PSLF cancellation." Consumer Fin. Prot. Bureau, Annual Report of the CFPB Student Loan Ombudsman 19 (Nov. 2024), https://files.consumerfinance.gov/f/documents/cfpb_2024-annual-student-loan-ombudsmans-report_2024-11.pdf.

165.    The CFPB explained that it received complaints from borrowers about delays in receiving refunds ranging from $200 to $60,000. Id. at 20.

166.    National press has likewise reported on significant delays in refunds and members of Congress have noted these concerns as well. Ayelet Sheffey, Meet a Teacher Who Paid His Student Loans for 6 More Years than He Needed to Qualify for Debt Cancellation. Now He Can't Get His Money Back., Bus. Insider (April 2, 2023), https://www.businessinsider.com/how-to-get-student-loan-payment-refund-teacher-pslf-debt-2023-3.these issues & Letter from Sen. Robert Menendez et al. to Miguel Cardona, Sec'y of Educ. (Sept. 21, 2023), https://www.king.senate.gov/download/letter-to-secretary-cardona.

28

CLASS ACTION COMPLAINT

167. This substantial injury was not reasonably avoidable by Plaintiffs and Class Members. Borrowers had no ability to expedite the refund process, no alternative servicer to whom they could turn, and no means of self-help. They were entirely dependent on MOHELA to effectuate the refunds to which they were entitled. When Plaintiffs and Class Members attempted to inquire about the status of their refunds, MOHELA's representatives, acting pursuant to direction approved by MOHELA, failed to disclose all relevant information and provided inaccurate information that compounded rather than mitigated the injury.

168. The substantial injury caused by MOHELA's conduct is not outweighed by any countervailing benefit to consumers or to competition. There is no legitimate business justification for withholding borrower funds for a year or longer after PSLF discharge.

169. MOHELA's conduct further offends established public policy as declared by the California Legislature in enacting the Student Borrower Bill of Rights, including the Legislature's expressed intent to "[p]romote meaningful access to affordable repayment and loan forgiveness benefits for student loan borrowers in California" and to ensure that California student loan borrowers receive "reliable information," "quality customer service[,] and fair treatment." Cal. Civ. Code § 1788.100 (legislative findings and declarations).

170. MOHELA's conduct is also oppressive, unscrupulous, and substantially injurious to consumers, including borrowers like Plaintiffs and similarly situated individuals.

171. MOHELA deprived Plaintiffs and Class Members — including borrowers who spent a decade or more in lower-paying public service careers in reliance on the PSLF program — of money owed to them, while continuing to receive substantial servicing fees from the federal government for the very accounts whose refunds it failed to process.

172. The harm to Plaintiffs and Class Members from MOHELA's delays in processing refunds outweighs any reasonable utility of MOHELA's conduct.

173. Pursuant to Cal. Civ. Code § 1788.103(d), Plaintiffs Urbina and Burnett provided MOHELA with written notice of the alleged violations more than 45 days before filing this action, by certified mail, return receipt requested, addressed to MOHELA's principal place of business. MOHELA failed to cure the violations within the statutory period.

CLASS ACTION COMPLAINT

174.    MOHELA's violations were willful and/or committed in reckless disregard of the rights of Plaintiffs and Class Members. MOHELA was on notice through borrower complaints, qualified written requests, complaints filed with the Department of Education's Federal Student Aid office, the Consumer Financial Protection Bureau's published Annual Reports of the Student Loan Ombudsman and Supervisory Highlights, and direct communications with Plaintiffs that its refund process was systematically failing and that its representatives were providing inaccurate information to borrowers, yet MOHELA failed to take adequate corrective action.[20]

175.    As a direct and proximate result of MOHELA's violations of Cal. Civ. Code § 1788.101(b)(2), Plaintiffs and Class Members have suffered actual damages, including but not limited to the lost time-value of withheld refund amounts, interest and fees incurred on other obligations that Plaintiffs and Class Members would have paid down with their refunds, and other consequential financial harm.

176.    Plaintiffs are entitled to statutory damages for engaging in unfair practice toward borrowers working in public service. Plaintiffs are entitled to statutory damages for MOHELA's unfair practice of failing to issue timely PSLF refunds in the amount of $1,500 per violation.

177.    Defendant's action substantially interfered with Plaintiffs' and Class Members' rights to loan discharge or other financial benefits established under the terms of their promissory notes or the Higher Education Act of 1965. Therefore, Plaintiffs and Class Members are entitled to an award of treble their actual damages and in no case less than one thousand five hundred dollars ($1,500) per violation, pursuant to Cal. Civ. Code § 1788.103(c).

178.    Pursuant to Cal. Civ. Code § 1788.103(b), Plaintiffs and Class Members are also entitled to punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

[20] See, e.g., Consumer Fin. Prot. Bureau, *Annual Report of the CFPB Student Loan Ombudsman* (Nov. 2024) (identifying MOHELA-specific refund delays and inaccurate borrower communications); Consumer Fin. Prot. Bureau, *Supervisory Highlights: Student Loan Servicing Special Edition* (Sept. 2022) (finding that excessive servicer delays in PSLF processing constitute unfair acts or practices).

30

CLASS ACTION COMPLAINT

*Abusive Act or Practice Toward a Borrower in Violation of California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(a)(1), (a)(2)(B)(ii), and (a)(2)(B)(iii)*

179.    Plaintiffs bring the third cause of action on behalf of themselves and similarly situated student loan borrowers against Defendant under the Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(a).

180.    Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

181.    Plaintiffs and similarly situated student loan borrowers are "borrowers" as that term is defined in Cal. Civ. Code § 1788.100(a).

182.    Plaintiffs and similarly situated student loan borrowers owe or did owe a "student loan" as defined by Cal. Civ. Code § 1788.100(q).

183.    MOHELA is a "student loan servicer" as that term is defined in Cal. Civ. Code § 1788.100(s).

184.    Pursuant to Cal. Civ. Code § 1788.101(a)(1), a student loan servicer "shall not engage in abusive acts or practices when servicing a student loan in this state."

185.    Under Cal. Civ. Code § 1788.101(a)(2)(B), an act or practice is abusive if it takes unreasonable advantage of: (ii) the inability of a borrower to protect the borrower's interests when selecting or using a student loan, or a feature, term, or condition of a student loan; or (iii) the reasonable reliance by the borrower on a person engaged in servicing a student loan to act in the interests of the borrower.

186.    Plaintiffs and Class Members were unable to protect their own interests in connection with the use of their student loans and the receipt of refunds owed following PSLF discharge. Specifically:

187.    Plaintiffs and Class Members did not select MOHELA as their servicer and had no ability to choose, change, or remove MOHELA from that role. Plaintiffs and Class Members had no contractual or practical mechanism to transfer their accounts to a different servicer in order to obtain a timely refund.

31

CLASS ACTION COMPLAINT

188.	Plaintiffs and Class Members had no means of self-help to obtain their refunds. They could not compel MOHELA to initiate the refund. They could not access, audit, or correct the underlying account records held by MOHELA. And they had no ability to offset the withheld refund amounts against any other obligation.

189.	When Plaintiffs and Class Members attempted to assert their interests through the available channels — calling MOHELA, submitting complaints through MOHELA's and the Department of Education's complaint portals, and submitting qualified written requests — MOHELA either failed to respond, provided inaccurate information regarding the cause and expected duration of the delay, or referred them to escalation departments that did not resolve the issue.

190.	MOHELA took unreasonable advantage of Plaintiffs' and Class Members' inability to protect their interests. MOHELA knew that Plaintiffs and Class Members were dependent on MOHELA to initiate the refund process, knew that borrowers had no alternative means of obtaining the funds, and knew that the Treasury Department generally processes refund payments within five business days once initiated by the servicer. Despite this knowledge, MOHELA delayed initiating refunds for a year or longer, saving itself investments in staffing and systems to process refunds in a timely manner. MOHELA further exploited Plaintiffs' and Class Members' captive position by directing customer service representatives to provide scripted responses falsely attributing the delay to the Treasury Department, thereby misleading borrowers about their own culpability in the delays and discouraging Plaintiffs' and Class Members' ability to pursue a legal remedy.

191.	MOHELA's conduct was unreasonable. There is no legitimate business or operational justification for withholding borrower funds for a year or more after PSLF discharge, particularly where MOHELA was being compensated to perform precisely the function it was failing to perform. MOHELA's conduct served no purpose other than to retain control over funds belonging to Plaintiffs and Class Members and to insulate itself from accountability for the delay.

192.	Plaintiffs and Class Members reasonably relied on MOHELA to act in their interests in connection with the processing of refunds following PSLF discharge. Specifically:

32

CLASS ACTION COMPLAINT

193.    a. MOHELA, as the servicer assigned by the Department of Education, was the only entity with access to the account information, payment records, and refund-initiation systems necessary to effectuate refunds owed to Plaintiffs and Class Members.

194.    b. MOHELA expressly represented to Plaintiffs and Class Members that it would proactively process refunds without any further action required from the borrower, communicating these assurances through its account portal, written correspondence following PSLF discharge, and the scripted responses provided by its customer service representatives.

195.    c. MOHELA's status as a federally contracted servicer, charged with administering Plaintiffs' and Class Members' student loan accounts in accordance with federal law and program rules, reasonably led Plaintiffs and Class Members to expect that MOHELA would act in their interests, including by promptly initiating the refunds to which they were entitled.

196.    MOHELA took unreasonable advantage of Plaintiffs and Class Members. Despite knowing that borrowers were depending on MOHELA to act on their behalf, MOHELA delayed initiating refunds for a year or longer, failed to provide the necessary information, provided inaccurate information to borrowers who attempted to verify the status of their refunds, failed to escalate or resolve unresolved complaints, and falsely attributed the delays to the Treasury Department, thereby preventing borrowers from recognizing that MOHELA — and only MOHELA — controlled the timing of the refunds owed to them.

197.    MOHELA's conduct alleged herein constitutes an abusive act or practice in violation of Cal. Civ. Code § 1788.101(a)(1), (a)(2)(B)(ii), and (a)(2)(B)(iii).

198.    In the alternative, and pursuant to Cal. Civ. Code § 1788.101(a)(3), the abusive acts and practices prohibited by Cal. Civ. Code § 1788.101(a)(1) "include, but are not limited to, those described in paragraph (2)." To the extent MOHELA's conduct is not encompassed by Cal. Civ. Code § 1788.101(a)(2)(B)(ii) or (a)(2)(B)(iii), the conduct is independently abusive within the meaning of Cal. Civ. Code § 1788.101(a)(1). MOHELA's systematic delay in effectuating refunds owed to Plaintiffs and Class Members while directing its representatives to misattribute the delays to a third party, is precisely the type of "predatory student loan industry practice" the

CLASS ACTION COMPLAINT

Legislature sought to prohibit when it enacted the Student Borrower Bill of Rights. Cal. Civ. Code § 1788.100 (legislative findings and intent).

199.    Pursuant to Cal. Civ. Code § 1788.103(d), Plaintiffs Urbina and Burnett provided MOHELA with written notice of the alleged violations more than 45 days before filing this action, by certified mail, return receipt requested, addressed to MOHELA's principal place of business. MOHELA failed to cure the violations within the statutory period.

200.    MOHELA's violations were willful and/or committed in reckless disregard of the rights of Plaintiffs and Class Members. MOHELA was on notice through borrower complaints, qualified written requests, complaints filed with the Department of Education's Federal Student Aid office, the Consumer Financial Protection Bureau's published Annual Reports of the Student Loan Ombudsman and Supervisory Highlights, and direct communications with Plaintiffs that its refund process was systematically failing and that its representatives were providing inaccurate information to borrowers, yet MOHELA failed to take adequate corrective action.[21]

201.    As a direct and proximate result of MOHELA's violations of Cal. Civ. Code § 1788.101(a), Plaintiffs and Class Members have suffered actual damages, including but not limited to the lost time-value of withheld refund amounts, interest and fees incurred on other obligations that Plaintiffs and Class Members would have paid down with their refunds, and other consequential financial harm.

202.    Defendant's action substantially interfered with Plaintiffs' and Class Members' rights to loan discharge or other financial benefits established under the terms of their promissory notes or the Higher Education Act of 1965. Therefore, Plaintiffs and Class Members are entitled to an award of treble their actual damages and in no case less than one thousand five hundred dollars ($1,500) per violation, pursuant to Cal. Civ. Code § 1788.103(c).

---

[21] See, e.g., Consumer Fin. Prot. Bureau, *Annual Report of the CFPB Student Loan Ombudsman* (Nov. 2024); Consumer Fin. Prot. Bureau, *Supervisory Highlights: Student Loan Servicing Special Edition* (Sept. 2022).

CLASS ACTION COMPLAINT

203.     Pursuant to Cal. Civ. Code § 1788.103(b), Plaintiffs and Class Members are also entitled to punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
*Deceptive Practice Toward a Borrower or Misrepresent Material Information in Connection with Servicing a Student Loan in Violation of California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(b)(2) and Cal. Civ. Code § 1788.101(b)(8)*

204.     Plaintiffs bring the fourth cause of action on behalf of themselves and similarly situated student loan borrowers against Defendant under the Student Borrower Bill of Rights, Cal. Civ. Code § 1788.101(b)(2).

205.     Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

206.     Plaintiffs and similarly situated student loan borrowers are "borrowers" as that term is defined in Cal. Civ. Code § 1788.100(a).

207.     Plaintiffs and similarly situated student loan borrowers owe or did owe a "student loan" as defined by Cal. Civ. Code § 1788.100(q).

208.     MOHELA is a "student loan servicer" as that term is defined in Cal. Civ. Code § 1788.100(s).

209.     Plaintiffs and Class Members are "borrower[s] working in public service" as that term is defined in Cal. Civ. Code § 1788.100(c). Each Plaintiff and Class Member earned, or qualified for, PSLF discharge through qualifying employment in a "public service job" as defined in 20 U.S.C. § 1087e(m) and its implementing regulations.

210.     MOHELA knew, or reasonably should have known, that Plaintiffs and Class Members were employed in public service jobs. MOHELA had access to each borrower's PSLF Form, on which an authorized representative of a qualifying public service employer had certified the borrower's employment, and MOHELA's grant of PSLF discharge was contingent on its determination that the borrower was so employed.

35

CLASS ACTION COMPLAINT

211.    Pursuant to Cal. Civ. Code § 1788.101(b)(8), a student loan servicer shall not engage in a deceptive practice toward a borrower working in public service or misrepresent or omit material information in connection with the servicing of a student loan owed by a borrower working in public service.

212.    The Class is, by definition, comprised of borrowers who earned PSLF discharge through qualifying public service employment. MOHELA's scripted misrepresentations regarding the cause and expected duration of those delays occurred entirely in connection with the servicing of student loans owed by borrowers working in public service.

213.    MOHELA's conduct constitutes affirmative misrepresentations based on MOHELA provided scripts and materials regarding a program specific to borrowers working in public service. The PSLF program — including the right to a refund of payments made in excess of the 120 qualifying payments — is by statute available only to borrowers working in public service. See 20 U.S.C. § 1087e(m). MOHELA's omissions regarding when, how, and by whom PSLF refunds would be processed concerned the operation of a program available exclusively to borrowers working in public service and therefore fall within the heightened protections of Cal. Civ. Code § 1788.101(b)(8).

214.    MOHELA engaged in deceptive practices toward Plaintiffs and Class Members and misrepresented and omitted material information in connection with the servicing of their student loans by, among other things:

215.    Misrepresenting material information about the actual status, expected timing, and cause of refund delays, including the fact that MOHELA had not yet initiated the refund process internally for many borrowers and that no individualized estimate of completion existed.

216.    Failing to disclose that MOHELA's customer service representatives were not provided with accurate, current information regarding the status of pending refunds, and that the timelines and explanations being communicated were not based on individualized review of the borrower's account.

217.    Materially misrepresenting as a matter of policy the nature of its internal processes, delays, and backlog.

36

CLASS ACTION COMPLAINT

218.    MOHELA's conduct alleged herein constitutes a deceptive practice toward a borrower working in public service and an omission of material information in connection with the servicing of a student loan owed by a borrower working in public service, in violation of Cal. Civ. Code § 1788.101(b)(8).

219.    Each of the foregoing misrepresentations concerned material information. The existence, amount, and timing of a refund owed to a borrower directly affects the borrower's financial decisions, including budgeting, debt servicing, and the borrower's ability to use the funds for daily expenses, savings, or investment. The identity of the entity responsible for any delay is material because it affects whether and how a borrower can effectively pursue recourse.

220.    MOHELA's conduct was likely to mislead, and did in fact mislead, reasonable borrowers acting reasonably under the circumstances. Plaintiffs and Class Members had no independent means of verifying refund timelines or the cause of delays and had no choice but to rely on the information MOHELA provided through its scripted responses, written communications, and account portal.

221.    MOHELA's conduct also independently violates Cal. Civ. Code § 1788.101(b)(2) as a misrepresentation of "the amount, nature, or terms of a fee or payment due or claimed to be due on a student loan." A refund of payments made in excess of the 120 qualifying payments required for PSLF discharge is a payment due to the borrower in connection with a student loan. MOHELA misrepresented the nature of that payment (falsely characterizing it as one controlled by the Treasury Department rather than by MOHELA) and the terms of that payment (representing a 90-day timeline that MOHELA knew was inaccurate).

222.    MOHELA's conduct alleged herein constitutes a deceptive practice toward a borrower and an omission of material information in connection with the servicing of a student loan, in violation of Cal. Civ. Code § 1788.101(b)(2).

223.    Pursuant to Cal. Civ. Code § 1788.103(d), Plaintiffs Urbina and Burnett provided MOHELA with written notice of the alleged violations more than 45 days before filing this action, by certified mail, return receipt requested, addressed to MOHELA's principal place of business. MOHELA failed to cure the violations within the statutory period.

CLASS ACTION COMPLAINT

224.     As a direct and proximate result of MOHELA's violations of Cal. Civ. Code § 1788.101(b)(2), Plaintiffs and Class Members have suffered actual damages, including but not limited to their inability to accurately forecast expected payments and successfully manage their household budgets. Plaintiffs and Class Members further suffered harm in the form of wasted time and effort attempting to verify the status of their refunds, including time spent making repeated phone calls, submitting written complaints, and pursuing escalation procedures that MOHELA's representatives knew or should have known would not yield accurate information.

225.     MOHELA's violations were willful and/or committed in reckless disregard of the rights of Plaintiffs and Class Members. MOHELA itself drafted, approved, and disseminated the scripted responses that directed its customer service representatives to provide inaccurate information to borrowers about refund timelines and to falsely attribute the delays to the Treasury Department. MOHELA continued to authorize and use these scripts despite knowing — through borrower complaints, qualified written requests, complaints submitted through the Federal Student Aid complaint portal, and direct communications with Plaintiffs and Class Members — that the information being provided was false and that borrowers were being misled.

226.     MOHELA's conduct substantially interfered with Plaintiffs' and Class Members' right to a financial benefit provided under their promissory notes and the Higher Education Act, namely the right to a refund of payments made in excess of the 120 qualifying payments required for PSLF discharge under 20 U.S.C. § 1087e(m). Plaintiffs and Class Members are therefore entitled to treble actual damages of no less than $1,500 per Plaintiff per violation, pursuant to Cal. Civ. Code § 1788.103(b).

227.     Pursuant to Cal. Civ. Code § 1788.103(b), Plaintiffs and Class Members are also entitled to punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
*Failure to Timely Process Paperwork in Violation of California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.102(g)*

38

CLASS ACTION COMPLAINT

228.    Plaintiffs bring the fifth cause of action on behalf of themselves and similarly situated student loan borrowers against Defendant under the Student Borrower Bill of Rights, Cal. Civ. Code § 1788.102(g).

229.    Plaintiffs reallege and incorporate by reference all of the allegations set forth above.

230.    Plaintiffs and Class Members are "borrowers" as that term is defined in Cal. Civ. Code § 1788.100(a).

231.    Plaintiffs and Class Members owe or did owe a "student loan" as defined by Cal. Civ. Code § 1788.100(q).

232.    MOHELA is a "student loan servicer" as that term is defined in Cal. Civ. Code § 1788.100(s).

233.    Pursuant to Cal. Civ. Code § 1788.102(g)(1), a student loan servicer shall "[t]imely process its paperwork, consistent with existing federal requirements, including, but not limited to, ensuring that customer service personnel have received both of the following: (A) Appropriate training about the handling of paperwork. (B) Access to necessary information about forms and applications that are in process, have been approved, or have been denied."

234.    The processing of PSLF discharges and the resulting refunds of payments made in excess of the 120 qualifying payments constitute "paperwork" within the meaning of Cal. Civ. Code § 1788.102(g)(1).

235.    MOHELA failed to timely process its paperwork in connection with PSLF refunds owed to Plaintiffs and Class Members. MOHELA's processing of PSLF refunds frequently exceeded one year, and in some cases — including Plaintiff Burnett's — has yet to be completed at all.

236.    MOHELA further failed to ensure that its customer service personnel had access to necessary information about Plaintiffs' and Class Members' pending refunds, in violation of Cal. Civ. Code § 1788.102(g)(1)(B). Specifically:

CLASS ACTION COMPLAINT

237. MOHELA's customer service representatives lacked access to accurate, individualized information about whether and when a borrower's refund had been initiated, was in process, or had been completed.

238. In place of accurate information, MOHELA provided its customer service representatives with scripted responses containing generalized timelines and explanations that MOHELA knew, or reasonably should have known, did not reflect the actual status of any individual borrower's refund.

239. When borrowers, including Plaintiffs Urbina and Burnett, called to inquire about the status of their refunds, MOHELA's representatives were unable to provide individualized, accurate information about those refunds.

240. Even when borrower calls were escalated to MOHELA's "escalation department," that department also lacked access to information sufficient to resolve the borrower's inquiry, as evidenced by Plaintiff Urbina's experience on February 9, 2026, when her escalated call was redirected to a customer satisfaction survey and disconnected without resolution.

241. MOHELA's conduct alleged herein constitutes a failure to timely process paperwork and a failure to ensure that its customer service personnel had appropriate training and access to necessary information about pending forms and applications, in violation of Cal. Civ. Code § 1788.102(g).

242. Pursuant to Cal. Civ. Code § 1788.103(d), Plaintiffs Urbina and Burnett provided MOHELA with written notice of the alleged violations more than 45 days before filing this action, by certified mail, return receipt requested, addressed to MOHELA's principal place of business. MOHELA failed to cure the violations within the statutory period.

243. MOHELA's conduct substantially interfered with Plaintiffs' and Class Members' rights to loan discharge or other financial benefits established under the terms of their promissory notes or the Higher Education Act of 1965. Plaintiffs and Class Members are therefore entitled to treble actual damages of no less than $1,500 per Plaintiff per violation, pursuant to Cal. Civ. Code § 1788.103(c).

40

CLASS ACTION COMPLAINT

244.    Pursuant to Cal. Civ. Code § 1788.103(b), Plaintiffs and Class Members are also entitled to punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

*Failure to Acknowledge and Respond to Qualified Written Requests in Violation of California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.102(t)*

245.    Plaintiffs bring the sixth cause of action on behalf of themselves and similarly situated student loan borrowers against Defendant under the Student Borrower Bill of Rights, Cal. Civ. Code § 1788.102(t).

246.    Plaintiffs reallege and incorporate by reference all of the allegations set forth above.

247.    Plaintiffs and Class Members are "borrowers" as that term is defined in Cal. Civ. Code § 1788.100(a).

248.    Plaintiffs and Class Members owe or did owe a "student loan" as defined by Cal. Civ. Code § 1788.100(q).

249.    MOHELA is a "student loan servicer" as that term is defined in Cal. Civ. Code § 1788.100(s).

250.    Pursuant to Cal. Civ. Code § 1788.102(t)(1), a student loan servicer shall "[r]espond to a qualified written request by acknowledging receipt of the request within 10 business days and within 30 business days, provide information relating to the request and, if applicable, either the action the student loan servicer will take to correct the account or an explanation for the position that the borrower's account is correct."

251.    Pursuant to Cal. Civ. Code § 1788.102(t)(2), the 30-business-day response period may be extended for not more than 15 days only if, before the end of the 30-day period, the student loan servicer notifies the borrower of the extension and the reason for the delay.

252.    On March 23, 2026, Plaintiff Urbina sent MOHELA a qualified written request, within the meaning of Cal. Civ. Code § 1788.100(o), by certified mail, requesting the underlying

41

CLASS ACTION COMPLAINT

account information and communications necessary to obtain accurate information about her payments and her entitlement to a refund following her PSLF discharge.

253.    MOHELA failed to acknowledge receipt of Plaintiff Urbina's qualified written request within 10 business days as required by Cal. Civ. Code § 1788.102(t)(1).

254.    MOHELA failed to provide complete information relating to Plaintiff Urbina's qualified written request, or to describe any corrective action or explain the position that her account was correct, within 30 business days as required by Cal. Civ. Code § 1788.102(t)(1). MOHELA's April 9, 2026 letter to Plaintiff Urbina was a response to the separate notice of violation she sent pursuant to Cal. Civ. Code § 1788.103(d) and did not acknowledge or address the qualified written request or provide any of the underlying account information or communications it requested. MOHELA did not notify Plaintiff Urbina of any extension of the 30-day period or the reason for any delay, as required by Cal. Civ. Code § 1788.102(t)(2).

255.    On March 23, 2026, Plaintiff Burnett sent MOHELA a qualified written request, within the meaning of Cal. Civ. Code § 1788.100(o), by certified mail, requesting the underlying account information and communications necessary to obtain accurate information about her payments and her entitlement to a refund following her PSLF discharge.

256.    MOHELA failed to acknowledge receipt of Plaintiff Burnett's qualified written request within 10 business days as required by Cal. Civ. Code § 1788.102(t)(1).

257.    MOHELA failed to provide any response to Plaintiff Burnett's qualified written request, including any information relating to the request, any description of corrective action, or any explanation regarding her account, within 30 business days or at any time thereafter, as required by Cal. Civ. Code § 1788.102(t)(1). MOHELA did not notify Plaintiff Burnett of any extension of the 30-day period or the reason for any delay, as required by Cal. Civ. Code § 1788.102(t)(2).

258.    Upon information and belief, MOHELA's failures to acknowledge and respond to qualified written requests are systemic and class wide. MOHELA routinely fails to acknowledge qualified written requests submitted by California borrowers within 10 business days, routinely

42

CLASS ACTION COMPLAINT

fails to provide substantive responses within 30 business days, and routinely fails to invoke the extension procedure permitted under Cal. Civ. Code § 1788.102(t)(2).

259.    MOHELA's conduct alleged herein constitutes a failure to acknowledge and respond to qualified written requests in violation of Cal. Civ. Code § 1788.102(t).

260.    As a direct and proximate result of MOHELA's violations of Cal. Civ. Code § 1788.102(t), Plaintiffs and Class Members have suffered actual damages, including the continued loss of the time-value and use of refund amounts owed to them, the inability to verify the status of their accounts and refunds through the formal mechanism the Legislature established for that purpose, and the wasted time and effort attempting to obtain information by other means. MOHELA's violations were willful and/or committed in reckless disregard of the rights of Plaintiffs and Class Members. MOHELA had actual notice of each Plaintiff's qualified written request through its receipt of certified mail, yet deliberately or recklessly failed to comply with the acknowledgment and response deadlines that the Student Borrower Bill of Rights expressly imposes.

261.    Pursuant to Cal. Civ. Code § 1788.103(b), each violation of Cal. Civ. Code § 1788.102(t) entitles each affected Plaintiff and Class Member to actual damages of no less than $500 per Plaintiff per violation. MOHELA's failure to acknowledge receipt of a qualified written request within 10 business days, and its failure to provide a substantive response within 30 business days, each constitute separate and independent violations as to each affected borrower. Plaintiffs and Class Members are therefore entitled to statutory minimum damages of $500 per violation, regardless of whether the borrower can quantify additional out-of-pocket loss.

262.    Pursuant to Cal. Civ. Code § 1788.103(b), Plaintiffs and Class Members are also entitled to punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper. To the extent MOHELA's failure to acknowledge or respond to a particular qualified written request substantially interfered with a Plaintiff's or Class Member's right to an alternative payment arrangement, loan forgiveness, cancellation, or discharge, or any other financial benefit provided under the borrower's promissory note or the

43

CLASS ACTION COMPLAINT

Higher Education Act of 1965, that Plaintiff or Class Member is also entitled to treble actual damages of no less than $1,500 per violation, pursuant to Cal. Civ. Code § 1788.103(c).

## SEVENTH CAUSE OF ACTION

*Failure to Treat Qualified Requests as Qualified Written Requests in Violation of California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.102(i)*

263.    Plaintiffs bring the seventh cause of action on behalf of themselves and similarly situated student loan borrowers against Defendant under the Student Borrower Bill of Rights, Cal. Civ. Code § 1788.102(i).

264.    Plaintiffs reallege and incorporate by reference all of the allegations set forth above.

265.    Plaintiffs and Class Members are "borrowers" as that term is defined in Cal. Civ. Code § 1788.100(a).

266.    Plaintiffs and Class Members owe or did owe a "student loan" as defined by Cal. Civ. Code § 1788.100(q).

267.    MOHELA is a "student loan servicer" as that term is defined in Cal. Civ. Code § 1788.100(s).

268.    Pursuant to Cal. Civ. Code § 1788.102(i), a student loan servicer shall "[t]reat a qualified request as if it were a qualified written request and comply with subdivision (t) with respect to that qualified request."

269.    A "qualified request" is defined in Cal. Civ. Code § 1788.100(n) as "any inbound telephone call, the subject of which cannot be resolved in a single phone call, made by a borrower to a student loan servicer in which either the borrower requests specific information from the student loan servicer or reports what the borrower believes to be an error regarding the borrower's account."

270.    Plaintiff Urbina made multiple qualified requests to MOHELA, including but not limited to her telephone calls of January 14, 2026, February 2, 2026, and February 9, 2026, in which she requested specific information regarding the status of her refund and reported what she

44

CLASS ACTION COMPLAINT

believed to be an error regarding the processing of her account. None of these calls resolved the subject matter of her inquiry in a single phone call.

271.    Plaintiff Burnett made qualified requests to MOHELA in connection with the status of her refund following her PSLF discharge, including a call in which she was incorrectly informed that she was not due a refund despite the fact that account records reflected she was owed approximately $17,647. None of these calls resolved the subject matter of her inquiry in a single phone call.

272.    MOHELA failed to treat Plaintiffs' qualified requests as qualified written requests as required by Cal. Civ. Code § 1788.102(i). Specifically, MOHELA failed to acknowledge receipt of Plaintiffs' qualified requests within 10 business days, failed to provide information relating to the requests within 30 business days, failed to describe corrective action it would take, failed to provide an explanation of the position that Plaintiffs' accounts were correct, and failed to invoke the extension procedure permitted under Cal. Civ. Code § 1788.102(t)(2).

273.    Upon information and belief, MOHELA's failure to treat qualified requests as qualified written requests is systemic and class-wide. MOHELA routinely fails to acknowledge or respond to telephone calls from California borrowers reporting errors or seeking information about their accounts that cannot be resolved in a single call, in violation of Cal. Civ. Code § 1788.102(i).

274.    MOHELA's conduct alleged herein constitutes a failure to treat qualified requests as qualified written requests in violation of Cal. Civ. Code § 1788.102(i).

275.    Pursuant to Cal. Civ. Code § 1788.103(d), Plaintiffs Urbina and Burnett provided MOHELA with written notice of the alleged violations more than 45 days before filing this action, by certified mail, return receipt requested, addressed to MOHELA's principal place of business. MOHELA failed to cure the violations within the statutory period.

276.    As a direct and proximate result of MOHELA's violations of Cal. Civ. Code § 1788.102(i), Plaintiffs and Class Members have suffered actual damages as set forth in the First, Third, and Sixth Causes of Action, including the continued loss of the time-value and use of refund amounts owed to them and the wasted time and effort attempting to obtain accurate information about the status of their accounts. MOHELA's violations were willful and/or committed in reckless

45

CLASS ACTION COMPLAINT

disregard of the rights of Plaintiffs and Class Members for the reasons set forth in the First, Third, and Sixth Causes of Action.

277.    Pursuant to Cal. Civ. Code § 1788.103(b), each violation of Cal. Civ. Code § 1788.102(i) entitles each affected Plaintiff and Class Member to actual damages of no less than $500 per Plaintiff per violation. MOHELA's failure to treat each qualified request as a qualified written request, including its failure to acknowledge receipt of each qualified request within 10 business days and its failure to provide a substantive response within 30 business days, constitutes a separate and independent violation as to each affected borrower. Plaintiffs and Class Members are therefore entitled to statutory minimum damages of $500 per violation, regardless of whether the borrower can quantify additional out-of-pocket loss.

278.    Pursuant to Cal. Civ. Code § 1788.103(b), Plaintiffs and Class Members are also entitled to punitive damages, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper. To the extent MOHELA's failure to acknowledge or respond to a particular qualified request substantially interfered with a Plaintiff's or Class Member's right to an alternative payment arrangement, loan forgiveness, cancellation, or discharge, or any other financial benefit provided under the borrower's promissory note or the Higher Education Act of 1965, that Plaintiff or Class Member is also entitled to treble actual damages of no less than $1,500 per violation, pursuant to Cal. Civ. Code § 1788.103(c).

## EIGHTH CAUSE OF ACTION
*Third Party Beneficiary Breach of Contract*

279.    Plaintiffs bring the eighth cause of action on behalf of themselves and similarly situated individuals.

46

CLASS ACTION COMPLAINT

280.    In April 2023, the Department of Education entered into a contract with MOHELA to perform student loan servicing. Servicing under this contract 'went live' on April 1, 2024.[22]

281.    The contract is designed to provide, among other services, "complete student loan servicing" to replace the prior Legacy contracts. In entering the contract, MOHELA agreed that as a servicer it would "prioritize borrower needs and preferences to deliver an improved borrower experience."[23]

282.    The contract requires the "Execution, discharge, and forgiveness for Public Service Loan Forgiveness, Teacher Loan Forgiveness, Total Permanent Disability, and Borrower Defense."[24]

283.    In addition, it has two specific refund-related requirements which first require MOHELA to issue refunds with account balances greater than $5 and to complete the refund process within 45 days. Specifically:

284.    Section 28016.030: The contractor is required to initiate a refund to the borrower for an account that is overpaid by greater than or equal to $5.00. Refunds for an account that is overpaid of $4.99 or less shall only be initiated if requested by the borrower.[25]

285.    Section 28024.010: The contractor shall clear all credit balances on all loans within 45 calendar days; account balance must not be less than $0 on day 45.[26]

---

[22] *Maldonado v. Higher Education Loan Authority of the State of Missouri,* No. 3:24-cv-07850-VC (N.D. Cal.), ECF No. 21-1, at 1 (Declaration of Jennifer Farmer in Support of Defendant Higher Education Loan Authority of the State of Missouri's Motion to Dismiss Complaint and Strike Class Definition).

[23] *Maldonado v. Higher Education Loan Authority of the State of Missouri*, No. 3:24-cv-07850-VC (N.D. Cal.), ECF No. 21-3, at 10 (servicing contract between the U.S. Department of Education and MOHELA).

[24] *Id.* at 15

[25] *Maldonado v. Higher Education Loan Authority of the State of Missouri*, No. 3:24-cv-07850-VC (N.D. Cal.), ECF No. 21-7, at 214 (Business Operations Servicing Requirements).

[26] *Id*. at 217

47

CLASS ACTION COMPLAINT

286. Plaintiffs were intended third-party beneficiaries of that servicing contract in that they were borrowers that were entitled to refunds after PSLF forgiveness.

287. MOHELA has breached that provision of the contract by not providing PSLF refunds within 45 days of the PSLF discharge.

288. Neither Plaintiff Urbina nor Plaintiff Burnett received their PSLF refund within 45 days of their PSLF discharge.

289. Plaintiffs and other similarly situated borrowers have been harmed by the breaching, namely the loss of funds, the lost interest from not having those funds, and other damages that directly relate to MOHELA's servicing contract.

## PRAYER FOR RELIEF

290. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiffs as representatives of the Class and their counsel as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c) For an order declaring that Defendant is obligated to reimburse Plaintiffs and Class Members for any and all sums paid in connection with unlawful acts including the failure to issue refunds, the failure to issue them timely, and their failure to comply with the servicing contract;

(d) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(e) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, including those associated with servicing PSLF borrowers under California's statutory law aimed at protecting borrowers;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of equitable monetary relief;

48

CLASS ACTION COMPLAINT

(h)    For injunctive relief as pleaded or as the Court may deem proper;

(i)    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(j)    Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

291.    Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: June 29, 2026.

Respectfully Submitted,
*/s/ Brett R. Cohen*
Brett R. Cohen, Esq. (SBN 337543)
**LEEDS BROWN LAW, P.C.**
134 Mineola Blvd, 2nd Floor
Mineola, NY 11501
Tel: 516-873-9550
bcohen@leedsbrownlaw.com

*/s/ W. Austin Hinkle*
W. Austin Hinkle (SBN 313856)
**PUBLIC GOODS PRACTICE, LLP**
502 W 7th St STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com

*Attorneys for Plaintiffs and Proposed Class*

CLASS ACTION COMPLAINT