**THOMPSON COBURN LLP**
**LUKAS SOSNICKI, CSB 295895**
**lsosnicki@thompsoncoburn.com**
**GREGORY G. BREZOVEC, CSB 340941**
**gbrezovec@thompsoncoburn.com**
**10100 Santa Monica Blvd., Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant
Higher Education Loan Authority
of the State of Missouri

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

GLENDA BURNETT and DAISY URBINA, on behalf of themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI D/B/A MOHELA,

Defendant.

CASE NO. 5:26-cv-3580 SSS (ACCVx)

District Judge Sunshine Suzanne Sykes
Magistrate Judge Angela C. C. Viramontes

**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR TO REQUIRE JOINDER OF UNITED STATES DEPARTMENT OF EDUCATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Complaint Filed: June 29, 2026

Date: October 23, 2026
Time: 2:00 p.m.
Crtrm.: 2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 23, 2026, at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 2 of the above entitled Court, located on the 2nd Floor of the George E. Brown, Jr. Federal Building and United States Courthouse, 3470 Twelfth Street, Riverside, CA 92501, before the Honorable Sunshine S. Sykes, Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss, with prejudice, the complaint filed by Plaintiffs Glenda Burnett and Daisy Urbina (ECF 1) for failure to state a claim upon which relief may be granted. The Court should dismiss the complaint because:

1. The HEA preempts Plaintiffs' claims under the California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.100 *et seq.* (the "SBBR") (Counts 1-7).
2. Plaintiffs' SBBR claims (Counts 1-7) also fail because MOHELA, as a public entity, is immune from liability under the SBBR.
3. Plaintiffs' breach of contract claim (Count 8) fails because Plaintiffs are neither parties to, nor third-party beneficiaries of, MOHELA's Servicing Contract with the United States Department of Education (the "ED").

Alternatively, to the extent the Court does not dismiss the complaint outright, MOHELA will and hereby does move the Court pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19(a) to order Plaintiffs to join the ED as a required party defendant. The Court should order the joinder of the ED because:

1. In the ED's absence, the Court cannot accord complete relief among the existing parties (Plaintiffs and MOHELA) in that only the ED can approve and cause the issuance of the loan payment refunds (which come from federal funds via the United States Treasury) sought by Plaintiffs in this case. As a non-owner of the loans, MOHELA cannot do so.

2. The ED claims an interest relating to the subject matter of this case—its ownership of the federal student loans at issue, the Public Service Loan Forgiveness ("PSLF") Program, and PSLF refunds allegedly owed to borrowers by the ED—and disposing of this case in the ED's absence may impair or impede the ED's ability to protect its interests in the ownership of the loans, the PSLF Program, and PSLF refunds.

Pursuant to Local Rule 7-3, commencing on August 25, 2026, counsel for MOHELA met and conferred with Plaintiffs' counsel with respect to MOHELA's anticipated motion to dismiss. Sosnicki Decl. ¶ 2. The parties discussed the grounds of MOHELA's motion, but were unable to reach an agreement as to the motion and the allegations in the complaint. *Id.*

DATED: September 16, 2026 **THOMPSON COBURN LLP**

By: */s/ Lukas Sosnicki*
**LUKAS SOSNICKI**
**GREGORY G. BREZOVEC**
Attorneys for Defendant
Higher Education Loan Authority
of the State of Missouri

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 5

III. ARGUMENT .......... 6

A. The HEA preempts Plaintiffs' SBBR claims (Counts 1-7). .......... 6

B. Plaintiffs' SBBR claims (Counts 1-7) also fail because MOHELA, as a public entity, is immune from liability under the SBBR. .......... 10

1. Hyatt. .......... 11

2. Under Missouri state sovereign immunity law, MOHELA is immune from SBBR liability. .......... 12

3. Under California state sovereign immunity law, public entities are immune from SBBR liability. .......... 14

C. Plaintiffs' breach of contract claim (Count 8) fails because Plaintiffs are neither parties to, nor third-party beneficiaries of, MOHELA's Servicing Contract with the ED. .......... 17

D. Under Rule 19(a), Plaintiffs must join the ED as a party defendant. .......... 21

IV. CONCLUSION .......... 24

## TABLE OF AUTHORITIES


Page(s)

**Cases**

*Anthony v. Navient Corp.*, No. 2:24-CV-09600-AH-(ASX), 2025 WL 2190616 (C.D. Cal. July 11, 2025) ........ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 5

*Assoc. General Contractors of California, Inc. v. Council of Carpenters*, 459 U.S. 519 (1983) ........ 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 6

*Biden v. Nebraska*, 600 U.S. 477 (2023) ........ 1, 13

*Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260 (9th Cir. 1996) ........ 10

*Caldwell v. Montoya*, 10 Cal. 4th 972 (1995) ........ 17

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ........ 6-8

*City of Harrisonville v. Bd. of Trustees of Mo Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770 (Mo. 2022) ........ 12

*Cockrell v. Navient Corp.*, No. 8:24-CV-01780-JVS-JDE, 2025 WL 1909837 (C.D. Cal. June 9, 2025) ........ 7

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861 (9th Cir. 2004) ........ 22

*Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691 (E.D. Mo. July 29, 2021) ........ 13

*Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175 ........ 19

*Franchise Tax Board of California v. Hyatt*, 578 U.S. 171 (2016) ........ 11-12, 14, 17

*GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027 (9th Cir. 2012) ........ 17-19, 21

*In re Gilead Scis. Sec. Litig.*, 536 F. 3d 1049 (9th Cir. 2008) .................................. 5

*Gordon v. Sheriffs Off. Adams Cnty.*, No. 6:23-CV-01139, 2025 WL 4113569 (W.D. La. Dec. 4, 2025) .................. 14

*Hagelberg v. Higher Educ. Loan Auth. of the State of Missouri*, No. 5:26-CV-00695-SSS-DTBX, 2026 WL 2287634 (C.D. Cal. Aug. 7, 2026) .................................................................................... 9-10

*Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160 (E.D. Cal. 2010) ............................................................ 6

*Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019) ........... 18-19

*Jones v. Missouri Lab. & Indus. Rels. Comm'n*, 734 S.W.3d 802 (Mo. 2026) ........................................................................ 14

*Lee v. City of Los Angeles*, 250 F. 3d 668 (9th Cir. 2001) ....................................... 1

*Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798 (N.D. Ga. Mar. 16, 2020) ............................... 19

*Lucas v. Dep't of Corr.*, 66 F. 3d 245 (9th Cir. 1995) .............................................. 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ........................................................................ 5

*Mermigas v. Higher Educ. Loan Auth.*, No. 24-CV-11505, 2025 WL 2576745 (N.D. Ill. Sept. 4, 2025) ....................... 13

*Nichols v. City of Kirksville*, 68 F.3d 245 (8th Cir. 1995) ....................................... 13

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111 (9th Cir. 2013) ......................................................................... 16-17

*Oregon State Univ. v. Superior Ct.*, 16 Cal. App. 5th 1180 (4th Dist. 2017) ............................................................ 14

*Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124 (S.D. Cal. 2005) .......................... 10

*Pittman v. Rutherford*, No. CV 19-36-DLB-CJS, 2020 WL 6384726 (E.D. Ky. Oct. 30, 2020) .......... 14

*Poke v. Indep. Sch. Dist.*, 647 S.W.3d 18 (Mo. 2022) .......... 13

*Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269 (1st Dist. 1994) .......... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......... 1

*Travis v. Navient Corp.*, 460 F. Supp. 3d 269 (E.D.N.Y. 2020) .......... 18-19

*Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275 (D.N.J. Apr. 14, 2022) .......... 19

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070 (C.D. Cal. 2019) .......... 8, 18-20

*Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980 (N.D. Ill. 2024) .......... 18-20

**Statutes**

20 U.S.C. § 1001 *et seq.* .......... *passim*

20 U.S.C. § 1080a .......... 10

20 U.S.C. § 1087e .......... 1, 2

20 U.S.C. § 1098g .......... 7-9

Cal. Civ. Code § 1788.100 *et seq.* .......... *passim*

Cal. Civ. Code § 1788.101 .......... 16

Cal. Civ. Code § 1788.102 .......... 16

Cal. Corp. Code § 25013 .......... 1

Cal. Gov't Code § 811.2 .......... 15

Cal. Gov't Code § 815 .......... 15-16

Mo. Rev. Stat. § 173.360 .......... 1, 13

Mo. Rev. Stat. § 173.385 .......... 14

Mo. Rev. Stat. § 537.600 .......... 12

**Rules and Regulations**

34 C.F.R. § 685.212 .......... 1-2

34 C.F.R. § 685.219 .......... 1-2

48 C.F.R. § 52.233-1 .......... 21

48 C.F.R. § 52.233-4 .......... 18

Fed. R. Civ. Proc. 19 .......... 5, 21

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Glenda Burnett and Daisy Urbina took out federal student loans, which were governed by the Higher Education Act of 1965, as amended, 20 U.S.C. § 1001 *et seq*. (the "HEA"), and its implementing regulations. Compl. ¶ 72. Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA")[1] serviced Plaintiffs' loans on behalf of the United States Department of Education (the "ED")—the owner of the loans—pursuant to a Servicing Contract with the ED. Compl. ¶¶ 9, 57, 73, 280.[2]

The HEA includes a Public Service Loan Forgiveness ("PSLF") Program. *See* 20 U.S.C. § 1087e(m); 34 C.F.R. §§ 685.212(i), 685.219. Under this program,

---

[1] The State of Missouri established MOHELA as "a public instrumentality and body corporate" and deemed "the exercise by" MOHELA of its statutory powers "to be the performance of an essential public function." Mo. Rev. Stat. § 173.360; Compl. ¶ 54. The United States Supreme Court has concluded: "By law and function, MOHELA is an instrumentality of Missouri: It was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State." *Biden v. Nebraska*, 600 U.S. 477, 491 (2023).

[2] Plaintiffs do not attach the Servicing Contract to their complaint, but merely cite to a copy of it that was filed in another case. Compl. ¶¶ 280-282 and nn. 22-24. MOHELA attaches a copy of the Servicing Contract, as filed in that other case, as Exhibit B to this motion to dismiss. The Court may consider the Servicing Contract without converting MOHELA's Rule 12(b)(6) motion into a Rule 56 summary judgment motion because the Servicing Contract is referred to in the complaint and is central to Plaintiffs' claims. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Lee v. City of Los Angeles,* 250 F. 3d 668, 689 (9th Cir. 2001).

borrowers may apply to have the ED discharge the remaining principal and accrued interest of their federal "Direct" student loans after making 120 monthly payments while working for qualifying employers (government or not-for-profit organizations). *Id.*; Compl. ¶¶ 61-62.

The ED, not the borrower's loan servicer (e.g., MOHELA), determines whether a borrower is entitled to a PSLF discharge. If so, the ED advises the servicer of the discharge and the effective date of the discharge, and the servicer advises the borrower about the discharge.

Plaintiffs allege that a borrower who qualifies for a PSLF discharge is also entitled to a refund of any payments beyond the required 120 payments. Compl. ¶ 8. Neither the HEA nor any regulation expressly provides for any such refund.[3] Even so, the ED has interpreted 34 C.F.R. § 685.212(g) to allow for a refund of payments made by a borrower *after the effective date of her PSLF discharge*.[4] Any such refund is first applied to any remaining non-discharged federal student loans of the borrower, and any remaining amount of the refund is paid to the borrower.

---

[3] 20 U.S.C. § 1087e(m) and 34 C.F.R. § 685.219 say nothing about refunds. 34 C.F.R. § 685.212(i) provides the available relief under the PSLF Program: "If a borrower meets the requirements in § 685.219, the Secretary cancels the remaining principal and accrued interest of the borrower's eligible Direct Subsidized Loan, Direct Unsubsidized Loan, Direct PLUS Loan, and Direct Consolidation Loan."

[4] On its face, Section 685.212(g) provides for a refund of "[p]ayments received after eligibility for discharge" only for the loan discharge types listed in Section 685.212(a)-(f) (death, total and permanent disability, bankruptcy, closed school, and false certification or unauthorized disbursement). PSLF discharges are addressed in Section 685.212(i), which is silent about refunds. Nevertheless, the ED has interpreted Section 685.212(g) as also applying to PSLF discharges.

After the ED advises a servicer that a borrower is entitled to a PSLF discharge, the servicer determines whether the borrower may be entitled to a refund of any overpayments made after the effective date of the discharge. The servicer advises the ED of the determination, and the ED may accept or reject it. If the ED approves the refund and the borrower is due any portion of the refund, the ED advises the United States Treasury, which issues the refund check to the borrower. Compl. ¶ 98.

Plaintiffs allege they qualified for a PSLF discharge, made more than the required 120 payments, and have been entitled to a refund. Compl. ¶¶ 14-15, 28-33, 44-46. According to Plaintiffs, MOHELA was required under its Servicing Contract with the ED to process their refunds within 45 days of their discharges. Compl. ¶ 13. (MOHELA denies this.) Burnett complains that she has not yet received a refund, and Urbina complains that her refund was unduly delayed for over 16 months, because of MOHELA's alleged "refund-processing failures" (which MOHELA denies). Compl. ¶¶ 14-15, 36-38, 47, 50.[5]

Plaintiffs also contend that MOHELA failed to provide them with "substantive information regarding the refund process or timing," led them "to believe the refund would be processed within approximately 90 days," and failed to inform them "that refund processing took significantly longer." Compl. ¶¶ 14-15. Plaintiffs allege MOHELA provided them with inaccurate information when they called to inquire

[5] While beyond the scope of this motion (which must accept Plaintiffs' allegations as true), MOHELA notes that: (1) Burnett has never been entitled to a refund because she never made any payments after the March 1, 2020 effective date of her discharge; and (2) MOHELA requested that the ED refund Urbina's $271.56 overpayment less than 30 days after the ED informed MOHELA in June 2025 about the ED's decision to discharge her loans (effective as of December 31, 2024).

about the status of their refunds. Compl. ¶¶ 83-84, 91-93. Moreover, Plaintiffs assert that on March 23, 2026, they submitted "qualified written requests" (as defined under the California Student Borrower Bill of Rights, Cal. Civ. Code § 1788.100 *et seq.* (the "SBBR")) to MOHELA "seeking information regarding overpayments on [their] loans and being due a refund." Compl. ¶¶ 34, 48, 78-79, 85, 95. But MOHELA allegedly "failed to provide substantive responses to those qualified written requests," and Plaintiffs allegedly "did not receive the response required by law [the SBBR] to [their] qualified written requests." Compl. ¶¶ 35, 37, 49, 87, 89, 99. MOHELA denies Plaintiffs' allegations.

In Counts 1-7, Plaintiffs assert that MOHELA violated the SBBR because it allegedly:

A. did not effectuate or "timely" effectuate PSLF refunds (Counts 1-2);

B. committed "abusive" or "deceptive" acts or practices as to PSLF refunds (Counts 3-4);

C. did not "timely" process paperwork as to PSLF refunds (Count 5); and

D. did not respond to "qualified requests" or "qualified written requests" under the SBBR (Counts 6-7).

In Count 8, Plaintiffs assert that MOHELA breached its Servicing Contract with the ED in servicing their federal student loans.

Plaintiffs' complaint fails to state a claim upon which relief may be granted and should be dismissed under Rule 12(b)(6) in that:

1. The HEA preempts Plaintiffs' SBBR claims (Counts 1-7).

2. Plaintiffs' SBBR claims (Counts 1-7) also fail because MOHELA, as a public entity, is immune from liability under the SBBR.

3. Plaintiffs' breach of contract claim (Count 8) fails because Plaintiffs are neither parties to, nor third-party beneficiaries of, MOHELA's Servicing Contract with the ED.

Because an amendment would not cure the complaint's deficiencies, the Court should dismiss the complaint with prejudice and without leave to amend.

Alternatively, to the extent the Court does not dismiss the complaint, it should order Plaintiffs to join the ED as a required party defendant under Rule 19(a) in that:

1. In the ED's absence, the Court cannot accord complete relief among Plaintiffs and MOHELA because only the ED can discharge the loans (which it owns) and approve and cause the issuance by the United States Treasury of the PSLF refunds sought by Plaintiffs out of federal funds.
2. The ED claims an interest relating to the subject matter of this case—the loans that it owns, the PSLF Program, and refunds thereunder—and disposing of this case in the ED's absence may impair or impede the ED's ability to protect its interests in the loans, the PSLF Program, and PSLF refunds.

## II. <u>LEGAL STANDARD</u>

Although the Court must construe the facts in the light most favorable to the non-moving party, it need not accept as true conclusory allegations, legal characterizations, unreasonable inferences, or unwarranted deductions of fact. *See Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008); *In re Gilead Scis. Sec. Litig.,* 536 F. 3d 1049, 1055 (9th Cir. 2008). A pleading that offers "labels and conclusions" "will not do" and is not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (A complaint does not suffice if it merely tenders "naked assertion[s]" devoid of "further factual enhancement."). A plaintiff must plead facts, and those facts "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).

Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Hamilton*

*v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1166 (E.D. Cal. 2010) (quoting *Balistreri v. Pacifica Police Dept*., 901 F. 2d 696, 699 (9th Cir. 1988)). "A court must not "assume that [plaintiffs] can prove facts that [they] ha[ve] not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Assoc. General Contractors of California, Inc. v. Council of Carpenters*, 459 U.S. 519, 526 (1983). Finally, a complaint may be dismissed with prejudice where it is "absolutely clear that no amendment can cure the defects." *Lucas v. Dep't of Corr*., 66 F. 3d 245, 248 (9th Cir. 1995) (per curiam).

## III. ARGUMENT

### A. The HEA preempts Plaintiffs' SBBR claims (Counts 1-7).

Plaintiffs' SBBR claims (Counts 1-7) are legally deficient and should be dismissed because the HEA preempts them. Under *Chae v. SLM Corp*., 593 F.3d 936, 943-50 (9th Cir. 2010), and its progeny, California cannot regulate how federal student loans are serviced through state statutes (such as the SBBR or other consumer protection statutes) or state common law claims.

In *Chae*, the borrowers asserted that a federal loan servicer (Sallie Mae) violated California business, contract, and consumer protection law by the way it calculated interest and set late fees and repayment start dates. The Ninth Circuit ruled that under conflict preemption, the HEA preempted all such California laws because they would stand as an obstacle to the uniform administration of the federal loan program in accordance with federal law. *Id.* at 943-50. The court reasoned: "Congress's instructions to the DOE on how to implement the student-loan statutes carry this unmistakable command: Establish a set of rules that will apply across the board." *Id.* at 945. The court further explained

> [S]ubjecting the federal regulatory standards to the potentially conflicting standards of fifty states on contract and consumer protection

> principles would stand as a severe obstacle to the effective promotion of the funding of student loans. Such an obstacle, which we consider hostile to the purposes of Congress in this program, must bow to the overriding principles of conflict preemption and federal law supremacy.

*Id.* at 950.

The *Chae* borrowers also asserted that Sallie Mae made misrepresentations about its loan servicing practices in its written communications to them. The Ninth Circuit held that the borrowers' misrepresentation-based claims were expressly preempted by 20 U.S.C. § 1098g of the HEA, which provides that federal student loans "shall not be subject to any disclosure requirements of any State law." *Id.* at 942-43. The court reasoned that "[a]t bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims" and "[i]n this context, the state-law prohibition on misrepresenting a business practice is merely the converse of a state-law requirement that alternate disclosures be made." *Id.* (quotation omitted). The court rejected the borrowers' argument that they did "not seek specific disclosures, but merely to stop Sallie Mae from fraudulently and deceptively misleading borrowers through the written documents" because "preemption cannot be avoided simply by relabeling an otherwise-preempted claim." *Id.* at 943.

Based on *Chae*, this Court has held that the HEA preempts borrower claims under the SBBR and other California laws concerning the servicing of their federal student loans. In *Anthony v. Navient Corp.*, No. 2:24-CV-09600-AH-(ASX), 2025 WL 2190616, *2-4 (C.D. Cal. July 11, 2025), and *Cockrell v. Navient Corp.*, No. 8:24-CV-01780-JVS-JDE, 2025 WL 1909837, at *3-5 (C.D. Cal. June 9, 2025), this Court ruled that the HEA preempted the borrowers' SBBR claims challenging how loan servicer Navient placed them into forbearances and communicated with them about such forbearances. Specifically, 20 U.S.C. § 1098g of the HEA expressly

preempted the SBBR claims as to Navient's failure to provide notice before applying forbearance to the borrowers' loans.

Moreover, in *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1088-90 (C.D. Cal. 2019), this Court held that the HEA preempted the borrowers' California state law claims as to how federal loan servicers PHEAA and Nelnet administered the same PSLF program at issue in the present case. In *Winebarger*, the borrowers complained that their servicers failed to account for all of their PSLF-qualifying payments and misrepresented their qualifying payment counts in communications with them. Applying *Chae*, this Court noted that the borrowers' claims were grounded in allegedly inaccurate disclosures and were expressly "preempted because the failure to provide accurate information is, in essence, nothing more than a disclosure claim." *Id.* at 1090. Moreover, the Court held that HEA conflict preemption also preempted Plaintiffs' state law claims because the claims "would undermine Congress's unequivocal objective of uniformity." *Id.*

> In enacting the HEA, Congress certainly did not call on the courts to determine whether loan servicers' representations and conduct were adequate by applying the law of 50 different states. Instead, Congress's clear objective was the resolution of questions about the adequacy of loan servicers by applying federal law as embodied in DOE's regulations and contracts between DOE and loan servicers.

*Id.*

Here, Plaintiffs complain that MOHELA failed to initiate or timely initiate their PSLF refunds and made misrepresentations to them about those refunds. Under *Chae* and this Court's subsequent decisions, California *cannot* impose—through the SBBR or otherwise—any requirements or prohibitions governing how federal student loans are serviced. Specifically, California cannot use the SBBR to require MOHELA to:

1. effectuate or "timely" effectuate PSLF refunds according to unspecified standards under the SBBR (Counts 1-2);
2. avoid acts or practices concerning PSLF refunds that the SBBR deems to be "abusive" or "deceptive" (Counts 3-4);
3. "timely process its paperwork" (Count 5); or
4. respond to "qualified requests" or "qualified written requests" under the SBBR (Counts 6-7).

Any such requirements or prohibitions under the SBBR are preempted by express and/or conflict preemption under the HEA.

California cannot compel servicers (or the ED) to process PSLF refunds (or other aspects of federal student loans) in accordance with the SBBR's standards (which are vague) and then penalize servicers for not complying with those standards. Nor can California require whether, when, and how servicers respond to "qualified requests" and "qualified written requests" because, by definition, any such responses are "disclosures" that 20 U.S.C. § 1098g of the HEA precludes California from compelling.

It is up to the ED, not California, to determine how its servicers (including MOHELA) perform their limited roles as to PSLF refunds and respond to borrower requests for information as to federal student loans. California cannot usurp the ED's authority and dictate to the ED and its loan servicers how to perform in this regard. The Court, therefore, should dismiss Counts 1-7.

This Court's recent decision in *Hagelberg v. Higher Educ. Loan Auth. of the State of Missouri*, No. 5:26-CV-00695-SSS-DTBX, 2026 WL 2287634, at *5 (C.D. Cal. Aug. 7, 2026), does not compel a different conclusion. In *Hagelberg*, the plaintiff asserted that MOHELA violated the federal Fair Credit Reporting Act and California's Identity Theft Act, Rosenthal Fair Debt Collection Practices Act, and Consumer Credit Reporting Agencies Act because MOHELA reported the plaintiff as

the borrower of a federal student loan and attempted to collect on the loan even though the plaintiff allegedly did not take out the loan and was a victim of identity theft. This Court ruled that the HEA did not preempt the California statutory claims because, as the Court concluded, Section 20 U.S.C. § 1080a(a) and (c) of the HEA requires servicers to report accurate, complete, and verified loan information to consumer reporting agencies, "Plaintiff's state-law claims … seek to enforce that same norm of accuracy," and "enforcing accuracy does not obstruct the HEA's objectives." *Id.*

In reaching its decision, this Court distinguished *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996), and *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1130 (S.D. Cal. 2005). As this Court summarized, "*Brannan* preempted a state law that would have 'prohibit[ed], restrict[ed], or impose[d] burdens' on the sequence of pre-litigation collection contacts prescribed by federal regulation, and *Pirouzian* concerned the reporting of a borrower's past-due payments." *Hagelberg*, 2026 WL 2287634, at *5. This Court reasoned that in *Brannan* and *Pirouzian*, "the plaintiff's status as a borrower was undisputed, and the dispute concerned collection or servicing practices," whereas Hagelberg "disputes that he is a borrower at all." *Id.*

As in *Brannan* and *Pirouzian*, Plaintiffs' status as borrowers is undisputed, and the dispute in this case concerns servicing practices. Moreover, unlike in *Hagelberg*, the California statute at issue here (the SBBR) directly addresses federal loan servicing practices and purports to impose requirements and prohibitions on federal loan servicers that are not found in the HEA. Thus, the HEA preempts Plaintiffs' SBBR claims, and the Court should dismiss Counts 1-7.

**B. <u>Plaintiffs' SBBR claims (Counts 1-7) also fail because MOHELA, as a public entity, is immune from liability under the SBBR.</u>**

The Court should also dismiss Plaintiffs' claims under the SBBR (Counts 1-7) because MOHELA, as a public entity, is immune from liability under the SBBR.

Under *Franchise Tax Board of California v. Hyatt*, 578 U.S. 171 (2016) ("*Hyatt*"), California is required to apply to MOHELA either: (a) MOHELA's state sovereign immunity under Missouri law; or (b) alternatively, the same state sovereign immunity that California extends to its own public entities. Either way, MOHELA is immune from SBBR liability.

**1. <u>Hyatt.</u>**

In *Hyatt*, a private Nevada citizen sued the Franchise Tax Board of California ("FTB"), a California state agency, for alleged abusive audit and investigation practices. *Id.* at 174. A jury awarded him about $500 million. *Id.* at 175. The FTB had complete sovereign immunity under California law that would have prevented any recovery, but the Nevada Supreme Court declined to apply California law. *Id.* at 177. Instead, the Nevada Supreme Court applied Nevada law. *Id.* But, it declined to apply a $50,000 Nevada statutory liability limit that applied to Nevada public entities. Instead, it affirmed a $1 million award against the FTB and remanded the case for a retrial on the question of damages for intentional infliction of emotional distress with no statutory cap. *Id.* at 174-75.

The United States Supreme Court held that Nevada could not do this because under the Full Faith and Credit Clause, one state cannot disregard its own ordinary legal principles and apply special and discriminatory rules to the public entities of another state:

> The Nevada Supreme Court has ignored both Nevada's typical rules of immunity and California's immunity-related statutes (insofar as California's statutes would prohibit a monetary recovery that is greater in amount than the maximum recovery that Nevada law would permit in similar circumstances). Instead, it has applied a special rule of law that evinces a policy of hostility toward California. Doing so violates the Constitution's requirement that "Full Faith and Credit shall

> be given in each State to the public Acts, Records and judicial Proceedings of every other State." Art. IV, § 1.

*Id.* at 176 (quotation and citation omitted). The Court emphasized that

> Nevada has not applied the principles of Nevada law ordinarily applicable to suits against Nevada's own agencies. Rather, it has applied a special rule of law applicable only in lawsuits against its sister States, such as California.

*Id.* at 178. Thus, "insofar as the Nevada Supreme Court has declined to apply California law in favor of a special rule of Nevada law that is hostile to its sister States, we find its decision unconstitutional." *Id.* at 180. Accordingly, *Hyatt*'s key holding is that a state statute that does not apply to the enacting state's governmental entities likewise cannot apply to governmental entities of another state.

**2. <u>Under Missouri state sovereign immunity law, MOHELA is immune from SBBR liability.</u>**

Under Missouri law, MOHELA has sovereign immunity from SBBR liability. "In the absence of an express statutory exception or recognized common-law exception, sovereign immunity is the rule and applies to all suits against [Missouri] public entities." *City of Harrisonville v. Bd. of Trustees of Mo Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770, 774 (Mo. 2022) (quotation omitted); *see also* Mo. Rev. Stat. § 537.600.1 ("Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect….").

MOHELA is a Missouri public entity. Under Mo. Rev. Stat. § 173.360, MOHELA "is hereby created a body politic and corporate" and "is hereby constituted a public instrumentality and body corporate, and the exercise by the authority of the powers conferred by sections 173.350 to 173.4501 shall be deemed to be the

performance of an essential public function." The United States Supreme Court has recognized: "By law and function, MOHELA is an instrumentality of Missouri: It was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State." *Biden v. Nebraska*, 600 U.S. 477, 491 (2023). Accordingly, courts have held that MOHELA is entitled to state sovereign immunity under Missouri law. *Mermigas v. Higher Educ. Loan Auth.*, No. 24-CV-11505, 2025 WL 2576745, at *4 (N.D. Ill. Sept. 4, 2025) (Missouri state sovereign immunity, which applied due to comity, barred claims against MOHELA for unjust enrichment and negligent misrepresentation); *Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *5 (E.D. Mo. July 29, 2021) (Missouri state sovereign immunity barred claims against MOHELA for negligence per se, negligent misrepresentation, and equitable estoppel).

Under Missouri law, state sovereign immunity applies to statutory claims (as well as common law claims), such as Plaintiffs' claims under the SBBR. *See, e.g., Poke v. Indep. Sch. Dist.*, 647 S.W.3d 18, 21–22 (Mo. 2022) ("This Court's primary task, therefore, is to determine whether section 287.780 provides the express showing of legislative intent required to waive sovereign immunity for workers' compensation retaliation actions brought against governmental entities."); *Nichols v. City of Kirksville*, 68 F.3d 245, 248 (8th Cir. 1995) (sovereign immunity barred claim against city for violating Missouri statute authorizing civil liability for employers who fire an employee in retaliation for a workers' compensation claim).

Missouri has not waived state sovereign immunity as to the SBBR (or other statutory claims). While MOHELA's enabling statutes allow it "[t]o sue and be sued," Mo. Rev. Stat. § 173.385.1(3), such "sue and be sued" language does *not*, "beyond contract claims, serve to universally override sovereign immunity." *Jones v. Missouri Lab. & Indus. Rels. Comm'n*, 734 S.W.3d 802, 807, n.8 (Mo. 2026). As a result,

Missouri state sovereign immunity bars Plaintiffs' claims against MOHELA under the SBBR.

**3. <u>Under California state sovereign immunity law, public entities are immune from SBBR liability.</u>**

Under *Hyatt*, California is not required to apply Missouri state sovereign immunity law; but if it chooses not to do so, it still must apply to MOHELA the same state sovereign immunity that California extends to its own public entities. *Hyatt* precludes California from subjecting a public entity (e.g., MOHELA) of another state (e.g., Missouri) to a California statute (e.g., the SBBR) that does not apply to California public entities. *See Oregon State Univ. v. Superior Ct.,* 16 Cal. App. 5th 1180, 1187 (4th Dist. 2017) (because of *Hyatt*, California courts cannot "create a special rule allowing a suit to proceed against Oregon State under circumstances that would preclude a comparable suit against a comparable California public entity"). *Gordon v. Sheriffs Off. Adams Cnty.*, No. 6:23-CV-01139, 2025 WL 4113569, at *3 (W.D. La. Dec. 4, 2025) (under *Hyatt*, federal court in Louisiana was required to apply protections of Louisiana Governmental Claims Act in suit against Mississippi sheriff's office); *Pittman v. Rutherford*, No. CV 19-36-DLB-CJS, 2020 WL 6384726, at *5 (E.D. Ky. Oct. 30, 2020) ("A straightforward application of *Hyatt II* leads to the conclusion that holding Brown County [Ohio] liable [in a Kentucky federal court] would be discriminatory and in violation of the Full Faith and Credit Clause" because "Kentucky counties are [ ] immune from suit for the torts of their agents and employees.").

As discussed below, California public entities are immune from liability under the SBBR. Thus, under *Hyatt*, MOHELA is likewise immune from SBBR liability.

The California Government Code establishes the default rules for the liability of a "public entity," which is defined to include the "state, … a county, city, district, public authority, public agency, and any other political subdivision or public

corporation in the State." Cal. Gov't Code § 811.2. "Every kind of governmental entity, including a public authority, is included in the definition of 'public entity.'" *Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269, 279 (1st Dist. 1994). Thus, because MOHELA is a body politic and corporate and public instrumentality of the State of Missouri, MOHELA would qualify as a "public entity" if it were a California entity.

Section 815 of the California Government Code provides:

> Except as otherwise provided by statute:
>
> (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
>
> (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person.

The Ninth Circuit has explained the statute's meaning:

> According to subsection (a), the general rule provides for governmental immunity unless a statute provides otherwise. According to subsection (b), even if liability is established by statute, that liability is subject to the various specific governmental immunities set forth in the Government Claims Act or elsewhere. The commentary to the section accordingly explains that "the immunity provisions will as a general rule prevail over all sections imposing liability." *Id.* (Legislative Committee Comments–Senate)…. *[T]he general rule is that the governmental immunity will override a liability created by a statute outside of the [Government] Claims Act.*

> *To rebuff this general rule, a liability-creating statute must clearly withdraw statutory immunities....*

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1126 (9th Cir. 2013) (emphasis added) (quotations and citations omitted).

**There is no provision in the SBBR that clearly withdraws statutory immunities under California Government Code § 815 for public entities. Thus, public entities are immune from liability under the SBBR.**

Granted, the SBBR applies to a "person" or a "student loan servicer" (Cal. Civ. Code §§ 1788.101-.102); a "student loan servicer" is defined as "any person engaged in the business of servicing student loans in this state" (Cal. Civ. Code § 1788.100(s)); and "person" is defined as "an individual, a corporation, a partnership, a limited liability company, an association, a trust, an unincorporated organization, a government, or a political subdivision of a government, and any other entity" (Cal. Civ. Code § 1788.100(m)).

But this mere definition of "person," standing alone, does not suffice to withdraw the immunity of public entities from the SBBR under the California Government Code. *Nuveen*, 730 F.3d at 1125-26. In *Nuveen*, the Ninth Circuit held that a city was not liable under the California Corporate Securities Act because the act does not expressly withdraw immunity under the California Government Code. *Id.* Like the SBBR, the California Corporate Securities Act defines "person" as "an individual, a corporation, a partnership, a limited liability company, a joint venture, an association, a joint stock company, a trust, an unincorporated organization, a government, or a political subdivision of a government." Cal. Corp. Code § 25013. Nevertheless, the Ninth Circuit held that "[t]his inclusion" of "governmental entities in the definition of persons liable" was not sufficient to abrogate the city's immunity "because the statute does not expressly withdraw such immunity." *Id.* at 1125; *see also Caldwell v. Montoya*, 10 Cal. 4th 972, 987 (1995) (California Fair Employment

and Housing Act's imposition of general duty and liability on public employees did not override immunity under Government Code because FEHA does not include a "clear indication of legislative intent that statutory immunity is withheld or withdrawn").

*Nuveen* is directly on point and compels the conclusion that public entities are immune from liability under the SBBR. In turn, under *Hyatt*, MOHELA, as a public entity, is immune from liability under the SBBR. The Court, therefore, should dismiss Plaintiffs' SBBR claims (Counts 1-7).

### C. Plaintiffs' breach of contract claim (Count 8) fails because Plaintiffs are neither parties to, nor third-party beneficiaries of, MOHELA's Servicing Contract with the ED.

In Count 8, Plaintiffs allege that MOHELA breached its Servicing Contract with the ED by not providing them with refunds on a timely basis. Compl. ¶¶ 287-88. Plaintiffs are not parties to the Servicing Contract between the ED and MOHELA, but nevertheless insist they can sue for MOHELA's alleged breaches because they are purportedly third-party beneficiaries. Compl. ¶¶ 57, 280, 286. They are not. As this Court (and others) have previously held, as a matter of law, Plaintiffs are not intended third-party beneficiaries of federal loan servicing contracts and, thus, cannot sue under the Servicing Contract. The Court should dismiss Count 8.

"Federal law governs the interpretation of contracts entered pursuant to federal law where the federal government is a party," and federal common law governs whether someone is an intended third-party beneficiary. *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1032-33 (9th Cir. 2012) (quotation omitted). Accordingly, this Court and others have held that federal common law governs the interpretation of the ED's servicing contracts, including any alleged third-party beneficiary status. *Winebarger*, 411 F. Supp. 3d at 1092, n.13; *Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 986

(N.D. Ill. 2024); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020); *Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019).

The Servicing Contract (Ex. B, p. 51) incorporates 48 C.F.R. § 52.233-4, which states that "United States law will apply to resolve any claim of breach of this contract." "Even more reason exists to apply federal common law if the parties expressly select it as the law governing the contract." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship*, 671 F.3d at 1033.

Under federal common law, "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship*, 671 F.3d at 1033. "The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party. This distinguishes intended beneficiaries to a contract whose rights are judicially enforceable from incidental beneficiaries whose rights are not judicially enforceable." *Id.*

> To prove intended beneficiary status, "the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party…. [D]emonstrating third-party beneficiary status in the context of a government contract is a comparatively difficult task. *Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended beneficiaries, and so may not enforce the contract absent a clear intent to the contrary.*
>
> *This "clear intent" hurdle is a high one. It is not satisfied by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third*

> *party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind. Rather, we examine the precise language of the contract for a "clear intent" to rebut the presumption that the third parties are merely incidental beneficiaries.*

*Id.* at 1033-34 (emphasis added) (quotations and citations omitted and cleaned up).

Consistent with the "clear intent" rule, this Court and other federal courts have repeatedly held that student loan borrowers such as Plaintiffs are not third-party beneficiaries of the ED's contracts with servicers such as MOHELA because:

- the contracts contain no language evidencing an intent to make borrowers third-party beneficiaries with rights of enforcement; and
- the HEA provides no private right of action and empowers only the Secretary of Education to enforce it.

*Winebarger*, 411 F. Supp. 3d at 1092; *Witz*, 752 F. Supp. 3d at 986-88; *Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275, at *2-3 (D.N.J. Apr. 14, 2022); *Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175, at *11 (E.D.N.Y. Dec. 4, 2020); *Travis*, 460 F. Supp. 3d at 284; *Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798, at *8 (N.D. Ga. Mar. 16, 2020); *Hyland*, 2019 WL 2918238, at *8.

In *Winebarger*, this Court dismissed, without leave to amend, a similar breach of contract claim brought by federal loan borrowers who accused their loan servicers of failing to account for all of the borrowers' qualifying payments under the same PSLF program at issue in the present case:

> Plaintiffs have not, and cannot, allege any facts or point to any language in the Servicing Contracts between DOE and Defendants that even arguably would allow a borrower to sue to enforce the Servicing

> Contracts. Thus, Plaintiffs have failed to allege facts showing a "clear intent" necessary to rebut the presumption that they are mere incidental beneficiaries under the Servicing Contracts.

411 F. Supp. 3d at 1092. And as further explained in *Witz*:

> Plaintiff has failed to identify any language in the servicing contract that clearly shows an intent to permit enforcement by third parties. It is not enough that the borrowers benefit from Defendant's performance under the servicing contract, as such incidental benefit does not rise to the level of an intent to permit enforcement. As a result, Plaintiff's third-party contract claim is an improper attempt to enforce the HEA where no private right of action exists.

752 F. Supp. at 987–88.

As in *Winebarger* and *Witz*, Plaintiffs fail to allege any facts and fail to identify any language in the Servicing Contract that shows a clear intent to rebut the presumption they are mere incidental beneficiaries. They fail to attach the Servicing Contract and merely allege, in conclusory fashion, that they "were intended third-party beneficiaries of that servicing contract in that they were borrowers that were entitled to refunds after PSLF forgiveness." Compl. ¶ 286.

On its face, the Servicing Contract (Ex. B) does not provide any third-party beneficiary rights for borrowers such as Plaintiffs. It does not mention third-party beneficiaries whatsoever. While Plaintiffs assert that it requires MOHELA to "prioritize borrower needs and preferences to deliver an improved borrower experience," Compl. ¶ 47, the Ninth Circuit has emphasized that a "contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind" does not

satisfy the "clear intent hurdle" for intended third-party beneficiary status. *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship*, 671 F.3d at 1033.

Tellingly, the Servicing Contract (Ex. B, p. 51) incorporates 48 C.F.R. § 52.233-1, which provides that "[e]xcept as provided in 41 U.S.C. chapter 71 (the Contract Disputes Act), all disputes arising under or relating to this contract shall be resolved under this clause." Section 52.233-1 only allows for claims "by one of the contracting parties," either the "Contractor" or the "Government." Section 52.233-1 does not contemplate claims by any third-party beneficiaries (or anyone else), which establishes that Plaintiffs cannot be intended third-party beneficiaries of the Servicing Contract. If the ED and MOHELA had intended for borrowers to be third-party beneficiaries, they would have clearly communicated that intent by allowing potential contract claims by borrowers. They did not do so because they never intended for borrowers to be third-party beneficiaries.

Moreover, Plaintiffs cannot be intended third-party beneficiaries of the Servicing Contract because the very purpose of the contract is for MOHELA to service *the borrowers' loan obligations* to the ED and administer *the ED's rights* in the loans. MOHELA performs such servicing on behalf of and for the benefit of the ED by, among other things, administering the ED's repayment plans and programs and receiving and posting borrowers' payments. Accordingly, as numerous courts have held, Plaintiffs are not third-party beneficiaries of the Servicing Contract, so Count 8 should be dismissed with prejudice.

**D. <u>Under Rule 19(a), Plaintiffs must join the ED as a party defendant.</u>**

To the extent the Court does not dismiss Plaintiffs' complaint outright, it should require Plaintiffs to join the ED as a party defendant pursuant to Rule 19(a). Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Rule 19(a)(2) provides: "If a party has not been joined as required, the court must order that the person be made a party."

Under Rule 19(a)(1)(A), complete relief is "consummate rather than partial or hollow relief as to those already parties," and "preclud[es] multiple lawsuits on the same cause of action." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (quotations omitted). To be "complete," relief must be "meaningful relief as between the parties." *Id.*

For purposes of Rule 19(a)(1)(A), the Court cannot accord complete relief among Plaintiffs and MOHELA in the ED's absence because:

- The ED owns the federal student loans at issue in this case, administers the PSLF Program, determines borrower eligibility for PSLF discharges and refunds, and is the party that owes any refunds due under the PSLF Program;
- "Plaintiffs seek, for themselves and the putative class members, immediate refunds," Compl. ¶ 25; ***but***

- only the ED (through the United States Treasury)—not MOHELA or any other federal loan servicers—can provide PSLF refunds out of federal funds.

Borrower loan payments go to the ED, not servicers, and, consequently, any borrower refunds come from the ED (via the Treasury), not servicers. That is, MOHELA does not "touch" borrower loan payments as they come in and does not "touch" any ED-approved refunds on the way out. For example, as Plaintiffs concede, "Urbina received a refund check from the Department of the Treasury," not MOHELA. Compl. ¶ 98. While MOHELA can make a refund request to the ED on behalf of a borrower, only the ED has the authority under federal law to determine and approve a PSLF refund and direct Treasury to issue that refund.

In turn, in the ED's absence, the Court cannot provide complete relief among Plaintiffs and MOHELA. At most, the Court could order MOHELA to make a refund request to the ED on behalf of certain borrowers, but such relief would be meaningless if the ED rejected MOHELA's request and determined that the borrowers are not entitled to refunds. Thus, under Rule 19(a)(1)(A), Plaintiffs must join the ED as a party defendant.

If the Court concludes it may order MOHELA to directly issue PSLF refunds (as Plaintiffs have requested), then joinder of the ED is required under Rule 19(a)(1)(B)(i). The ED has an interest in the subject of this action because it owns the loans at issue, administers the PSLF Program, determines eligibility for PSLF refunds, and is the party that owes any refunds. Disposing of this action in the ED's absence could, as a practical matter, impair or impede its ability to protect those interests because an order for MOHELA to issue PSLF refunds would affect the ED's assets (i.e., the loans) and effectively require the ED to issue the refunds without its determination that the borrowers are entitled to the refunds. In effect, the Court would substitute itself for the ED as the refund decisionmaker. Thus, under Rule

19(a)(1)(B)(i), Plaintiffs must join the ED as a party defendant so that it can be heard on the merits of their claims.

## IV. CONCLUSION

The Court should dismiss Plaintiffs' complaint with prejudice. Alternatively, the Court should order Plaintiffs to join the ED as a party defendant.

**THOMPSON COBURN LLP**

By: *_/s/ Lukas Sosnicki_*
**LUKAS SOSNICKI**
**GREGORY G. BREZOVEC**
Attorneys for Defendant
Higher Education Loan Authority
of the State of Missouri

## Certificate of Compliance

The undersigned, counsel of record for Defendant, certifies that the Memorandum of Points and Authorities—excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits— contains 6,968 words, which complies with the word limit of L.R. 11-6.1.

September 16, 2026 *_/s/ Lukas Sosnicki_*