Brett R. Cohen (SBN 337543)
**LEEDS BROWN LAW, P.C.**
134 Mineola Blvd, 2nd Flr,
Mineola, New York 11501
(516) 873-9550
bcohen@leedsbrownlaw.com

W. Austin Hinkle (SBN 313856)
**PUBLIC GOODS PRACTICE, LLP.**
502 W 7th St STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com

*Counsel for Plaintiffs and Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

GLENDA BURNETT and DAISY URBINA, on behalf of themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI D/B/A MOHELA,

Defendant.

CASE NO. 5:26-cv-3580-SSS (ACCVx)

**PLAINTIFFS' OPPOSITION TO DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR TO REQUIRE JOINDER OF UNITED STATES DEPARTMENT OF EDUCATION; MEMORANDUM OF POINTS AND AUTHORITIES**

*Assigned for all purposes to:*
The Hon. Sunshine Suzanne Sykes

Hearing Date: December 4, 2026
Time: 2:00 p.m.
Courtroom: via Zoom
Complaint Filed: June 29, 2026

# Table of Contents


**INTRODUCTION** .......... 8

**LEGAL STANDARD** .......... 9

**ARGUMENT** .......... 10

**I. Plaintiffs' Claims are not Preempted by the HEA** .......... 10

**a. Express preemption does not reach plaintiffs' claims** .......... 11

**b. Plaintiffs' claims do not conflict with federal law** .......... 17

**II. MOHELA is not immune** .......... 23

**a. MOHELA is not an arm of the state** .......... 25

**b. If MOHELA is a "public entity", it is still liable** .......... 29

**III. Plaintiffs are Intended Beneficiaries under the Servicing Contract** .......... 31

**a. The Text and Purpose of the Contract Reflect the Parties' Intent to Confer Benefits on Borrowers** .......... 32

**b. Consideration of the contract's surroundings confirms the intention** .......... 36

**IV. The Department is not a Necessary Party Under Rule 19** .......... 38

**CONCLUSION** .......... 40

**Certificate of Compliance** .......... 41

# Table of Authorities

**CASES**

Alden v. Maine, 527 U.S. 706 (1999) .... 25

Altria Grp., Inc. v. Good, 555 U.S. 70 (2008) .... 11

Am. Express Co. v. Koerner, 452 U.S. 233 (1981) .... 16

ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999 (9th Cir. 2014) .... 9, 18

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .... 9

Ballard v. Navient Corp., No. 3:18-CV-121, 2021 WL 1899874 (M.D. Pa. Mar. 31, 2021), report and recommendation adopted, 2021 WL 1660843 (M.D. Pa. Apr. 28, 2021) .... 33

Bates v. Dow Agrosciences LLC, 544 U.S. 431 (2005) .... 11

Berman v. Pa. Higher Educ. Assistance Agency, No. 1:21-cv-63, ECF No. 40 (M.D.N.C. Mar. 16, 2023), aff'd, No. 23-1414 (4th Cir. Apr. 15, 2024) .... 38

Caldwell v. Montoya, 10 Cal. 4th 972 (1995) .... 30

Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156 (9th Cir. 2016) .... 31

Chae v. SLM Corp., 593 F.3d 936 (9th Cir. 2010) .... passim

Cipollone v. Liggett Grp., Inc., 505 U.S. 504 (1992) .... 11, 18

Cockrell v. Navient Corp., No. 8:24-cv-01780-JVS-JDE, 2025 WL 1909837 (C.D. Cal. June 9, 2025) .... 13, 14

Cohen v. ConAgra Brands, Inc., 16 F.4th 1283 (9th Cir. 2021) .... 9

Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999) .... 25

College Loan Corp. v. SLM Corp., 396 F.3d 588 (4th Cir. 2005) .... 19

County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237 (9th Cir. 2009), rev'd, 563 U.S. 110 (2011) .... 31, 33

Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363 (2000) .... 18, 19

Doe v. United States, 419 F.3d 1058 (9th Cir. 2005) .... 9

Edelman v. U.S. Gov't, No. 18-cv-2143 (JS)(AKT), 2020 WL 7123175 (E.D.N.Y. Dec. 4, 2020) .... 34

Franchise Tax Bd. of Cal. v. Hyatt, 578 U.S. 171 (2016) .... 24, 28

Galette v. New Jersey Transit Corp., 607 U.S. 509 (2026) .... passim

GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, N.A., 671 F.3d 1027 (9th Cir. 2012) .... 31, 33

Good v. U.S. Dep't of Educ., 121 F.4th 772 (10th Cir. 2024), cert. denied, No. 24-992 (U.S. Mar. 23, 2026) .... 23, 27, 28

Hagelberg v. Higher Educ. Loan Auth. of the State of Mo., No. 5:26-cv-00695-SSS-DTBx, 2026 WL 2287634 (C.D. Cal. Aug. 7, 2026) .... 10, 21

Hines v. Davidowitz, 312 U.S. 52 (1941) .... 18

Hyland v. Navient Corp., No. 18-cv-9031 (DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019) .... 17, 34

ITSI T.V. Prods., Inc. v. Agric. Ass'ns, 3 F.3d 1289 (9th Cir. 1993) .... 9

Johansson v. Nelnet, Inc., No. 4:20-CV-3069, 2021 WL 1169409 (D. Neb. Mar. 26, 2021) .... 33

Joy v. Higher Educ. Loan Auth. of the State of Mo., No. 4:23-cv-01590-ZMB (E.D. Mo. Sept. 29, 2026) .... 24, 34

Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206 (9th Cir. 1999) .... 31, 33

Kohn v. State Bar of Cal., 87 F.4th 1021 (9th Cir. 2023) (en banc) .... 25

Lawson-Ross v. Great Lakes Higher Educ. Corp., 955 F.3d 908 (11th Cir. 2020) .... passim

Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024) .... 21

Love v. Pa. Higher Educ. Assistance Agency, No. 1:19-cv-02387-JPB, 2020 WL 1545798 (N.D. Ga. Mar. 16, 2020) .... 34

Maldonado v. Higher Educ. Loan Auth. of the State of Mo., No. 3:24-cv-07850-VC, 2025 WL 1085105 (N.D. Cal. Apr. 9, 2025) .... 23, 38

Maldonado v. Higher Educ. Loan Auth. of the State of Mo., No. 3:24-cv-07850-VC, ECF No. 69 (N.D. Cal. July 8, 2025) .... 39

Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996) .... 11

Montana v. United States, 124 F.3d 1269 (Fed. Cir. 1997) .... 31

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) .... 9

Nelson v. Great Lakes Educ. Loan Servs., Inc., 928 F.3d 639 (7th Cir. 2019) ..................... passim

New York v. Pa. Higher Educ. Assistance Agency, No. 19 Civ. 9155 (ER), 2020 WL 2097640 (S.D.N.Y. May 1, 2020)........................................................................... 12

Nilsen v. Univ. of Wash., 186 F.4th 1133 (9th Cir. 2026) ......................................................... 26

Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030 (9th Cir. 1983) ........................... 39

Nuveen Mun. High Income Opportunity Fund v. City of Alameda, 730 F.3d 1111 (9th Cir. 2013)........................................................................................... 29, 30

Pellegrino v. Equifax Info. Servs., LLC, 709 F. Supp. 3d 206 (E.D. Va. 2024) .......................... 28

Pennsylvania v. Navient Corp., 967 F.3d 273 (3d Cir. 2020).................................... 12, 14, 17, 18

Skidmore v. Swift & Co., 323 U.S. 134 (1944)............................................................................ 21

Student Loan Servicing All. v. District of Columbia, 351 F. Supp. 3d 26 (D.D.C. 2018) ........................................................................................................ 15, 18

Travis v. Navient Corp., 460 F. Supp. 3d 269 (E.D.N.Y. 2020) ........................................... 17, 34

United Kingdom Ministry of Defence v. Trimble Navigation Ltd., 422 F.3d 165 (4th Cir. 2005) .................................................................................................................... 35

Wade v. Pa. Higher Educ. Assistance Agency, No. 21-11595 (CPO), 2022 WL 1115275 (D.N.J. Apr. 14, 2022) ........................................................................... 34

Walker v. Higher Educ. Loan Auth. of the State of Mo., No. 1:21-cv-00879-KES-SAB, 2024 WL 3568576 (E.D. Cal. July 26, 2024) ............................................ 23, 27, 28

Williamson v. Gen. Dynamics Corp., 208 F.3d 1144 (9th Cir. 2000)......................................... 18

Winebarger v. Pa. Higher Educ. Assistance Agency, 411 F. Supp. 3d 1070 (C.D. Cal. 2019) ........................................................................................................ 33, 34

Witz v. Great Lakes Educ. Loan Servs., Inc., 752 F. Supp. 3d 980 (N.D. Ill. 2024) ................... 34

Wyeth v. Levine, 555 U.S. 555 (2009) ................................................................. 17, 18, 21, 23

**STATUTES**

12 U.S.C. § 2605........................................................................................................................ 16

15 U.S.C. § 1601........................................................................................................................ 16

15 U.S.C. § 1666........................................................................................................................ 15

20 U.S.C. § 1071........................................................................................................................ 22

20 U.S.C. § 1083 .......... 12

20 U.S.C. § 1098g .......... 11, 13

Cal. Civ. Code § 1788.100 .......... 15, 29

Cal. Civ. Code § 1788.102 .......... 15

Cal. Civ. Code § 1788.103 .......... 29

Cal. Gov't Code § 811.2 .......... 24, 25

Cal. Gov't Code § 815 .......... 30

Cal. Gov't Code § 818.8 .......... 30

Cal. Gov't Code § 820.2 .......... 30

Cal. Gov't Code §§ 818–895.8 .......... 30

Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, div. A, tit. III, 133 Stat. 2534 (2019) .......... 37

Mo. Rev. Stat. § 173.360 .......... 26, 28

Mo. Rev. Stat. § 173.385 .......... 26, 28

Mo. Rev. Stat. § 173.410 .......... 27

Mo. Rev. Stat. § 173.425 .......... 26

Mo. Rev. Stat. § 173.445 .......... 28

Mo. Rev. Stat. § 537.600 .......... 24

Pub. L. No. 116-260, div. H, tit. III, 134 Stat. 1182 (2020) .......... 37

Pub. L. No. 117-103, div. H, tit. III, 136 Stat. 49 (2022) .......... 37

Pub. L. No. 117-328, div. H, tit. III, 136 Stat. 4459 (2022) .......... 37

Pub. L. No. 118-47, div. D, tit. III, 138 Stat. 460 (2024) .......... 37

**RULES**

C.D. Cal. L.R. 11-6.1 .......... 41

Fed. R. Civ. P. 12(b)(6) .......... 9

Fed. R. Civ. P. 19(a) .......... 38

Fed. R. Civ. P. 19(a)(1)(A) .......... 38

Fed. R. Civ. P. 19(a)(1)(B) .......... 39

**REGULATIONS**

34 C.F.R. § 682.211 .......... 14

34 C.F.R. pt. 685 .......... 16

48 C.F.R. § 33.215 .......... 35

48 C.F.R. § 52.233-1 .......... 34

**OTHER AUTHORITIES**

Consumer Fin. Prot. Bureau, Student Loan Servicing: Analysis of Public Input and Recommendations for Reform (Sept. 2015) .......... 36

Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 88 Fed. Reg. 47,370 (July 24, 2023) .......... 13, 16, 20, 22

Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs, 83 Fed. Reg. 10,619 (Mar. 12, 2018) .......... 21

Press Release, U.S. Dep't of Educ., U.S. Department of Education's Office of Federal Student Aid Awards New Contracts to Five Companies to Serve Borrowers, Reduce Delinquency, and Improve Accountability (Apr. 24, 2023) .......... 36

S. Rep. No. 97-536 (1982) .......... 15

U.S. Dep't of Educ., Office of Inspector Gen., ED-OIG/A05Q0008, Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans (Feb. 12, 2019) .......... 35

U.S. Gov't Accountability Office, GAO-16-523, Federal Student Loans: Education Could Improve Direct Loan Program Customer Service and Oversight (May 2016) .......... 36

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Daisy Urbina, Glenda Burnett, and thousands of other California residents dedicated their careers to public service for more than a decade and earned Public Service Loan Forgiveness (PSLF). When the time came for MOHELA to do its job, it failed. It failed procedurally and it failed substantively. It withheld money owed to these borrowers, and when they asked what was going on, MOHELA ignored them.

Ms. Burnett spent twenty-five years at the San Diego County Department of Social Services. After the Department forgave her loans, MOHELA held roughly $17,647 in overpayments for more than a year and a half, telling her first that a refund would come in 90 days and later that she was owed nothing. Compl. ¶¶ 28, 31–38, 83–84. Ms. Urbina, a public-school teacher for fifteen years, made more than 120 qualifying payments and was due a $271.56 refund. That refund arrived about 445 days after her discharge, and only after she retained counsel. *Id.* ¶¶ 42, 45, 90–99.

Each of MOHELA's arguments depends on ignoring the actual allegations and recasting its own failure as the Department of Education ("Department")'s responsibility, claiming its own violations have no remedy at law, or contending that Congress placed these rights beyond California's reach. But as alleged, the

Department approved Plaintiffs' discharges after Plaintiffs performed a decade of service and made 120 payments; what remained was for MOHELA to process the resulting refunds and answer Plaintiffs' inquiries. Plaintiffs have adequately pled each claim.

The motion should be denied because (I) the HEA does not preempt Plaintiffs' claims; (II) MOHELA is not immune; (III) Plaintiffs may enforce the servicing contract as intended beneficiaries; and (IV) the Department is not a required party.

## LEGAL STANDARD

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The complaint must "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the Court accepts its factual allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

Preemption and immunity are affirmative defenses on which Defendant bears the burden. *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021); *ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993). Dismissal on such a defense "is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint," and is improper where the defense "raises disputed issues of fact." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999,

1004 (9th Cir. 2014); *see Hagelberg v. Higher Educ. Loan Auth. of the State of Mo.*, No. 5:26-cv-00695-SSS-DTBx, 2026 WL 2287634, at *5 (C.D. Cal. Aug. 7, 2026) ("at the pleading stage, MOHELA has not shown conflict preemption").

## ARGUMENT

### I. Plaintiffs' Claims are not Preempted by the HEA

Defendant proposes an unworkable regime that would unsettle decisions in this District and undermine a range of California laws. Its argument rests almost entirely on a misreading of *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010). ECF No. 15 at 6–8. *Chae* is binding, and Plaintiffs do not ask the Court to depart from its actual holding. But *Chae*'s framework is narrow: there is no field preemption under the HEA; express preemption reaches only claims that are "in substance" challenges to required disclosures; and courts "would not lightly decide" that state contract and consumer-protection claims are conflict-preempted. *See id.* at 941–45.

Defendant's mistake is to treat *Chae*'s FFELP-specific[1] holding as a broader rule that "California *cannot* impose—through the SBBR or otherwise—any requirements or prohibitions governing how federal student loans are serviced." ECF

[1] FFEL loans were made and owned by private lenders, 20 U.S.C. §§ 1078, 1078-1; Direct Loans are made and owned by the United States itself and are serviced by contractors like MOHELA, 20 U.S.C. §§ 1087a, 1087f(a).

No. 15 at 8. *Chae* did not hold that, and adopting that rule here would leave the State powerless to protect Ms. Urbina, Ms. Burnett, and hundreds of thousands of other California borrowers from a servicer that ignores their questions, omits critical information when it does answer, and sits on refunds they earned through careers in public service. And it would leave them with no remedy at all: Defendant concedes that no statute or regulation expressly provides for these refunds. ECF No. 15 at 2 & n.3.

**a. Express preemption does not reach plaintiffs' claims**

Where Congress includes a provision "explicitly addressing" preemption, the Court's task is to "identify the domain expressly pre-empted" by it. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992). Courts go on to determine "the substance and scope" of the displacement. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Courts look to the text, "the surrounding statutory framework, and Congress's stated purposes." *Chae*, 593 F.3d at 942 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485–86 (1996)).

A state law is preempted only if it falls within the domain the clause expressly preempts. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005). The HEA expressly preempts six categories of state law. The only relevant one raised by

Defendant is the exemption from state "disclosure requirements," 20 U.S.C. § 1098g.

***i. 1098g only preempts the narrow set of disclosures the HEA requires***

A state law falls within § 1098g only if it *adds to* or modifies a disclosure the *HEA* requires. *See Chae*, 593 F.3d at 942–43; *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 917 (11th Cir. 2020).

For Direct Loans, those disclosures are found in 20 U.S.C. § 1083 and in discrete regulatory disclosures tied to account events. The federal scheme prescribes content and timing only within specific categories; it is not a comprehensive regime governing every servicer communication. A "disclosure requirement" is thus a duty to proactively deliver information whose content Congress or the Department fixed, at a point in the life of the loan triggered by a loan event or account status. Courts have drawn exactly that line: "the domain § 1098g preempts is the type of disclosures to borrowers that § 1083 requires." *Lawson-Ross*, 955 F.3d at 917; *accord Pennsylvania v. Navient Corp.*, 967 F.3d 273, 289–90 (3d Cir. 2020); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 647–48 (7th Cir. 2019) (§ 1098g preempts a state law requiring servicers to "affirmatively disclose X and Y in a specific format and at a specific time"); *New York v. Pa. Higher Educ. Assistance Agency*, No. 19 Civ. 9155 (ER), 2020 WL 2097640, at *14 (S.D.N.Y. May 1, 2020).

Courts in this District agree: "where a state law claim is based on affirmative misrepresentations or inaccurate disclosures *unrelated* to a disclosure required by the HEA, § 1098g will not preempt," because "[w]hat matters is whether '[a]t bottom,' the claim is about an improper disclosure *of which proper disclosure is required by federal law*." *Cockrell v. Navient Corp.*, No. 8:24-cv-01780-JVS-JDE, 2025 WL 1909837, at *3 (C.D. Cal. June 9, 2025) (emphasis in original), appeal *argued*, No. 25-4222 (9th Cir. Oct. 21, 2026).

This reading harmonizes Ninth Circuit and district court authority, aligns with every court of appeals to address the question, and matches the Department's own interpretation. *See* 88 Fed. Reg. 47,370, 47,372 (July 24, 2023). Defendant has not identified which federally required disclosure Plaintiffs' claims would add to or modify, nor could it.

***ii. Nothing in the HEA preempts plaintiffs' claims***

The broadest reading of § 1098g cannot reach Plaintiffs' claims.

Four of the seven claims Defendant seeks to dismiss require no communication with the borrower at all. The First and Second Causes of Action allege that MOHELA failed to effectuate, or timely effectuate, PSLF refunds; the Third that its refund processing is an abusive practice; and the Fifth that it failed to timely process paperwork. Compl. ¶¶ 115–203, 228–44. Each is resolved if

MOHELA processes refunds on time. Defendant offers no explanation of how a duty to process a refund is a "disclosure requirement."

*Chae* confirms the point. The Ninth Circuit applied § 1098g only to claims that were "[a]t bottom … improper-disclosure claims" challenging "the allegedly-misleading method Sallie Mae used to communicate" in billing statements and coupon books, 593 F.3d at 942–43, and held that the remaining claims, which challenged practices "apart from the billing statements," were "not impacted by any of the FFELP's express preemption provisions." *Id.* at 943. Plaintiffs do not challenge MOHELA's billing statements or coupon books.

The Fourth Cause of Action alleges that MOHELA affirmatively misrepresented the status, expected timing, and cause of refund delays. Compl. ¶¶ 213–17. Affirmative misrepresentations about a matter the HEA does not require servicers to disclose are not "disclosure requirements." *Lawson-Ross*, 955 F.3d at 918; *Navient*, 967 F.3d at 290; *Nelson*, 928 F.3d at 649. Defendant identifies no federally required disclosure these misstatements would modify, and it concedes that "[n]either the HEA nor any regulation expressly provides for" the refunds at issue. ECF No. 15 at 2 & nn.3–4.

*Cockrell* illustrates the difference: the claims there challenged the servicer's failure to notify the borrower of a forbearance, a disclosure the FFEL regulations

themselves prescribe. 2025 WL 1909837, at *4 (citing 34 C.F.R. § 682.211(b)(1), (e)(1)–(2)).

Finally, the Sixth and Seventh Causes of Action arise under the SBBR's qualified-written-request provisions, Cal. Civ. Code §§ 1788.100(o), 1788.102(t), which ensure that borrowers can obtain information about their loans and correct account errors. An inquiry-and-correction duty is not a disclosure requirement. Defendant's argument that QWR responses are "by definition" disclosures, ECF No. 15 at 9, mistakes a dictionary for a statute. *See Student Loan Servicing All. v. District of Columbia* ("*SLSA*"), 351 F. Supp. 3d 26, 53 (D.D.C. 2018) (declining to read "disclosure" in § 1098g by its dictionary meaning).

When enacting § 1098g, Congress acted on the premise that HEA loans were "already subject to statutory provisions and regulations that provide comparable disclosures." S. Rep. No. 97-536, at 42 (1982) (quoted in *SLSA*, 351 F. Supp. 3d at 54–55). Congress was removing duplicative disclosure forms from a lender-based program that already imposed substantially similar requirements.

Fifty years of consumer-credit law confirm that disclosure requirements and inquiry-and-correction duties are distinct. A disclosure requirement is a one-way, event-triggered information push whose content is fixed in advance. An inquiry-and-correction duty is the structural opposite. The Fair Credit Billing Act of 1974, for

example, triggers duties to acknowledge, investigate, and correct or explain only upon consumer inquiry. 15 U.S.C. § 1666(a); *see Am. Express Co. v. Koerner*, 452 U.S. 233, 235–37 (1981). Congress placed it in a new chapter, "Credit Billing," with a new statutory purpose, "to protect the consumer against inaccurate and unfair credit billing," rather than among TILA's disclosure provisions. 15 U.S.C. § 1601(a).

The same pattern recurs in the Fair Credit Reporting Act and in RESPA, the statute on which the SBBR was modeled. RESPA's subsection (e), the "Duty of loan servicer to respond to borrower inquiries," is triggered by a "qualified written request" stating "the reasons for the belief of the borrower … that the account is in error" or the "information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The SBBR's QWR provision is drafted on that template nearly word for word. *Compare* Cal. Civ. Code §§ 1788.100(o), 1788.102(k)(2), (t), *with* 12 U.S.C. § 2605(e).

And Congress treats the two differently for preemption: RESPA's preemption clause reaches only its notice requirements, 12 U.S.C. § 2605(h), while the inquiry-response duty coexists with state law. Nothing in the HEA or 34 C.F.R. Part 685 prescribes such a procedure for Direct Loans or preempts a state one.

The Department agrees. QWR "dispute resolution processes" regulate servicer conduct and "would not be preempted." 88 Fed. Reg. at 47,373. Legislative

history, case law, and the agency that administers the program all say QWR-style protections are not disclosures. This Court should follow suit.

If Defendant were right that any statutory duty to convey information is a "disclosure requirement," every FCBA, RESPA, and FCRA dispute response would be one too, and Congress's half-century practice of placing the two regimes in separate chapters with separate preemption clauses would be meaningless. *See Nelson*, 928 F.3d at 648 (the HEA's specific preemption provisions "weigh against attributing to Congress a desire to preempt state law broadly"). It would also mean that every court to sustain a misrepresentation claim against a student loan servicer was wrong. *See, e.g.*, *Lawson-Ross*, 955 F.3d at 918; *Navient*, 967 F.3d at 290; *Nelson*, 928 F.3d at 649; *Hyland v. Navient Corp.*, No. 18-cv-9031 (DLC), 2019 WL 2918238, at *6–8 (S.D.N.Y. July 8, 2019); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 281–83 (E.D.N.Y. 2020).

**b. Plaintiffs' claims do not conflict with federal law**

The presumption against preemption applies with particular force in the fields of contract and consumer-protection law. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *Chae*, 593 F.3d at 944 (collecting cases). Conflict preemption arises where "it is impossible for a private party to comply with both state and federal law" or where state law "stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1152 (9th Cir. 2000).

***i. Impossibility***

Impossibility preemption is "a demanding defense," *Wyeth*, 555 U.S. at 573, and where Congress has "explicitly addressed" preemption, as in the HEA, "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Cipollone*, 505 U.S. at 517; *see Navient*, 967 F.3d at 292–93; *Lawson-Ross*, 955 F.3d at 920; *Nelson*, 928 F.3d at 648.

Defendant identifies no "obvious bar" to relief. *ASARCO*, 765 F.3d at 1004. It points to no statute or regulation MOHELA could not satisfy while complying with California law, and nothing in federal law that directs a result different from the one Plaintiffs seek. *Chae* found a concrete conflict between a state-law rule and a specific federal rule; Defendant supplies no such specificity. Its impossibility argument fails at the threshold.

Section 1098g, the only federal provision Defendant cites, is an express-preemption provision limited to disclosure requirements. Even courts that found parts of a state borrower bill of rights preempted recognized that provisions governing complaint resolution and compliance timelines present only a "false

conflict" that can be harmonized. *SLSA*, 351 F. Supp. 3d at 60–61. Defendant concedes that the PSLF regulation is "silent about refunds." ECF No. 15 at 2 n.4. Plaintiffs do not ask the Court to forbid anything federal law permits or to require anything it forbids. They ask that MOHELA process refunds the Department has already approved and respond to borrower inquiries. Compl. ¶¶ 73–75, 115–289.

Plaintiffs' claims require MOHELA to (1) timely effectuate approved refunds (Claims 1, 2, 3, 5, and 8); (2) not misrepresent their timing or process (Claim 4); and (3) acknowledge and respond to qualified written requests (Claims 6 and 7). None are impossible to reconcile with federal law.

***ii. Obstacle***

Enforcing the SBBR presents no obstacle to the HEA's purposes, which are discerned by "examining the federal statute as a whole and identifying its purpose and intended effects." *Chae*, 593 F.3d at 943 (quoting *Crosby*, 530 U.S. at 373).

Under *Chae*, claims that "enforce" the federal scheme are not preempted; claims that "vary" it are. Distinguishing *College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005), the Ninth Circuit explained that the plaintiff there "sought to enforce FFELP rules, not to vary them," so its claims "posed no threat to accomplishment of congressional purposes," whereas the *Chae* plaintiffs "d[id] not seek to buttress the FFELP framework, but rather to alter it in their home state."

*Chae*, 593 F.3d at 946. Plaintiffs are on the *College Loan* side of that line. MOHELA does not, and cannot, claim that any federal statute or regulation authorizes it to hold approved refunds indefinitely or to ignore borrower inquiries.

Indeed, the Direct Loan program assumes compliance with both.[2] MOHELA's servicing contract, which Defendant placed (in part) before the Court, requires the servicer to "comply with all applicable Federal and State rules, laws, regulations, and Department guidelines applicable to the USDS Program," ECF No. 15-1 at 12, and, in its "General Borrower Account Servicing Requirements," to "comply with all applicable Federal, and State laws, rules and regulations applicable to its performance under the Contract," *id.* at 18.

The Department's 2023 Preemption Interpretation removes any doubt. 88 Fed. Reg. 47,370. It explains that the new servicing contracts require compliance with state law, which "embodies the Department's recognition that State laws are generally not preempted," *id.* at 47,374, and that "the courts have repudiated the expansive approach taken in the 2018 interpretation," *id.* at 47,373. The Department recognized that ensuring the program "operates effectively and in line with its intended objectives is a substantial undertaking, and the oversight challenges are

[2] Notably, the current contract MOHELA operates under post-dates the California Student Loan Borrower Bill of Rights and does not provide any exceptions or carve outs.

evident and significant," that "collaboration with the States can supply the means to ensure better oversight of these contractors," and that it remains committed to ensuring that "borrowers receive exemplary customer service and are protected from substandard practices." *Id.* at 47,374 (quoting 83 Fed. Reg. 10,619, 10,622 (Mar. 12, 2018)).

That interpretation is not binding, but it carries the "power to persuade" that *Skidmore* describes, *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024), and the weight it receives "depends on its thoroughness, consistency, and persuasiveness," *Wyeth*, 555 U.S. at 577. It was issued after public comment, 88 Fed. Reg. at 47,370; it rests on the textual and structural analysis of § 1098g that the Third, Seventh, and Eleventh Circuits adopted, *id.* at 47,371–72; and it reflects the Department's operational understanding of how its contracts, which already require state-law compliance, interact with state consumer-protection regimes, *id.* at 47,374. Courts give the most weight to an agency's "explanation of how state law affects the regulatory scheme," even as they decide preemption for themselves. *Wyeth*, 555 U.S. at 576–77.

This Court's reasoning in *Hagelberg* applies. The Court declined to find preemption because the state-law claims "seek to enforce that same norm" federal law imposes, and "enforcing accuracy does not obstruct the HEA's objectives." 2026

WL 2287634, at *5. Likewise, Plaintiffs' claims enforce the timeliness and responsiveness MOHELA's federal contract already requires. Defendant reads *Hagelberg* as turning on the plaintiff's disputed borrower status. ECF No. 15 at 9–10. But the Court's reasoning did not rest on status alone: a state duty that "aligns with" what "the HEA itself commands" does not "hinder or prohibit" federal requirements. 2026 WL 2287634, at *5. The same is true here.

Additionally, Defendant invokes *Chae*'s concern for uniformity. But that rationale rested on features of the FFELP that the Direct Loan program does not share. *Chae* reasoned from the FFELP's codified purposes of loan insurance and guarantees, through which "Congress encourages private lenders to help fund higher education." 593 F.3d at 943–44 (citing 20 U.S.C. § 1071(a)(1)). Plaintiffs' loans are Direct Loans. The United States is the lender; no private lender's participation depends on California law, and no loan will go unmade because MOHELA must process approved refunds on time. The uniformity *Chae* read into the HEA is achieved directly in the Direct Loan program.

*Chae*'s obstacle finding also depended on deference to the Department's view, pressed there as intervenor. 593 F.3d at 948–50. That view now points the other way. The Department has since rejected the broad uniformity theory Defendant advances and explains that state laws regulating servicer conduct, including the handling of

borrower disputes, are generally not preempted. 88 Fed. Reg. at 47,372–74. Under *Chae*'s own method, the agency's view is a reason to find no obstacle, not a reason to find one. *Cf. Wyeth*, 555 U.S. at 576–77; *Nelson*, 928 F.3d at 651; *Lawson-Ross*, 955 F.3d at 922.

## II. MOHELA is not immune

MOHELA's claim that it is immune from suit has been rejected by the only court of appeals to decide it and by the only California district courts to decide it. *Good v. U.S. Dep't of Educ.*, 121 F.4th 772, 788 (10th Cir. 2024); *Walker v. Higher Educ. Loan Auth. of the State of Mo.*, No. 1:21-cv-00879-KES-SAB, 2024 WL 3568576, at *9 (E.D. Cal. July 26, 2024); *Maldonado v. Higher Educ. Loan Auth. of the State of Mo.*, No. 3:24-cv-07850-VC, 2025 WL 1085105, at *1 (N.D. Cal. Apr. 9, 2025).

*Galette v. New Jersey Transit Corp.*, 607 U.S. 509, 523–27 (2026), then confirmed the principle on which *Good* and *Walker* relied: that a state-created corporation liable for its own judgments is not an arm of the State. Nineteen days later the Supreme Court denied MOHELA's petition for certiorari in *Good*. *Good*, 121 F.4th 772, *cert. denied*, No. 24-992 (U.S. Mar. 23, 2026). MOHELA's argument fails for three independent reasons.

First, MOHELA is not an arm of the State of Missouri and therefore has no sovereign immunity of its own. That ends the inquiry: MOHELA's *Hyatt II* argument presupposes a sovereign, and there is none. The one recent decision to find MOHELA immune applied Missouri's statutory "public entity" test, Mo. Rev. Stat. § 537.600, in a Missouri forum after MOHELA withdrew its arm-of-the-State argument in light of *Galette*; it did not ask whether a California court must apply Missouri immunity law. *Joy v. Higher Educ. Loan Auth. of the State of Mo.*, No. 4:23-cv-01590-ZMB, ECF No. 73, at 4, 6–13 (E.D. Mo. Sept. 29, 2026).

Second, even if *Hyatt II* were relevant, it is not a rule of immunity; it forbids only "a special rule of law applicable only in lawsuits against its sister States," *Franchise Tax Bd. of Cal. v. Hyatt*, 578 U.S. 171, 178 (2016) ("*Hyatt II*"), and the SBBR is a statute of general application.

Third, the Government Claims Act allocates liability among California's own public entities "in the State," Cal. Gov't Code § 811.2; it makes no entity a sovereign, does not reach a Missouri corporation, and, even if it applied, does not operate as Defendant describes.

**a. MOHELA is not an arm of the state**

***i. The Government Claims Act does not define a sovereign***

Defendant attempts an end run around *Galette* by equating the Government Claims Act's ("GCA") definition of "public entity" with arm-of-the-State status. The two are different. The Act reaches "any other political subdivision or public corporation *in the State*," Cal. Gov't Code § 811.2, including cities, counties, and local authorities that are not arms of the State, and it allocates liability for all of them. California may extend statutory immunity to whatever class of domestic entities it chooses; doing so neither makes them sovereign nor says anything about a Missouri corporation.

***ii. Nilsen applies Galette and establishes a three-factor test***

Sovereign immunity is "personal" to the State itself and does not extend to "lesser entities" that are not arms of the State. *Galette*, 607 U.S. at 518 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999), and *Alden v. Maine*, 527 U.S. 706, 756 (1999)). "The clearest evidence that a State has created a legally separate entity is that it created a corporation with the traditional corporate powers to sue and be sued, hold property, make contracts, and incur debt." *Id.* at 524. Other features of state law may also show separateness, but

"the ultimate question remains whether the State structured the entity as part of itself or as legally independent." *Id.* at 525.

Following *Galette*, the Ninth Circuit refined the test it had adopted in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc). Courts consider "(1) whether the State intended to create a legally independent entity, which is shown by the entity's form and treatment under state law; (2) whether the State is formally liable for the entity's debts or liabilities, including judgments; and (3) the degree of control the State exercises over the entity. The first factor bears the most weight, and the third bears the least." *Nilsen v. Univ. of Wash.*, 186 F.4th 1133, 1138 (9th Cir. 2026).

***iii. All three Nilsen factors weigh against MOHELA***

***1. Missouri intended to create a legally independent entity***

MOHELA was created as a separate legal entity. It is a "body politic and corporate" with "perpetual succession," Mo. Rev. Stat. §§ 173.360, 173.385.1(1); it may "sue and be sued … in any court," *id.* § 173.385.1(3); and it may contract, hold and dispose of property, issue bonds, and enter agreements with "any federal or state agency, any person," or any corporation, *id.* § 173.385.1(6), (11), (14), (15). Its assets are not "considered to be part of the revenue of the state," and its loan notes "shall

not be considered to be public property." *Id.* § 173.425. These are the characteristics *Galette* identified as the clearest evidence of legal separateness. 607 U.S. at 524.

MOHELA also independently contracts to service loans for the federal government and for private lenders.[3]

### ***2. Missouri is not liable for MOHELA's debts or liabilities, including judgments***

MOHELA's debts and obligations are categorically not Missouri's: "The state shall not be liable in any event for … the performance of any pledge, mortgage, obligation, or agreement of any kind whatsoever which may be undertaken by the authority." Mo. Rev. Stat. § 173.410; *see Good*, 121 F.4th at 817–19 ("It is pellucid that Missouri does not bear legal liability for a judgment against MOHELA."). MOHELA's counsel has conceded in a California federal court "that a loss to MOHELA would not be directly or indirectly payable out of the state's treasury." *Walker*, 2024 WL 3568576, at *8. That fact is nearly dispositive. The Supreme Court "has never once found a corporation that was liable for its own judgments to be an

---

[3] Accepting MOHELA's immunity claim would immunize MOHELA's private-market servicing as well, creating unequal protection for private student loan borrowers depending on which servicer their loan holder selects.

arm of the State, even when the State had significant control over the entity." *Galette*, 607 U.S. at 526–27.

### *3. Missouri exercises limited control over MOHELA*

Missouri does not direct MOHELA's day-to-day operations. There is no gubernatorial or legislative veto over board action; the board selects its own chair and executive director; MOHELA adopts its own bylaws, hires its own employees, and sets its own policies without state approval; it conducts its business dealings without prior approval or veto and services loans in all fifty states; and it sets bond terms, rates, and investments without state review. Mo. Rev. Stat. §§ 173.360, 173.385.1(2), (6)–(7), (18); *Good*, 121 F.4th at 803–04, 812; *Walker*, 2024 WL 3568576, at *6–7; *Pellegrino v. Equifax Info. Servs., LLC*, 709 F. Supp. 3d 206, 217 (E.D. Va. 2024). MOHELA is represented here by private counsel, not the Missouri Attorney General.

To be sure, Missouri exercises some control. Mo. Rev. Stat. §§ 173.360, 173.385.1(8), 173.445. But it is limited compared to the breadth of MOHELA's activities, and it is less than the control at issue in *Galette*, where the Court explained that "[t]his level of control does not meaningfully affect NJ Transit's status, given the fact that it is a legally separate corporation and is responsible for its own judgments." 607 U.S. at 530.

### *iv. Hyatt II is inapplicable*

*Hyatt II* is not a rule of immunity and does not require California to apply Missouri's sovereign-immunity law. *Contra* ECF No. 15 at 11–12, 14. There, the Franchise Tax Board was undisputedly California itself; the only question was whether Nevada could apply a damages rule more hostile than the one Nevada applied to its own agencies. 578 U.S. at 178–80. *Hyatt II* thus presupposes a sovereign and asks only whether the forum discriminated against it. MOHELA is not a sovereign, *supra* Part II.a, so there is no sister State to discriminate against.

In any event, the SBBR does not discriminate. It is a statute of general application that covers "a government, or a political subdivision of a government." Cal. Civ. Code § 1788.100(m). A California public authority servicing Plaintiffs' loans would face exactly these claims. That is the parity *Hyatt II* requires.

### **b. If MOHELA is a "public entity", it is still liable**

Even if the Court reads *Hyatt II* to require parity for non-sovereign "public entities," then liability would attach. Under the GCA, a public entity is immune unless a statute provides for its liability; where one does, liability attaches unless a more specific enumerated immunity withdraws it. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1124–27 (9th Cir. 2013). That

is the ordinary rule that the specific governs the general, and it is the analysis in the authorities MOHELA cites.

The SBBR is such a statute. It imposes liability on every "person" engaged in servicing and defines "person" to include "a government, or a political subdivision of a government." Cal. Civ. Code §§ 1788.100(m), (s), 1788.103(b). Liability therefore attaches unless one of the "various specific governmental immunities set forth in the Government Claims Act or elsewhere" applies. *Nuveen*, 730 F.3d at 1126.

Defendant identifies none. It invokes only § 815(a), which the SBBR satisfies on its face. *Nuveen*, by contrast, asked whether the Corporate Securities Law overcame the specific misrepresentation immunity of § 818.8, 730 F.3d at 1125–27, and *Caldwell v. Montoya*, 10 Cal. 4th 972, 986 (1995), asked only whether FEHA overcame the discretionary-act immunity of § 820.2.

MOHELA's reading would ignore the structure *Nuveen* describes and render the balance of the Claims Act surplusage. If § 815(a) alone barred every statutory claim against a public entity unless the statute "clearly withdr[ew]" immunity, ECF No. 15 at 16 (quoting *Nuveen*, 730 F.3d at 1126), the Legislature would have had no reason to enact §§ 818 through 895.8, each of which carves a particular immunity out of liability that would otherwise exist.

### III. Plaintiffs are Intended Beneficiaries under the Servicing Contract

Defendant contends that Plaintiffs are not third-party beneficiaries of its contract with the Department. ECF No. 15 at 17. None of its cases interprets the contract MOHELA services under today; addresses the "strict adher[ence]" the USDS contract demands for "Specialty Servicing Programs" such as PSLF; or considers the obligations of Attachment 1, which Defendant did not provide to the Court although it details duties MOHELA owes borrowers like Plaintiffs. *See* ECF No. 15-1 at 12 ¶ (h).

A third party may enforce a contract that reflects the parties' express or implied intention to benefit it. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) (citing *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997)). The benefit must be more than incidental; there must be "clear intent" to benefit the third party. *Id.* No right-to-sue clause or formal recital is required; it is enough that the contract undertakes a "specific responsibility" to the third party in an "unambiguous, concrete" way. *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244–46 & n.8 (9th Cir. 2009), *rev'd*, 563 U.S. 110 (2011). The Supreme Court reversed because the contracts there "simply incorporate statutory obligations" with "no negotiable terms," 563 U.S. at 118, the opposite of this case, and the Ninth Circuit continues to apply *Santa Clara*'s analysis. *See Caltex Plastics,*

*Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016); *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, N.A.*, 671 F.3d 1027, 1033 (9th Cir. 2012). Courts look to the contract's "text and purpose" and the "circumstances of the transaction," which, for a contract a federal statute mandates, include the "governing statute and its purpose." *Santa Clara*, 588 F.3d at 1245.

**a. The Text and Purpose of the Contract Reflect the Parties' Intent to Confer Benefits on Borrowers**

The language of the Contract reflects that intent, especially in light of Attachment 1. Compl. ¶¶ 280–85; *see* Ex. A. The contract imposes a strict-adherence requirement:

> The specialty servicing programs (e.g., PSLF, TEACH, TPD) require the USDS Servicer to **strictly adhere to the requirements in Attachment 1**. USDS Servicer is responsible for the following: providing borrowers with basic information about these programs; connecting borrowers to resources on StudentAid.gov and at 1-800-4-FEDAID: and **processing borrower account status changes, discharges, and forgiveness based on information transmitted by FSA**.

ECF No. 15-1 at 12 ¶ (h) (emphasis added).

Attachment 1, incorporated by reference,[4] confirms that intent as to the specific conduct at issue in at least three places:

---

[4] Defendant's motion included Exhibit B (as ECF 15-1), a copy of the operative USDS contract. That contract incorporates a number of documents the Defendant did not supply to this Court. Of

- First, § 23020.020 requires that "[u]pon receipt of a discharge notice from FSA, the contractor shall discharge a borrower's eligible loan(s) for PSLF … forgiveness within 10 business days." Ex. A at 171.
- Second, "[o]nce all other borrower debts at the servicer are paid in full, the borrower shall be refunded any payments made after the effective date" of forgiveness, and "[f]or the PSLF and TEPSLF program, the contractor shall refund any payments received after the discharge was effective … if the borrower has no other debts with the servicers." *Id.* §§ 23020.030–.040.
- Third, § 28024.000 requires MOHELA to "clear all credit balances on borrower accounts within 45 calendar days (including, but not limited to, refund, IPAC transfers, small balance write-ups)." *Id.* at 218; *see* Compl. ¶¶ 283–85.

Unlike the contracts in *GECCMC* and *Winebarger v. Pa. Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070 (C.D. Cal. 2019), these provisions are more than "[v]ague, hortatory pronouncements" or a passing reference to a third party. *GECCMC*, 671 F.3d at 1033 (quoting *Klamath*, 204 F.3d at 1212). They describe a "specific responsibility" to the third party and an "unambiguous, concrete limitation on" MOHELA's conduct in PSLF discharge and refund processing. *Santa Clara*, 588 F.3d at 1245–46.

Other courts have found borrowers to be third-party beneficiaries of servicing contracts when the plaintiff identified specific contractual requirements governing

---

particular importance is what the Contract refers to as Attachment 1, which Defendant previously provided to a federal court in support of other arguments in another case. The contract incorporates this document by reference, and Plaintiffs have provided that document to the Court here as **Exhibit A.**

servicing conduct. *Johansson v. Nelnet, Inc.*, No. 4:20-CV-3069, 2021 WL 1169409, at *8 (D. Neb. Mar. 26, 2021); *Ballard v. Navient Corp.*, No. 3:18-CV-121, 2021 WL 1899874, at *10 (M.D. Pa. Mar. 31, 2021), report and recommendation *adopted*, 2021 WL 1660843 (M.D. Pa. Apr. 28, 2021).

Defendant's cases are distinguishable on three grounds. First, in several of Defendant's cases the contract was not before the court or the plaintiff identified no specific provision. *See Hyland*, 2019 WL 2918238, at *8; *Edelman v. U.S. Gov't*, No. 18-cv-2143 (JS)(AKT), 2020 WL 7123175, at *11 (E.D.N.Y. Dec. 4, 2020); *Love v. Pa. Higher Educ. Assistance Agency*, No. 1:19-cv-02387-JPB, 2020 WL 1545798, at *8 (N.D. Ga. Mar. 16, 2020). Second, the claimed breach was an attempt to enforce a statutory or regulatory requirement. *See Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 986–87 (N.D. Ill. 2024); *Joy*, ECF No. 73, at 16. Finally, each construed the 2009–2011 era contracts, which differed materially. *See Winebarger*, 411 F. Supp. 3d at 1092 & n.13; *Travis*, 460 F. Supp. 3d at 284–85; *Wade v. Pa. Higher Educ. Assistance Agency*, No. 21-11595 (CPO), 2022 WL 1115275, at *2 (D.N.J. Apr. 14, 2022); *Love*, 2020 WL 1545798, at *8; *Witz*, 752 F. Supp. 3d at 986.[5]

---

[5] Among those differences, the USDS contract eliminated a provision explicitly granting third-party benefits in the intellectual property context. *Wade* and a recent Eastern District of Missouri

Defendant also points to the contract's incorporation of 48 C.F.R. § 52.233-1. ECF No. 15 at 21. That clause governs the process by which a contractor asserts claims against the Government. Nothing in it purports to eliminate third-party beneficiary claims.

The clause implements the Contract Disputes Act, whose "reach is limited to claims by the Government against a contractor, or by a contractor against the Government." *United Kingdom Ministry of Defence v. Trimble Navigation Ltd.*, 422 F.3d 165, 166 (4th Cir. 2005).

Accepting Defendant's view would eliminate third-party beneficiary claims against every government contractor, because the clause is mandatory in nearly all procurements. 48 C.F.R. § 33.215(a).

Finally, this claim does not enforce the HEA; it enforces the operational contract between the Department and MOHELA. Defendant agrees that neither the HEA nor the PSLF regulations address refunds. ECF No. 15 at 2 nn.3–4. The contract was negotiated by MOHELA through the procurement process and is

---

decision treated that provision as strong evidence that no other beneficiaries were intended. *Wade*, 2022 WL 1115275, at *2; *Travis*, 460 F. Supp. 3d at 284–85; *Joy v. Higher Educ. Loan Auth. of* the *State of Mo.*, No. 4:23-cv-01590-ZMB, ECF No. 73, at 15–16 (E.D. Mo. Sept. 29, 2026).

continually modified through change requests. Its servicing requirements at issue here are not recitations of statute.

**b. Consideration of the contract's surroundings confirms the intention**

The 2023 USDS contract was a new framework to address the systematic failures by the Department and servicers. *See* U.S. Dep't of Educ., Office of Inspector Gen., ED-OIG/A05Q0008, *Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans* 2, 18 (Feb. 12, 2019); U.S. Gov't Accountability Office, GAO-16-523, *Federal Student Loans:* Education *Could Improve Direct Loan Program Customer Service* and *Oversight* (May 2016); Consumer Fin. Prot. Bureau, *Student Loan Servicing: Analysis of Public Input* and *Recommendations for Reform* 3–5 (Sept. 2015). Every case Defendant cites considered the older, failed 2009–2011 era contracts.

The USDS contract was written because those contracts failed borrowers. In announcing it, the Department explained that the new servicers would "implement much-needed improvements to better serve borrowers," that the new environment "is designed to provide federal student loan borrowers with a high-quality customer experience and to deliver support for at-risk borrowers so that all borrowers can … claim loan forgiveness, if they are eligible for it," and that it "will replace the legacy

servicing contracts … to drive improved borrower outcomes, especially for vulnerable borrowers.” Press Release, U.S. Dep’t of Educ., U.S. Department of Education’s Office of Federal Student Aid Awards New Contracts to Five Companies to Serve Borrowers, Reduce Delinquency, and Improve Accountability (Apr. 24, 2023), https://www.ed.gov/news/press-releases/us-department-educations-office-federal-student-aid-awards-new-contracts-five-companies-serve-borrowers-reduce-delinquency-and-improve-accountability (Ex. B at 1–2).[6]

As FSA’s Chief Operating Officer put it, “FSA **is finally delivering on the promise to borrowers.”** Ex. B at 2 (emphasis added).

Congress insisted on this reorientation, under appropriations language that named borrowers as the object. For five consecutive fiscal years, Congress barred the Secretary from funding “any contract solicitation for a new Federal student loan servicing environment … unless” it allocated accounts “based on performance,” and did so “in order to promote accountability and high-quality service to borrowers.” Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, div. A, tit. III, 133 Stat. 2534, 2592–93 (2019); Pub. L. No. 116-260, div. H, tit. III, 134 Stat. 1182, 1603–04

---

[6] Archived at https://web.archive.org/web/20230426121044/https://www.ed.gov/news/press-releases/us-department-educations-office-federal-student-aid-awards-new-contracts-five-companies-serve-borrowers-reduce-delinquency-and-improve-accountability. The original URL is no longer active.

(2020); Pub. L. No. 117-103, div. H, tit. III, 136 Stat. 49, 480–81 (2022); Pub. L. No. 117-328, div. H, tit. III, 136 Stat. 4459, 4893 (2022); Pub. L. No. 118-47, div. D, tit. III, 138 Stat. 460, 687–88 (2024).

The contract also forecloses the defense servicers used to defeat borrower claims under the prior contracts. *Compare Berman v. Pa. Higher Educ. Assistance Agency*, No. 1:21-cv-63, ECF No. 40, at 5–15 (M.D.N.C. Mar. 16, 2023) (dismissing PSLF borrower's claims, including third-party-beneficiary claim, on derivative sovereign immunity under prior servicing contract), *aff'd*, No. 23-1414 (4th Cir. Apr. 15, 2024), *with* ECF No. 15-1 at 14 ("USDS Servicer acknowledges that any claim or defense of Sovereign Immunity or Qualified Immunity is not applicable to work performed under the Contract"), *and Maldonado*, 2025 WL 1085105, at *2 (enforcing that waiver to reject MOHELA's derivative-immunity defense). A contract that strips its servicer of immunity from borrower suits makes clear that borrowers are more than incidental.

## IV. The Department is not a Necessary Party Under Rule 19

Defendant contends that Rule 19(a) requires joinder of the Department. ECF No. 15 at 21–23. Rule 19(a)(1)(A) requires joinder only if, in the absent party's absence, "the court cannot accord complete relief among existing parties." Here Plaintiffs allege that after the Department properly approved their PSLF discharges,

MOHELA failed to process the resulting refunds, omitted information about refund status, and ignored their inquiries, in violation of California law and its own contract. Compl. ¶¶ 73–75, 81, 98, 190. The parties agree that Plaintiffs qualified for PSLF. The mechanics of a refund begin only after MOHELA initiates the request, and MOHELA is the source of the delay. *Id.* ¶ 190. A court would not require joinder of Visa because a merchant failed to issue a refund; it would hear the case against the merchant.

Judge Chhabria recently rejected this same argument by MOHELA, in a case alleging that MOHELA failed to implement discharges and refunds the Department had ordered, explaining by minute order: "The plaintiffs do not seek, nor would this Court grant, any judgment that requires discharge of loans that DOE did not authorize. So DOE is not a required party under Rule 19." *Maldonado*, No. 3:24-cv-07850-VC, ECF No. 69 (N.D. Cal. July 8, 2025) (text-only order denying ECF No. 54, which briefed both Rule 19(a)(1)(A) and (B)) (Ex. C at 2).

Rule 19(a)(1)(B) is no more availing. It applies only where the absent party "claims an interest" in the action. The Department has claimed none here, and MOHELA may not claim one on its behalf. *See Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043–44 (9th Cir. 1983) (Government not a required party to suit on its own contract where it "never asserted a formal interest").

## CONCLUSION

For these reasons, the Court should deny MOHELA's motion in its entirety. Should the Court grant any part of it, Plaintiffs request leave to amend.

Dated: October 30, 2026

Respectfully submitted,
*/s/ W. Austin Hinkle*

W. Austin Hinkle (SBN 313856)
**PUBLIC GOODS PRACTICE, LLP**
502 W 7th St STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com

Brett R. Cohen (SBN 337543)
**LEEDS BROWN LAW, P.C.**
134 Mineola Blvd, 2nd Flr,
Mineola, New York 11501
(516) 873-9550
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,869 words, which complies with the word limit of L.R. 11-6.1.

*/s/ W. Austin Hinkle*