**THOMPSON COBURN LLP**
**LUKAS SOSNICKI, CSB 295895**
**lsosnicki@thompsoncoburn.com**
**GREGORY G. BREZOVEC, CSB 340941**
**gbrezovec@thompsoncoburn.com**
**10100 Santa Monica Blvd., Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant
Higher Education Loan Authority
of the State of Missouri

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

GLENDA BURNETT and DAISY URBINA, on behalf of themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI D/B/A MOHELA,

Defendant.

CASE NO. 5:26-cv-3580 SSS (ACCVx)

District Judge Sunshine Suzanne Sykes
Magistrate Judge Angela C. C. Viramontes

**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR TO REQUIRE JOINDER OF UNITED STATES DEPARTMENT OF EDUCATION**

Complaint Filed: June 29, 2026

Date: December 4, 2026
Time: 2:00 p.m.
Crtrm.: via Zoom

# TABLE OF CONTENTS

**Page**

I. The Court Should Dismiss Plaintiffs' SBBR Claims (Counts 1-7) Because They Are Preempted By The HEA. .......... 1

A. *Chae, Winebarger, Anthony*, and *Cockrell* are directly on point .......... 1

B. *Winebarger* held that *Chae*'s preemption analysis applied to the Direct Loan Program .......... 2

C. The HEA, ED's regulations and MOHELA's Servicing Contract with the ED extensively regulate federal student loans and were intended to preempt state laws such as the SBBR. .......... 3

D. Plaintiffs' non-binding cases from other jurisdictions support the conclusion that the HEA preempts Plaintiffs' SBBR claims .......... 4

E. National uniformity as to the administrative mechanics of servicing federal student loans is necessary. .......... 4

F. The Servicing Contract does not provide that the SBBR applies to federal student loan servicing. .......... 6

G. The ED's conflicting interpretations of HEA preemption in 2018 and 2023 are irrelevant under *Loper Bright* .......... 6

II. The Court should also dismiss Plaintiffs' SBBR claims (Counts 1-7) because MOHELA, as a public entity, is immune from SBBR liability under state-law sovereign immunity. .......... 8

A. Whether MOHELA qualifies as an "arm of the State" is irrelevant because MOHELA contends that it is immune from SBBR liability under state-law sovereign immunity, not that it is immune from suit under any federal-law immunity principles. .......... 8

1. Plaintiffs' cases are inapposite as they pertain to Eleventh Amendment/interstate sovereign immunity, not state-law sovereign immunity. .......... 8

2. State-law sovereign immunity is entirely distinct from Eleventh Amendment immunity and interstate sovereign immunity. .......... 10

3. Missouri state sovereign immunity does not depend on a public entity being an "arm of the State." .......... 12

4. California state sovereign immunity also does not depend on a public entity being an "arm of the State." .......... 12

B. *Hyatt II* requires nondiscriminatory treatment of another state's public entities, regardless of whether they are "arms of the State." ........ 13

C. Under *Nuveen*, public entities are immune from SBBR liability because, notwithstanding the SBBR's definition of "person," the SBBR does not clearly withdraw statutory immunities for public entities. ........ 14

III. The Court Should Dismiss Plaintiffs' Breach Of Contract Claim (Count 8) Because MOHELA's Servicing Contract With The ED Does Not Reflect Any Clear Intent To Allow Plaintiffs To Enforce The Contract As Intended Third-Party Beneficiaries. ........ 17

A. The new Servicing Contract, like the prior servicing contract, does not reflect a "clear intent" to establish intended third-party beneficiary status on borrowers. ........ 17

B. The Ninth Circuit's decision in *Astra* (which the Supreme Court reversed) is inapposite because the agreement in *Astra* is fundamentally different than the Servicing Contract. ........ 19

C. The Servicing Contract's alleged "surroundings" cannot and do not establish the requisite "clear intent" for intended third-party beneficiary status for borrowers. ........ 20

IV. Under Rule 19(a), Plaintiffs Must Join The ED As A Party Defendant. ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anthony v. Navient Corp.*,
No. 2:24-CV-09600-AH-(ASX), 2025 WL 2190616 (C.D. Cal. July 11, 2025) ........ 1-2

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*,
563 U.S. 110 (2011) ........ 19-20

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) ........ 1-2, 5, 7

*City of Harrisonville v. Bd. of Trustees of Mo. Petroleum Storage Tank Ins. Fund*,
655 S.W.3d 770 (Mo. 2022) ........ 12

*Cnty. of Santa Clara v. Astra USA, Inc.*,
588 F.3d 1237 (9th Cir. 2009) ........ 19-20

*Cockrell v. Navient Corp.*,
No. 8:24-CV-01780-JVS-JDE, 2025 WL 1909837 (C.D. Cal. June 9, 2025) ........ 1-2

*Dykes v. Missouri Higher Educ. Loan Auth.*,
No. 4:21-CV-00083-RWS, 2021 WL 3206691 (E.D. Mo. July 29, 2021) ........ 9, 12

*Edelman v. United States Gov't*,
No. 18-CV-2143(JS)(AKT), 2020 WL 7123175 (E.D.N.Y. Dec. 4, 2020) ........ 17

*Franchise Tax Bd. of California v. Hyatt*,
587 U.S. 230 (2019) ........ 10

*Franchise Tax Board of California v. Hyatt*,
578 U.S. 171 (2016) ........ *passim*

*Galette v. New Jersey Transit Corp.*,
607 U.S. 509 (2026) ........ 9-11, 13

*GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027 (9th Cir. 2012) ........ 19-21

*Glob. Innovative Concepts, LLC v. State*, 105 F.4th 139 (4th Cir. 2024) ........ 11

*Good v. U.S. Dep't of Educ.*, 121 F.4th 772 (10th Cir. 2024) ........ 9

*Gordon v. Sheriffs Off. Adams Cnty.*, No. 6:23-CV-01139, 2025 WL 4113569 (W.D. La. Dec. 4, 2025) ........ 14

*Harbeck v. Smith*, 814 F. Supp. 2d 608 (E.D. Va. 2011) ........ 11

*Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019) ........ 4, 17

*Jinks v. Richland Cnty.*, 538 U.S. 456 (2003) ........ 10

*Joy v. Higher Educ. Loan Auth. of the State of Missouri*, No. 4:23-CV-1590-ZMB, 2026 WL 2921077 (E.D. Mo. Sept. 29, 2026) ........ 12, 17

*Jules v. Andrew Balazs Properties*, 145 S. Ct. 2870 (2026) ........ 9

*Kyles v. Beaugard*, No. 15-CV-8895, 2023 WL 5277882 (N.D. Ill. Aug. 16, 2023) ........ 11

*Lafleur v. State Univ. Sys. of Fla.*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3727832 (M.D. Fla. Aug. 2, 2021) ........ 11

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020) ........ 4

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........ 6

*Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798 (N.D. Ga. Mar. 16, 2020) ..... 17

*Maldonado v. Higher Educ. Loan Auth. of the State of Missouri*, No. 24-CV-07850-VC, 2025 WL 1085105 (N.D. Cal. Apr. 9, 2025) ..... 10, 23

*Mermigas v. Higher Educ. Loan Auth.*, No. 24-CV-11505, 2025 WL 2576745 (N.D. Ill. Sept. 4, 2025) ..... 12

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639 (7th Cir. 2019) ..... 4

*Nevada v. Hall*, 440 U.S. 410 (1979) ..... 10

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111 (9th Cir. 2013) ..... 14-16

*Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020) ..... 4

*Pittman v. Rutherford*, No. CV 19-36-DLB-CJS, 2020 WL 6384726 (E.D. Ky. Oct. 30, 2020) ..... 13

*Regents of the Univ. of California v. Doe*, 519 U.S. 425 (1997) ..... 10

*Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269 (1st Dist. 1994) ..... 12

*Travis v. Navient Corp.*, 460 F. Supp. 3d 269 (E.D.N.Y. 2020) ..... 17

*Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275 (D.N.J. Apr. 14, 2022) ..... 17

*Walker v. Higher Educ. Loan Auth. of the State of Missouri*, No. 1:21-CV-00879-KES-SAB, 2024 WL 3568576 (E.D. Cal. July 26, 2024) ..... 9

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070 (C.D. Cal. 2019) .......... *passim*

*Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980 (N.D. Ill. 2024) .......... 17

**Statutes**

20 U.S.C. §§ 1071-1099 .......... 3

20 U.S.C. § 1087f .......... 3

20 U.S.C. § 1098g .......... 1-2, 4

Cal. Gov't Code § 811.2 .......... 12

Cal. Gov't Code § 815(a) .......... 14-16

Cal. Gov't Code § 815(b) .......... 16

Cal. Gov't Code § 818 .......... 16

Cal. Gov't Code § 818.9 .......... 15

**Other Authorities**

34 C.F.R. §§ 685.100-685.499 .......... 3

48 C.F.R. § 52.233-1 .......... 21

83 FR 10619 (Mar. 12, 2018) .......... 7, 19

88 FR 47,370 .......... 6

Fed. R. Civ. P. 19 .......... 22-23

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I. The Court Should Dismiss Plaintiffs' SBBR Claims (Counts 1-7) Because They Are Preempted By The HEA.

MOHELA's opening memorandum explained that the HEA preempts Plaintiffs' SBBR claims (Counts 1-7) under the Ninth Circuit's decision in *Chae v. SLM Corp.*, 593 F.3d 936, 943-50 (9th Cir. 2010), and this Court's decisions in *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1088-90 (C.D. Cal. 2019), *Anthony v. Navient Corp.*, No. 2:24-CV-09600-AH-(ASX), 2025 WL 2190616, at *2-4 (C.D. Cal. July 11, 2025), and *Cockrell v. Navient Corp.*, No. 8:24-CV-01780-JVS-JDE, 2025 WL 1909837, at *3-5 (C.D. Cal. June 9, 2025). Plaintiffs essentially ignore *Chae* and this Court's decisions and primarily rely on out-of-circuit cases that hold no precedential or persuasive value.

#### A. *Chae, Winebarger, Anthony*, and *Cockrell* are directly on point.

In *Chae*, the Ninth Circuit ruled that:

- Under conflict preemption, the HEA preempted the application of California business, contract, and consumer protection law to federal student loan servicers because the California laws would stand as an obstacle to the uniform administration of the federal loan program. 593 F.3d at 943-50.
- 20 U.S.C. § 1098g of the HEA expressly preempts borrower misrepresentation and disclosure-related claims against servicers.

593 F.3d at 942-50.

Based on *Chae*, this Court has held that the HEA preempted SBBR claims against loan servicers, both under conflict preemption and Section 1098g express preemption. *Anthony*, 2025 WL 2190616, at *2-4; *Cockrell*, 2025 WL 1909837, at *3-5. And in *Winebarger*, this Court applied *Chae*'s preemption rulings to California state law claims concerning the administration of the PSLF program, holding that the

state law claims were preempted under HEA conflict preemption because they "would undermine Congress's unequivocal objective of uniformity," and that Section 1098(g) preempted the borrowers' complaint that the servicers "fail[ed] to provide accurate information" because that was "in essence, nothing more than a disclosure claim." 411 F. Supp. 3d at 1088-90.

These cases are directly on point and compel the conclusion that the HEA preempts all of Plaintiffs' SBBR claims, either via conflict preemption or express preemption under Section 1098g. Plaintiffs barely address *Chae* and *Cockrell* and completely ignore *Winebarger* and *Anthony*.

### B. <u>*Winebarger* held that *Chae*'s preemption analysis applied to the Direct Loan Program.</u>

Plaintiffs attempt to distinguish *Chae* on the basis that it involved the Federal Family Education Loan (FFEL) Program, under which private lenders made educational loans guaranteed by the federal government, whereas the current case concerns the federal Direct Loan Program, under which the federal government directly makes educational loans to borrowers. ECF No. 18 at 22. Yet, this is a distinction without a difference for purposes of the preemption analysis. In fact, this Court rejected such a distinction in *Winebarger*, concluding that "[t]he same uniformity concerns that resulted in the Ninth Circuit applying conflict preemption to the Federal Family Education Loan Program ('FFELP') in *Chae* are also present in the Direct Loan Program." 411 F. Supp. 3d at 1090. Indeed, if anything, *Chae*'s preemption analysis applies even more forcefully as to state law claims concerning Direct Loans because those loans were made and are owned directly by the federal government, whereas FFEL Loans were made and are owned by private lenders.

### C. <u>The HEA, ED's regulations and MOHELA's Servicing Contract with the ED extensively regulate federal student loans and were intended to preempt state laws such as the SBBR.</u>

Throughout the HEA, Congress has enacted detailed provisions addressing student eligibility, institutional eligibility, loan amounts, interest rates, loan repayment (including deferments and forbearances), and loan forgiveness (including the PSLF Program), among other matters. *See, e.g.,* 20 U.S.C. §§ 1071-1099. Pursuant to its rulemaking authority under the HEA, the ED has issued extensive regulations addressing these same aspects of Direct Loans. *See, e.g.,* 34 C.F.R. §§ 685.100-685.499.

Moreover, under the HEA, Congress directed the ED to "enter into contracts for … the servicing and collection of loans made or purchased under this part [the Direct Loan Program]." 20 U.S.C. § 1087f. In turn, the ED has entered into lengthy, detailed contracts with its loan servicers.

Given the extensive nature of the HEA, regulations under the HEA, and servicing contracts encompassing the dictates of the HEA, it makes no sense that Congress intended federal student loan servicing to be subject to the varying laws of 50 different States—a conclusion Plaintiffs' claims naturally embrace. As this Court explained in *Winebarger*:

> In enacting the HEA, Congress certainly did not call on the courts to determine whether loan servicers' representations and conduct were adequate by applying the law of 50 different states. Instead, Congress's clear objective was the resolution of questions about the adequacy of loan servicers by applying federal law as embodied in DOE's regulations and contracts between DOE and loan servicers.

411 F. Supp. 3d at 1090.

**D. <u>Plaintiffs' non-binding cases from other jurisdictions support the conclusion that the HEA preempts Plaintiffs' SBBR claims.</u>**

Plaintiffs rely on cases outside of the Ninth Circuit and this Court that are neither precedential nor persuasive, and do not alter this conclusion. In these other cases, courts held that the HEA does not preempt state law claims to the extent they are based on affirmative misrepresentations and misconduct as opposed to failures of disclosure (which are expressly preempted by 20 U.S.C. § 1098g of the HEA). *See Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287-295 (3d Cir. 2020); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639 (7th Cir. 2019); *Hyland v. Navient Corp.*, No. 18CV9031(DLC), 2019 WL 2918238, at *7 (S.D.N.Y. July 8, 2019) ("This is a private tort suit alleging misrepresentations regarding federal loan programs; *it does not seek to impose new regulatory obligations on loan servicers*." (emphasis added)). But these courts have also recognized that HEA preemption applies when, as here, "the need for nationwide consistency on … administrative mechanics is substantial." *Nelson*, 928 F.3d at 651; *Navient*, 967 F.3d at 293; *see also Lawson-Ross*, 955 F.3d at 922.

**E. <u>National uniformity as to the administrative mechanics of servicing federal student loans is necessary.</u>**

Here, there must be national uniformity as to the administrative mechanics of servicing federal student loans, including how PSLF refunds are processed and whether, when, and how federal loan servicers must respond to borrower requests for information (such as "qualified requests" and "qualified written requests"). Each state cannot be allowed to usurp the ED's authority and dictate to the ED and its loan servicers how to handle such matters. Otherwise, the ED and its loan servicers would be required to comply with a patchwork of 50 different state laws in servicing *federal* student loans owned by the *federal* government and already subject to extensive

*federal* law and regulation.

The potential for mischief is obvious. Allowing states to regulate the administrative mechanics of servicing federal student loans could cause chaos and could result in similarly situated borrowers being treated differently depending solely on where they reside.

For example, Plaintiffs contend that California (through the SBBR) requires federal loan servicers—when servicing California residents—to effectuate or "timely" effectuate PSLF refunds according to unspecified standards under the SBBR, avoid acts or practices concerning PSLF refunds that the SBBR deems to be "abusive" or "deceptive," process paperwork, and respond to "qualified requests" or "qualified written requests" within certain timeframes. According to Plaintiffs, the SBBR sanctions servicers for non-compliance as to California residents, imposing liability for actual, statutory, and punitive damages.

In doing so, the SBBR impermissibly alters the Direct Loan Program framework in California by creating new rights, remedies, and obligations not found in the HEA, the ED's regulations, or the Servicing Contract. *See Chae*, 593 F.3d at 946. Moreover, the practical impact of the SBBR, if not preempted by the HEA, is that MOHELA and other servicers must give preference to federal loan borrowers who currently reside in California (even if they took out their federal loans while residing elsewhere) over borrowers who live in other states. Absent HEA preemption, there is nothing to stop the States from "competing" with each other to: (a) expand the rights and remedies of their residents beyond those provided under the HEA and the ED's regulations; and (b) impose additional obligations on servicers, backed by state law sanctions, beyond the obligations in the Servicing Contract. That is why *Chae*, *Winebarger*, and other courts have recognized the need for the national, uniform administration of the federal loan program in accordance with federal law to the exclusion of state laws such as the SBBR. Simply put, the administrative

mechanics of servicing federal student loans must be left solely to Congress (through its statutes) and the ED (through its regulations and servicing contracts).

California could not subject the ED to the SBBR if the ED serviced federal student loans "in-house." Similarly, California should not be allowed to require the ED's servicers to comply with the SBBR simply because the ED chose to engage MOHELA and others to assist it in servicing its portfolio.

**F. <u>The Servicing Contract does not provide that the SBBR applies to federal student loan servicing.</u>**

Plaintiffs argue that the SBBR is not preempted because the Servicing Contract requires servicers to "comply with all *applicable* Federal and State rules, laws, regulations, and Department guidelines *applicable* to the USDS Program" and to "comply with all *applicable* Federal, and State laws, rules and regulations *applicable* to its performance under the Contract." ECF No. 18 at 20 (quoting ECF No. 15-1 at 12, 18 (emphasis added)). The Servicing Contract does not specify what State laws are "applicable" but does not (and cannot) require servicers to comply with State laws (such as the SBBR) that HEA preempts. Instead, the "applicable" provisions for purposes of the Servicing Contract are those that apply generally to everyone (e.g., employment and tax laws), not just to loan servicers.

**G. <u>The ED's conflicting interpretations of HEA preemption in 2018 and 2023 are irrelevant under *Loper Bright*.</u>**

Lastly, Plaintiffs contend that the ED's "2023 Preemption Interpretation," 88 FR 47,370, proves that the HEA does not preempt their SBBR claims. ECF No. 18 at 20. However, under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the Court cannot defer to the ED's purported interpretation of the HEA's preemptive effect.

This is especially so because in 2018, the ED took the opposite position on preemption of state servicing laws. Relying in large part on the Ninth Circuit's decision in *Chae*, the ED stated:

- "The HEA and the Department's regulations provide comprehensive rules governing the Direct Loan Program, and the Department's contracts with loan servicers further specify the program's rules and requirements."
- "A requirement that Federal student loan servicers comply with 50 different State-level regulatory regimes would significantly undermine the purpose of the Direct Loan Program to establish a uniform, streamlined, and simplified lending program managed at the Federal level…. State regulatory regimes conflict with this congressional objective."
- "State-level regulation subjects borrowers to different loan servicing deadlines and processes depending on where the borrower happens to live, and at what point in time."
- "These conflicts with statutes, regulations, Federal contracts, and congressional objectives suggest that State regulation of loan servicers would be preempted by Federal law."
- "Some State servicing laws also purport to impose regulatory requirements on servicing that create additional conflicts with Federal law. For example, some State laws impose deadlines on servicers for responding to borrower inquiries and require specific procedures to resolve borrower disputes…. These are matters specified in the laws and regulations governing the Direct Loan Program as well as the contractual arrangements between the Department and the servicer."

Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 83 FR 10619, 10620-21 (Mar. 12, 2018). If the ED were to rescind the 2023 Preemption Interpretation and return to its 2018 Preemption Interpretation, Plaintiffs would surely argue that the

ED's position is irrelevant to the preemption analysis.

## II. The Court should also dismiss Plaintiffs' SBBR claims (Counts 1-7) because MOHELA, as a public entity, is immune from SBBR liability under state-law sovereign immunity.

As discussed in its opening memorandum, MOHELA, as a public entity, is immune from SBBR liability under the state-law sovereign immunity provided by Missouri law and California law (which must be extended to MOHELA pursuant to *Franchise Tax Board of California v. Hyatt*, 578 U.S. 171 (2016) ("*Hyatt II*")). Thus, the Court should dismiss Plaintiffs' SBBR claims (Counts 1-7).

### A. Whether MOHELA qualifies as an "arm of the State" is irrelevant because MOHELA contends that it is immune from SBBR liability under state-law sovereign immunity, not that it is immune from suit under any federal-law immunity principles.

Plaintiffs misunderstand and mischaracterize MOHELA's argument. MOHELA does not assert that it is immune from *suit* under any federal-law immunity (Eleventh Amendment and/or interstate sovereign immunity) as an "arm of the State." Accordingly, MOHELA has not asserted any immunity as to Plaintiffs' contract claim (Count 8). Instead, MOHELA maintains that it is immune from SBBR liability under Missouri and California state-law sovereign immunity. Such immunity is entirely distinct from Eleventh Amendment/interstate sovereign immunity and does not depend on MOHELA being an "arm of the State."

#### 1. Plaintiffs' cases are inapposite as they pertain to Eleventh Amendment/interstate sovereign immunity, not state-law sovereign immunity.

The cases Plaintiffs cite are irrelevant because they addressed only Eleventh Amendment immunity (which applies in federal court) or its federal constitutional companion, *interstate* sovereign immunity (which usually applies in state courts).

None of these cases addressed sovereign immunity under Missouri and California law, which MOHELA argues here.

In *Good v. U.S. Dep't of Educ.*, 121 F.4th 772, 787-88 (10th Cir. 2024), the issue was "whether MOHELA is an arm of the State of Missouri … and thus entitled to share in Missouri's Eleventh Amendment immunity," which "generally bars *suits* against a state in federal court commenced by citizens of that state or citizens of another state." (emphasis added). The court noted that "immunity under Missouri state law is seemingly 'broader than the immunity provided by the Eleventh Amendment. It extends to municipalities and other public entities that are not protected by the 11th Amendment.'" *Id.* at 821 (quoting *Dykes v. Missouri Higher Educ. Loan Auth.*, No. 4:21-CV-00083-RWS, 2021 WL 3206691, at *5 (E.D. Mo. July 29, 2021)). Nevertheless, the court did not address MOHELA's state-law sovereign immunity because "the fact that an entity is entitled to immunity under state law does not determine the extent of Eleventh Amendment immunity." *Id.* (quotation omitted).[1]

In *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026), the Supreme Court decided "[w]hether the New Jersey Transit Corporation is an arm of the State of New Jersey for *interstate* sovereign immunity purposes." *Jules v. Andrew Balazs Properties,* 145 S. Ct. 2870 (2026), (Mem)–2871 (emphasis added). Under the doctrine of interstate sovereign immunity, "States are generally entitled to immunity from being sued in another State's courts without their consent," but "[t]hat [interstate] sovereign immunity is personal to the State and thus extends only to arms of the State itself, not to legally independent entities that the State creates." 607 U.S. at 515. The Court held that "NJ Transit is not an arm of New Jersey and thus is not entitled to share in New Jersey's *interstate* sovereign immunity," meaning that it was

[1] In *Walker v. Higher Educ. Loan Auth. of the State of Missouri*, No. 1:21-CV-00879-KES-SAB, 2024 WL 3568576, at *9 (E.D. Cal. July 26, 2024), this Court only addressed whether MOHELA was entitled to Eleventh Amendment immunity.

not immune from suit in states other than New Jersey (e.g., New York and Pennsylvania). *Id.* at 536 (emphasis added).[2]

Both Eleventh Amendment immunity and interstate sovereign immunity arise under federal law. *Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 246-47 (2019) ("*Hyatt III*") (describing interstate sovereign immunity as an implied "essential component of federalism" that is "integral to the structure of the Constitution").[3] As such, these immunities apply only to the States and "arms of the States," as determined under federal law. *Galette*, 607 U.S. at 519; *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 430, n.5 (1997).

### 2. State-law sovereign immunity is entirely distinct from Eleventh Amendment immunity and interstate sovereign immunity.

Separate and apart from Eleventh Amendment immunity and interstate sovereign immunity, public entities, such as MOHELA, may be protected by immunities created under state law as to state law claims (such as Plaintiffs' SBBR claims). *Jinks v. Richland Cnty.*, 538 U.S. 456, 465–66 (2003) (noting that South Carolina law granted protections, labeled "sovereign immunity" under state law, to

---

[2] In *Maldonado v. Higher Educ. Loan Auth. of the State of Missouri*, No. 24-CV-07850-VC, 2025 WL 1085105, at *1 (N.D. Cal. Apr. 9, 2025), the court held that MOHELA was not entitled to interstate sovereign immunity after agreeing with the Walker court that MOHELA is not an arm of the state of Missouri under federal law.

[3] The Supreme Court first recognized "interstate sovereign immunity" in *Hyatt III*, which overruled *Nevada v. Hall*, 440 U.S. 410 (1979), recognized interstate sovereign immunity, and held that the Franchise Tax Board of California could not be sued in Nevada courts. 587 U.S. 230. In a prior appeal, the Court held that the Full Faith and Credit Clause prohibited Nevada from declining to apply to the Franchise Tax Board a $50,000 Nevada statutory liability limit that applied to Nevada public entities. *Franchise Tax Board of California v. Hyatt*, 578 U.S. 171 (2016) ("*Hyatt II*"). In the present case, MOHELA's argument is based on *Hyatt II*, not *Hyatt III* (which did not disturb the Court's ruling in *Hyatt II*).

some political subdivisions, but reiterating that such entities enjoy no sovereign immunity under federal law). There is a "distinction between defenses or immunities that a defendant (including a State) may enjoy under state law and the federal-law protected sovereign immunity that States (and only States) enjoy from suit in federal and state court." *Glob. Innovative Concepts, LLC v. State*, 105 F.4th 139, 142 (4th Cir. 2024). Because States "exercise[ ] plenary control" over "any immunities or defenses a defendant may enjoy under state law," they "may choose to call those defenses or immunities whatever they want (including 'sovereign immunity'), and they may make those defenses or immunities available to persons or entities that may not be entitled to sovereign immunity as a matter of federal law." *Id.*

State law exclusively governs state-law sovereign immunity as to state law claims, including what entities are protected. *Id.*; *see also Kyles v. Beaugard*, No. 15-CV-8895, 2023 WL 5277882, at *20, n.2 (N.D. Ill. Aug. 16, 2023) ("state-law sovereign immunity is an issue of state law"); *Lafleur v. State Univ. Sys. of Fla.*, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3727832, at *1 (M.D. Fla. Aug. 2, 2021) ("Substantive issues for state law claims, including sovereign immunity, are governed by Florida law."); *Harbeck v. Smith*, 814 F. Supp. 2d 608, 631 (E.D. Va. 2011) (noting that "the sovereign immunity argument [for a state law claim of negligence] is governed by Virginia law, while § 1983 immunity is governed by federal law"). Thus, whether MOHELA qualifies as an "arm of the State" under *Galette* for purposes of *federal* law and *federal-law* immunities is irrelevant because MOHELA has only invoked *state-law* sovereign immunity. Contrary to Plaintiffs' argument (ECF No. 18 at 25), MOHELA is not "attempt[ing] an end run around *Galette*;" *Galette* and its "arm-of-the-State" test is inapposite and has no bearing on whether MOHELA is entitled to sovereign immunity under Missouri or California law.

**3. Missouri state sovereign immunity does not depend on a public entity being an "arm of the State."**

Missouri state sovereign immunity covers all public entities, regardless of whether they are "arms of the State." *City of Harrisonville v. Bd. of Trustees of Mo. Petroleum Storage Tank Ins. Fund*, 655 S.W.3d 770, 774 (Mo. 2022). Several federal courts have held that MOHELA is entitled to state sovereign immunity under Missouri law even though MOHELA may not be an "arm of the State." *Joy v. Higher Educ. Loan Auth. of the State of Missouri*, No. 4:23-CV-1590-ZMB, 2026 WL 2921077, at *3-7 (E.D. Mo. Sept. 29, 2026); *Mermigas v. Higher Educ. Loan Auth.*, No. 24-CV-11505, 2025 WL 2576745, at *4 (N.D. Ill. Sept. 4, 2025). In *Dykes*, 2021 WL 3206691, at *4-5, the court held that Missouri state sovereign immunity barred claims against MOHELA after the court found "that MOHELA is not an arm of the state and is not entitle [sic] to Eleventh Amendment Sovereign Immunity." Not surprisingly, Plaintiffs do not contest that their SBBR claims are barred if Missouri state sovereign immunity applies.

**4. California state sovereign immunity also does not depend on a public entity being an "arm of the State."**

Likewise, California state sovereign immunity applies to public entities without regard to whether they are "arms of the State." The California Government Code generally extends sovereign immunity to a "public entity," which is broadly defined to include the "state, … a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Cal. Gov't Code § 811.2; *see also Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269, 279 (1st Dist. 1994) ("Every kind of governmental entity, including a public authority, is included in the definition of 'public entity.'"). Many of these types of entities are not "arms of the State," yet enjoy sovereign immunity under California law (to the extent not waived by statute). While these entities may not have Eleventh Amendment

immunity or interstate sovereign immunity, *Galette* does not strip them of immunity under California law for purposes of state law claims.

**B. *Hyatt II* requires nondiscriminatory treatment of another state's public entities, regardless of whether they are "arms of the State."**

Plaintiffs argue that *Hyatt II* (the basis of MOHELA's motion) "is not a rule of immunity." ECF No. 18 at 29. Plaintiffs miss the point. In *Hyatt II*, the Court did not address any federal-law immunity. Instead, the Court applied the Full Faith and Credit Clause of the United States Constitution to a state's application of its own state-law immunity and held that Nevada could not apply a less favorable outcome to the governmental entities of another state than applied to Nevada's own governmental entities. 578 U.S. at 176-80. In essence, the Court held that what is good for the goose (the enacting state's own public entities) must also be good for the gander (another state's public entities).

Plaintiffs cite no authority for their argument that *Hyatt II* does not apply because it "presupposes a sovereign" and "MOHELA is not a sovereign." ECF No. 18 at 29. Nothing in *Hyatt II* suggests that its nondiscrimination rule is limited to States or "arms of the States." Any such distinction would make no sense because the concerns expressed by the Court in *Hyatt II*—one state applying a "hostile," "special rule of law" to the public entity of another state—are just as valid regardless of whether that public entity is an "arm of the State."

Indeed, courts have applied *Hyatt II*'s nondiscrimination rule to public entities that would not qualify as "arms of the State" under federal law. *See Pittman v. Rutherford*, No. CV 19-36-DLB-CJS, 2020 WL 6384726, at *5 (E.D. Ky. Oct. 30, 2020) ("A straightforward application of *Hyatt II* leads to the conclusion that holding Brown County [Ohio] liable [in a Kentucky federal court] would be discriminatory and in violation of the Full Faith and Credit Clause" because "Kentucky counties are [ ] immune from suit for the torts of their agents and employees."); *Gordon v. Sheriffs*

*Off. Adams Cnty.*, No. 6:23-CV-01139, 2025 WL 4113569, at *3 (W.D. La. Dec. 4, 2025) (under *Hyatt II*, federal court in Louisiana was required to apply protections of Louisiana Governmental Claims Act in suit against Mississippi county sheriff's office). Plaintiffs cite no authority to the contrary.

**C. <u>Under *Nuveen*, public entities are immune from SBBR liability because, notwithstanding the SBBR's definition of "person," the SBBR does not clearly withdraw statutory immunities for public entities.</u>**

Lastly, Plaintiffs maintain that public entities are liable under the SBBR because it defines "person" to include "a government, or a political subdivision of a government." ECF No. 18 at 29 (quoting Cal. Civ. Code § 1788.100(m)). But under the Ninth Circuit's decision in *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1125-26 (9th Cir. 2013), public entities are immune from liability under the SBBR because, notwithstanding this definition of "person," the SBBR contains no provision that clearly withdraws statutory immunities for public entities.

In *Nuveen*, the Ninth Circuit ruled that:

- California Government Code § 815(a) is the "*general rule* [that] provides for governmental immunity unless a statute provides otherwise";
- "the immunity provisions will as a general rule prevail over all sections imposing liability";
- "the general rule is that the governmental immunity will override a liability created by a statute outside of the [Government] Claims Act";
- "[t]o rebuff *this general rule*, a liability-creating statute must clearly withdraw statutory immunities"; and

- the mere inclusion of governmental entities in the definition of "person" in a liability-creating statute is *not* sufficient to abrogate the general rule providing for governmental immunity.

*Id.*

Plaintiffs concede that "[u]nder the GCA [Government Claims Act], a public entity is immune unless a statute provides for its liability." ECF No. 18 at 29. But they are mistaken that "[t]he SBBR is such a statute" because its definition of "person" includes "a government, or a political subdivision of a government." *Id.* at 30 (citing Cal. Civ. Code § 1788.100(m)). *Nuveen* holds otherwise—that such a definition of "person," without more, does not suffice to abrogate governmental immunity.

Plaintiffs also erroneously assert that the rule that "a liability-creating statute must clearly withdraw statutory immunities" does not apply to the general governmental immunity in Section 815(a), but only applies to more specific governmental immunities found outside of Section 815(a) (such as in Sections 818 to 818.9). This distinction makes no sense, and Plaintiffs cite no authority for it. The Ninth Circuit made no such distinction in *Nuveen*. The Ninth Circuit held that "the general rule is that *the governmental immunity* will override a liability created by a statute outside of the [Government] Claims Act" (e.g., the SBBR) and that "[t]o rebuff this general rule, a liability-creating statute must clearly withdraw statutory immunities." 730 F.3d at 1126 (emphasis added). "The governmental immunity" includes Section 815(a).

Plaintiffs erroneously maintain that the California legislature "would have had no reason to enact §§ 818 through 895.8, each of which carves a particular immunity out of liability that would otherwise exist," if the "clarity requirement" (that a liability-creating statute must clearly withdraw statutory immunities) applies to Section 815(a). ECF No. 18 at 30. But these other immunity provisions are more limited in scope than the general immunity under Section 815(a) and were intended

by the legislature to apply when a public entity does not have general immunity under Section 815(a).

The "clarity requirement" applies only to a liability-creating statute "outside of the [Government] Claims Act." *Nuveen*, 730 F.3d at 1126. If a liability-creating statute outside of the Claims Act clearly withdraws a public entity's general immunity under Section 815(a), the public entity may still have specific immunities under the other provisions cited by Plaintiffs. For example, under Section 818, a public entity is not liable for punitive damages, even if the public entity may be liable under a statute for other relief.

The "clarity requirement" does not apply to liability created by the Claims Act itself because, by definition, the Claims Act applies to public entities. Nevertheless, Section 815(b) makes clear that the other immunity provisions cited by Plaintiffs (Sections 818 through 895.8) still apply even if liability is created by the Claims Act (unless, of course, another statute clearly withdraws the other immunity):

> Except as otherwise provided by statute … (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part….

(The phrase "this part" is Part 2 of the Government Claims Act, which addresses the "Liability of Public Entities and Public Employees.") Thus, it made sense for the California legislature to enact the other immunity provisions cited by Plaintiffs, notwithstanding that Section 815(a) bars a non-Claims Act statutory claim against a public entity unless the statute clearly withdraws the public entity's immunity.

Contrary to Plaintiffs' argument (ECF No. 18 at 29), "a California public authority servicing Plaintiffs' loans" would be immune from SBBR liability. Accordingly, under *Hyatt II*, MOHELA, as a public entity (or public authority), is likewise immune from liability under the SBBR. The Court, therefore, should dismiss

Plaintiffs' SBBR claims (Counts 1-7).

**III. <u>The Court Should Dismiss Plaintiffs' Breach Of Contract Claim (Count 8) Because MOHELA's Servicing Contract With The ED Does Not Reflect Any Clear Intent To Allow Plaintiffs To Enforce The Contract As Intended Third-Party Beneficiaries.</u>**

This Court and the vast majority of courts have concluded that student loan borrowers such as Plaintiffs are not third-party beneficiaries of the ED's contracts with servicers such as MOHELA because (a) the contracts contain no language evidencing an intent to make borrowers third-party beneficiaries with rights of enforcement; and (b) the HEA provides no private right of action and empowers only the Secretary of Education to enforce it. *Winebarger*, 411 F. Supp. 3d at 1092; *Joy*, 2026 WL 2921077, at *8; *Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 986-88 (N.D. Ill. 2024); *Wade v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 21-11595 (CPO), 2022 WL 1115275, at *2-3 (D.N.J. Apr. 14, 2022); *Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175, at *11 (E.D.N.Y. Dec. 4, 2020); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020); *Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798, at *8 (N.D. Ga. Mar. 16, 2020); *Hyland*, 2019 WL 2918238, at *8.

**A. <u>The new Servicing Contract, like the prior servicing contract, does not reflect a "clear intent" to establish intended third-party beneficiary status on borrowers.</u>**

Plaintiffs attempt to distinguish these cases by arguing they involved the prior version of the ED's servicing contract (sometimes called the "DL Contract"), which was in effect before April 1, 2024, instead of the current Servicing Contract (sometimes called the "USDS Contract"), which took effect on April 1, 2024. But Plaintiffs face the same insurmountable hurdles with the current Servicing Contract

that existed with the prior contract. Like the prior contract, the current Servicing Contract contains no language evidencing any intent—let alone the requisite "clear intent"—to make borrowers third-party beneficiaries with rights of enforcement. And the HEA still provides no private right of action and empowers only the Secretary of Education to enforce it.

Of course, Plaintiffs do not compare the Servicing Contract with the prior contract. Instead, they simply cite a few provisions in the Servicing Contract without considering the context of the entire agreement or how any of those provisions differ from what was in the prior contract.

Plaintiffs start by noting that Attachment 1 to the Servicing Contract requires servicers "to strictly adhere to the requirements in Attachment 1." ECF No. 18 at 32. The fact that the ED expects its servicers to strictly adhere to the Servicing Contract's requirements does not reflect any intent to confer intended third-party beneficiary status on student loan borrowers. The ED likewise expected its servicers to strictly adhere to the requirements of the prior servicing contract. Yet, this Court and other courts held that student loan borrowers were not intended third-party beneficiaries.

With every contract, one party expects the other party to strictly adhere to the terms of the contract and perform its obligations thereunder, some of which may incidentally benefit third parties. Such an expectation, standing alone, cannot result in intended third-party beneficiary status. Otherwise, every contract would result in intended third-party beneficiaries.

Plaintiffs next note that Attachment 1 requires MOHELA to perform certain tasks that operate to the benefit of borrowers, including the discharge of their loans, the initiation of refunds, and the clearing of credit balances. ECF No. 18 at 32-33. Even though the performance of these particular tasks may operate to the benefit of borrowers, the "'clear intent' hurdle … is not satisfied by … a showing that the contract operates to the third parties' benefit and was entered into with them in mind."

*GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012). Indeed, these are the same type of tasks that MOHELA and the ED's other servicers were required to perform under the prior servicing contract. *See, e.g.,* Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 83 FR 10619, 10620 (Mar. 12, 2018) ("In its contracts with loan servicers, including task orders and change requests issued under those contracts, the Department specifies in detail the responsibilities and obligations of the servicers for Direct Loans and the benefits provided under that program such as Public Service Loan Forgiveness and income-driven repayment plans."). Yet, this Court and other courts held that student loan borrowers were not intended third-party beneficiaries under that contract.

Moreover, Plaintiffs ignore the fact that MOHELA's primary tasks under the Servicing Contract are to collect payments from borrowers and enforce their loan obligations to the ED. These tasks obviously are not for the benefit of borrowers. Plaintiffs fail to explain how they can be intended third-party beneficiaries of the Servicing Contract when the contract's primary purpose is for MOHELA to enforce the borrowers' loan obligations to the ED and administer the ED's rights in the loans.

**B. The Ninth Circuit's decision in *Astra* (which the Supreme Court reversed) is inapposite because the agreement in *Astra* is fundamentally different than the Servicing Contract.**

Plaintiffs rely solely on *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009), in which the Ninth Circuit held that certain health-care facilities were intended third-party beneficiaries of pharmaceutical pricing agreements between drug manufacturers and the federal government. But the Supreme Court reversed the Ninth Circuit's decision and held that the health-care facilities were *not* intended third-party beneficiaries of the agreements. *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S.

110, 118 (2011). Plaintiffs' argument fails for this reason alone.

Even so, the agreements at issue in *Astra* are fundamentally different than the ED's Servicing Contract with MOHELA. In *Astra*, the drug manufacturers did not act on behalf of or for the benefit of the federal government in any way. Instead, they simply agreed with the federal government to price ceilings on the amounts they charged to specified health-care facilities as a condition to their participation in State Medicaid programs. 563 U.S. at 113-14. The only "beneficiaries" of the price ceilings were the health-care facilities.

In contrast, the entire purpose of the Servicing Contract is for MOHELA to perform loan servicing on behalf of and for the benefit of the ED. Under the contract, MOHELA services the borrowers' loan obligations to the ED and administers the ED's rights in the loans. The ED is the "beneficiary" of MOHELA's performance because, absent the contract, the ED would have to perform the loan servicing itself by enforcing borrower loan obligations, collecting and posting borrower payments, administering repayment plans and programs, and processing any refunds owed to borrowers. Thus, the Ninth Circuit's decision in *Astra* (which the Supreme Court reversed in any event) does not support Plaintiffs' position.

**C. <u>The Servicing Contract's alleged "surroundings" cannot and do not establish the requisite "clear intent" for intended third-party beneficiary status for borrowers.</u>**

Lastly, Plaintiffs grasp at straws when they rely on the Servicing Contract's alleged "surroundings," including the ED's alleged statements that the Servicing Contract sought to improve borrower experiences with their loans. ECF No. 18 at 36-37. But the Ninth Circuit has held that the "clear intent" needed "to rebut the presumption that the third parties are merely incidental beneficiaries" must come from "the precise language of the contract." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship*, 671 F.3d at 1033-34. Plaintiffs fail to show that the precise language of the

Servicing Contract reflects the requisite "clear intent" to confer intended third-party beneficiary status on them.

Plaintiffs nevertheless quote statements by the ED that the Servicing Contract "implement[s] much-needed improvements to better serve borrowers," "is designed to provide federal student loan borrowers with a high-quality customer experience and to deliver support for at-risk borrowers so that all borrowers can … claim loan forgiveness, if they are eligible for it," "drive[s] improved borrower outcomes, especially for vulnerable borrowers" and "deliver[s] on [the ED's purported] promise to borrowers." ECF No. 18 at 36-37. These alleged statements by the ED are nothing more than recitations of interested constituencies (borrowers), vague, hortatory pronouncements, and statements of purpose that do not satisfy the "clear intent hurdle" for intended third-party beneficiary status. *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship*, 671 F.3d at 1033. Indeed, the ED presumably intended to provide borrowers with the same "experience" with the prior servicing contract, yet this Court and many other courts held that borrowers were not intended third-party beneficiaries.

Tellingly, Plaintiffs cite no statement by the ED that it intended for borrowers to be able to enforce the Servicing Contract. And there is none. The absence of any such statement by the ED is dispositive of Plaintiffs' contract claim, especially given that the ED was aware of decisions by this Court and numerous others that the ED's servicing contract did not confer intended third-party beneficiary status on borrowers.

As the architect of the Servicing Contract, the ED easily could have included a provision in its new agreement that provides for third-party beneficiary rights for borrowers such as Plaintiffs if that was the ED's intent. The ED chose not to do so, instead drafting the Servicing Contract to allow only for claims between itself and MOHELA. Ex. B, p. 51 (incorporating 48 C.F.R. § 52.233-1, which only allows for claims "by one of the contracting parties," either the "Contractor" or the "Government").

In sum, Plaintiffs cannot pass the high "clear intent" hurdle for establishing they are intended third-party beneficiaries under the Servicing Contract. Thus, as this Court (and others) have previously held, as a matter of law, they cannot sue under the Servicing Contract, and the Court should dismiss Count 8 with prejudice.

## IV. Under Rule 19(a), Plaintiffs Must Join The ED As A Party Defendant.

The Court should require Plaintiffs to join the ED as a party defendant pursuant to Rule 19(a) to the extent the Court does not dismiss Plaintiffs' complaint outright. This is because:

- The ED owns the federal student loans at issue in this case, administers the PSLF Program, determines borrower eligibility for PSLF discharges and refunds, and is the party that owes any refunds due under the PSLF Program;
- "Plaintiffs seek, for themselves and the putative class members, immediate refunds," Compl. ¶ 25; ***but***
- only the ED (through the United States Treasury)—not MOHELA or any other federal loan servicers—can provide PSLF refunds out of federal funds.

Plaintiffs do not dispute these facts.

Instead, they counter that joinder of the ED as a party defendant is not required because "[t]he mechanics of a [PSLF] refund begin only after MOHELA initiates the request, and MOHELA is the source of the delay." ECF No. 18 at 39. But Plaintiffs must first prove that PSLF refunds were actually owed by the ED (which MOHELA disputes as to Plaintiff Burnett) and should have been initiated by MOHELA in the first place. And they must also prove that MOHELA, not the ED, was "the source of the delay" with the issuance of any PSLF refunds. Accordingly, the ED must be joined in this case.

Plaintiffs further argue that "[a] court would not require joinder of Visa because

a merchant failed to issue a refund; it would hear the case against the merchant." ECF No. 18 at 39. Plaintiffs' analogy fails for two reasons and actually supports MOHELA's position.

First, MOHELA is not like the merchant. The merchant owes the refund to the customer. In contrast, MOHELA is not liable for any PSLF refunds owed to borrowers. In other words, it does not "pay out" refunds. It merely helps the ED to administer such PSLF refunds. MOHELA does not "touch" the refunded money; only the ED does.

Second, the ED is not like Visa. Visa is not required to approve any refund request by the merchant and is not liable for any refund owed by the merchant. In contrast, the ED must approve any PSLF refund request and is liable for and directly pays any PSLF refunds from federal funds.

Plaintiffs erroneously contend that the court rejected a similar argument by MOHELA in *Maldonado v. Higher Educ. Loan Auth. of the State of Missouri*, No. 3:24-cv-07850-VC, ECF No. 69 (N.D. Cal. July 8, 2025). In that case, the issue was whether the ED had directed MOHELA to discharge certain loans. The court denied MOHELA's Rule 19 motion because "[t]he plaintiffs do not seek, nor would this Court grant, any judgment that requires discharge of loans that DOE [ED] did not authorize. So DOE [ED] is not a required party under Rule 19."

Here, Plaintiffs' claims presuppose that MOHELA has discharged their loans under the PSLF Program at the ED's direction. The issue is whether and when Plaintiffs are owed PSLF refunds *by the ED*. This issue directly concerns the ED's assets and financial interests, so Plaintiffs must join the ED as a party defendant so that it can be heard on the merits of their claims.

* * *

The Court should dismiss Plaintiffs' complaint with prejudice. Alternatively, the Court should order Plaintiffs to join the ED as a party defendant.

DATED: November 13, 2026 **THOMPSON COBURN LLP**

By: */s/ Lukas Sosnicki*
**LUKAS SOSNICKI**
**GREGORY G. BREZOVEC**
Attorneys for Defendant
Higher Education Loan Authority
of the State of Missouri

**Certificate of Compliance**

The undersigned, counsel of record for Defendant, certifies that the Memorandum of Points and Authorities—excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits—contains 6,992 words, which complies with the word limit of L.R. 11-6.1.

November 13, 2026 */s/ Lukas Sosnicki*